UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------------x
JAMIE HODGES and ON THE MOVE LTD,

                Plaintiffs,

           -against-                                **COMPLAINT**
                                            **AND JURY DEMAND**

JAMES EARLY, IRISH DANCING TEACHERS
ASSOCIATION OF NORTH AMERICA-MID-ATLANTIC
REGION, INC., MOLLY KATHLEEN LUTWIN,                  __ cv __
FRANCIS ACADEMY OF IRISH DANCE, and
KEITH L. LABIS,

                Defendants.
----------------------------------------------------------------------------x

        Plaintiffs Jamie Hodges (hereinafter "Mr. Hodges") and On The Move LTD ("On The Move") (collectively, "Plaintiffs"), for their complaint against defendants James Early, Irish Dancing Teachers Association of North America-Mid-Atlantic Region, Inc. ("Mid-Atlantic"), Molly Kathleen Lutwin, Francis Academy of Irish Dance (the "Francis Academy"), and Keith L. Labis (collectively, "Defendants"), by and through their undersigned counsel, allege the following:

## INTRODUCTION

        1.     Plaintiffs bring this action to assert claims against Defendants for their malicious and intentional defamation of Plaintiff Jamie Hodges and his business On The Move Ltd, as well as claims for tortious interference with business relations, which wrongful acts have destroyed Mr. Hodges' career and reputation, as well as On The Move's Irish Dance business.

        2.     Prior to the Defendants' malicious defamation of Mr. Hodges as detailed below, Mr. Hodges was a highly successful Irish Dance performer and instructor, and had an excellent reputation in the close-knit Irish Dance community.  Mr. Hodges' Irish Dance accomplishments included winning five world team titles, and multiple top-ten placements in international competitions.  Mr. Hodges has also successfully taught Irish Dance for years, which involved

1

teaching thousands of students across 16 countries, including the United States, Australia, the United Kingdom, Ireland, mainland Europe, Mexico, Kazakhstan, the United Arab Emirates, Oman and Singapore.

3.    Consistent with Mr. Hodges' strong reputation in the Irish Dance community, on November 18, 2019, Mr. Hodges and his company On The Move received approval from Defendant Mid-Atlantic to run an Irish Dance summer camp.

4.    Defendants' intentional and malicious defamation campaign began less than one week later.  On November 24, 2019, Defendant Molly Kathleen Lutwin ("Lutwin"), a competitor of the Plaintiffs and the owner of the Defendant Francis Academy, sent an email to numerous individuals associated with Defendant Mid-Atlantic in which, unbeknownst to Plaintiffs, she falsely stated to Defendant Mid-Atlantic that Plaintiff Hodges and his company On The Move sent a sexually explicit video to young girls under the age of 14 – an outrageous and completely false assertion that has no basis in fact whatsoever.  Lutwin thereafter repeated this defamatory assertion to numerous other individuals, with the malicious intent of destroying the reputation of Plaintiff Hodges and his business.

5.    Thereafter, on January 22, 2020, Plaintiffs were informed by Judy McCafferty, who was a board member of Defendant Irish Dance Teachers Association of North America ("IDTANA"), that they were under investigation as a result of Lutwin's baseless and unsubstantiated defamatory allegations.

6.    Plaintiffs were outraged by the false allegations and immediately demanded on the very same day (January 22, 2020) that they be provided information regarding the false allegations so that they could defend against them.  The very next day, on January 23, 2020,  Ms. McCafferty informed Plaintiffs that, "upon further review," the investigation was "closed."  This naturally led

Plaintiffs to conclude that the investigation uncovered no substantiation for the false allegations made against them, and that the investigation was, indeed, "closed."

7.     However, three days after the Plaintiffs were informed that the investigation had been closed, and without any further notice to the Plaintiffs, on January 26, 2020, Defendants Mid-Atlantic, James Early and Keith Labis did the unthinkable:  during a meeting of Defendant Mid-Atlantic that was attended by hundreds of Irish Dance teachers throughout the Mid-Atlantic region (including teachers from New York, New Jersey, Pennsylvania and Delaware), Defendant Early (an officer of Defendant Mid-Atlantic and IDTANA), acting solely out of malice, read out loud to all the hundreds of attendees the false and unsubstantiated defamatory accusation that had been made by Defendant Molly Kathleen Lutwin.  Defendant Labis not only adopted the defamatory allegations, but equated them with child abuse and informed the hundreds of Irish Dance teachers in attendance that Plaintiffs were the subject of an investigation by government authorities.

8.     The malicious repetition of the defamatory statements regarding the Plaintiffs by Defendants Early, Mid-Atlantic and Labis to hundreds of teachers in the Irish Dance community was particularly outrageous because these defendants had not taken any steps whatsoever to substantiate the false allegations regarding the Plaintiffs.  Indeed, Defendants Early, Mid-Atlantic and Labis clearly acted with malice, as they later admitted that at the time Early read the false accusations out loud to hundreds of teachers, these defendants already knew that authorities had not substantiated the accusations against Plaintiffs.  Defendants Early, Mid-Atlantic and Labis also knew at the time they repeated the false and defamatory accusations against the Plaintiffs that the investigation by IDTANA and Mid-Atlantic was previously closed, with no substantiation of the allegations that had been made.

9.      In a fraudulent effort to cover up their malicious defamation, Defendants Early, Mid-Atlantic and Labis then proceeded to create fraudulent minutes of the January 26, 2020 Mid-Atlantic meeting.  These minutes incorrectly state that during the meeting, Mid-Atlantic disclosed that "New York State authorities confirmed they had looked into the matter and they believed a crime had not been committed."  However, an audio recording of the January 26, 2020 meeting proves that Defendants Early, Mid-Atlantic and Labis had in fact intentionally and maliciously omitted any acknowledgment that there had been no finding of wrongdoing.  Defendants Early, Mid-Atlantic and Labis maliciously omitted this exonerating information to falsely convey to the hundreds of attendees at the meeting that the Plaintiffs were under active investigation by authorities – a purported assertion of fact that they knew was false.

10.     Indeed, the audio recording of the January 26, 2020 meeting demonstrates that Defendant Keith Labis further defamed the Plaintiffs by omitted the exonerating information, and instead stated that the accusations against the Plaintiffs were serious, warranted an ongoing investigation by authorities, and compared it to criminal instances of child abuse – all despite his knowing what Mid-Atlantic later disclosed: that an alleged investigation by authorities had already found no wrongdoing by the Plaintiffs.

11.     As a direct and proximate result of Defendants' intentional and malicious defamation campaign, as well as the tortious interference with business relations detailed below, Mr. Hodges' reputation and his business On the Move have been destroyed, and Hodges' ability to earn a living as an Irish Dance instructor has been completely destroyed.  This action seeks damages and other relief against the Defendants for their intentional and malicious destruction of the Plaintiffs' reputation and business.

## PARTIES

12.     Plaintiff Hodges is an individual who is a citizen of the United Kingdom, and has a permanent residence in Bristol, England.  Mr. Hodges resides at the address of 80 Kinsale Road, Bristol, England BS14 9EZ.

13.     Plaintiff On The Move Ltd ("On the Move") is a company incorporated in the United Kingdom, with its principal place of business and registered office address at 80 Kinsale Road, Bristol, England BS14 9EZ.  On The Move has two shareholders/members: Plaintiff Jamie Hodges and his brother Mitchell Hodges.  Both Jamie and Mitchell Hodges are citizens and residents of the United Kingdom.

14.     Defendant James Early resides in Rockland County in the State of New York at the following address: 20 Fonda Dr, Stony Point, New York 10980.  Defendant Early is the Regional Director of Mid-Atlantic, and also serves as a board member of IDTANA.  Defendant Early also serves as a board member of, and is head of the Rules Committee of, An Coimisiún Le Rincí Gaelacha ("CLRG"), which is located in Ireland, and is the worldwide governing body for competitive Irish Dance.  Defendant Early is also an Irish Dance Instructor, and owns an Irish Dance teaching school.

15.     IDTANA is the official body that offers Irish Dance instructors in the United States certification to teach Irish Dance.  Defendant Mid-Atlantic is one of seven regions within North America that are a part of IDTANA.

16.     Defendant Molly Kathleen-Lutwin resides in Onondaga County in the State of New York at the following address: 216 Overlook Dr, Syracuse, New York 13207.  Ms. Frances-Lutwin is the owner and director of Defendant Francis Academy of Irish Dance.

17.     Defendant Francis Academy of Irish Dance ("Francis Academy") is located in Onondaga County in the State of New York, and upon information and belief, its principal place of business is at the following address:   433 Tompkins Street Syracuse, New York 13204. Defendant Francis Academy is an Irish Dance school that teaches Irish Dance to children.  At all times herein, Defendant Molly Kathleen Lutwin ("Lutwin") acted on her own behalf, as well as in in her capacity as owner and director of Defendant Francis Academy.

18.     Defendant Keith L. Labis ("Labis") resides in Westchester County in the State of New York at following address: 83 River St Sleepy Hollow, New York 10591.  Defendant Labis is an attorney admitted to practice law in the State of New York.  Defendant Labis has an office address within Putnam County of 2435 Route 6, Brewster, New York 10509.

19.     Defendant Mid-Atlantic is a domestic not-for-profit New York corporation with the following address listed with the New York Secretary of State: c/o Keith L. Labis, Esq. Middlebranche Offices, 2435 Route 6, Brewster, New York 10509.

**FEDERAL SUBJECT MATTER JURISDICTION**

20.     This Court has federal subject matter jurisdiction over this action pursuant to diversity jurisdiction, codified at 28 U.S.C. § 1332.

21.     The Plaintiffs herein are citizens of a foreign country for purposes of 28 U.S.C. 1332(a)(2).  Plaintiff Jamie Hodges resides and is domiciled in the United Kingdom.  Plaintiff On The Move is a company formed under the laws of, and resides and is domiciled in, the United Kingdom.  The principal place of business of On the Move is in the United Kingdom (Bristol, England).  The two sole shareholders/members and directors of On Move are citizens of, are domiciled in, and reside in the United Kingdom.

6

22.     As set forth above, all of the Defendants are citizens of States within the United States.

23.     The amount of damages sought by Plaintiffs in this action exceeds $75,000, the statutory threshold.   28 U.S.C. § 1332.

24.     In light of the above, this Court has diversity jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332 (a)(2).

## VENUE

25.     Two of the Defendants reside within the Southern District of New York. Defendant James Early resides within Rockland County, and Defendant Labis resides within Westchester County.   In addition, Defendant Mid-Atlantic lists with the Secretary of State an\ address within the Southern District of New York.

26.     Thus, venue is proper in this District.

## BACKGROUND FACTS

### I.     Defendant Early Places Himself in An Irreconcilable Conflict of Interest

27.     Defendant Early placed himself in an irreconcilable conflict of interest by assuming the supposedly neutral roles of Regional Director of Mid-Atlantic, a board member of IDTANA, and a board member of CLRG – positions which include approving Irish Dance teachers and schools for summer camps and other Irish Dance events.   At the very same time that he took on these powerful positions, Defendant Early ran his own Irish Dance school, and served as an Irish Dance judge for compensation at Irish Dance schools with which he had a business relationship.

28.     Defendant Early was therefore in a position, as Regional Director of Mid-Atlantic, a board member of CLRG, and a board member of IDTANA, to take negative actions against Irish Dance instructors, camps and schools that competed with his personal business interests.

II.      **Mr. Hodges' Reputation Prior to the Defendants' Malicious Actions**

29.      Prior to the Defendants' malicious defamation of the Plaintiffs as detailed below, Plaintiff Hodges had a highly successful career as an Irish Dance performer and Irish Dance instructor, and had an excellent reputation in the close-knit Irish Dance community.  Mr. Hodges has been engaged in Irish Dance for over 15 years, during which time his accomplishments included five world team titles.  Mr. Hodges has also successfully taught Irish Dance for years, which involved teaching thousands of students across 16 countries, including the United States, Australia, the United Kingdom, Ireland, mainland Europe, Mexico, Kazakhstan, the United Arab Emirates, Oman & Singapore.

30.      Plaintiff Hodges is also active in his community, including as an organizer and participant in a fundraiser in Austria to fight cancer in 2019.  In September 2017,  Mr. Hodges climbed Mount Kilimanjaro, the highest peak in Africa, for charity, raising thousands of dollars for Dig Deep, a charitable project organized to provide clean water throughout rural Kenya.

III.     **Defendants Early and Mid-Atlantic Acknowledged Plaintiffs' Strong Reputation and Qualifications to Teach Irish Dance By Approving Plaintiffs To Participate in An Irish Dance Summer Camp**

31.      In November 2019, Mr. Hodges contacted Defendant Early, the Regional Director for Mid-Atlantic, to apply for approval from Mid-Atlantic to conduct an Irish Dance summer camp.

32.      Defendant Early repeatedly informed Mr. Hodges that his application was approved.

33.      For example, on November 18, 2019, Mr. Early emailed Mr. Hodges and confirmed the approval to Mr. Hodges.   Specifically, Defendant Early stated the following to Mr. Hodges in his November 18, 2019 email: "The Mid-Atlantic Region of IDTANA Inc have no problem with

your Dance Camp; On the Move being run within the MAR [Mid-Atlantic Region] next July provided that all rules and regulations of CLRG pertaining to such Open Dance Camps are followed and adhered to."  A true and correct copy of Mr. Early's November 18, 2019 email to Mr. Hodges is attached hereto as Exhibit A.

34.    Defendant Early's written confirmation that Plaintiffs had been approved for their Irish Dance summer camp demonstrates that, as of November 18, 2019, Defendants Early and Mid-Atlantic were forced to recognize Plaintiffs' good reputation and qualifications to teach Irish Dance.

35.    However, the Irish Dance schools that Plaintiffs were going to participate in with a summer camp program were Irish Dance schools that compete with Defendant Early's Irish Dance school.  Moreover, Defendant Early had a business interest with a competing Irish Dance summer camp.  Specifically, Defendant Early was paid by Camp Rince Ceol to act as a judge for its Irish Dance Camp.

36.    After Plaintiffs received approval from Defendants Early and Mid-Atlantic to conduct an Irish Dance Camp, Plaintiffs proceeded to sign up dozens of students for the summer camp.

IV.    **Defendant Lutwin Defames the Plaintiffs**

A.  **Lutwin's Defamatory Statements**

37.    Defendant Lutwin owns Defendant Francis Academy of Irish Dance ("Francis Academy").  Francis Academy competes with Plaintiffs for business in the Irish Dance community.  For example, Defendants Lutwin and Francis Academy have business relationships with an Irish Dance summer camp called Camp Rince Ceol.  Among other things, Defendant Lutwin sends dozens of her students to Camp Rice Ceol, and receives compensation as a result of

making these referrals.  The Camp Rice Ceol Irish Dance summer camp is in competition with the Irish Dance summer camp in which the Plaintiffs sought approval from Defendants Early and Mid-Atlantic.

38.     Acting solely out of malice, Defendant Lutwin began defaming the Plaintiffs on November 24, 2019 – just one week after Plaintiffs had received approval to run an Irish Dance camp that competes with the Irish Dance camp that Lutwin and Francis Academy do business with and profit from.

39.     Unbeknownst to Plaintiffs, on November 24, 2019, within one week after Defendant Mid-Atlantic's approval of Plaintiffs' summer camp, Defendants Lutwin and Francis Academy (acting through Lutwin) defamed the Plaintiffs in an email that Defendant Lutwin sent to at least 5 individuals associated with Mid-Atlantic, the same entity that approved Plaintiffs' Irish Dance summer camp the prior week.

40.     Specifically, on November 24, 2019, Defendant Lutwin sent an email to multiple third parties associated with Defendant Mid-Atlantic (including Debbie Lynch-Webber, Colleen Carey, Karen A. Petri, Eileen Coyle-Henry and Amy Segal Loxley), falsely asserting that Plaintiff Hodges' company On The Move sent an inappropriate video featuring a naked woman to two girls under the age of 14.

41.     Defendant Lutwin's November 24, 2019 email stated, in relevant part:

There are two u14 girls in my school, Francis Academy of Irish Dance, who share and run an Instagram account for Irish Dancing. The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls shared account. The girls agreed to upload the promotional video.  **On the Move then sent them a video that was extremely inappropriate and disturbing.  The video is of a visibly naked woman running towards a camera and jumping on it**…

The girls did not know what to do.  **They responded to On the Move that the video was inappropriate.  On the Move then apologized and told the girls that the account got hacked.**

A true and correct copy of the November 24, 2019 email is attached hereto as Exhibit B.

42.     The above statements made by Defendant Lutwin to multiple third parties include purported statements of fact (highlighted in bold) that are utterly and demonstrably false, and Plaintiffs will prove these purported assertions of fact to be false.

43.     First, the purported assertion of fact that Mr. Hodges and his dance company On The Move sent a sexually explicit video to two girls under the age of 14 is utterly and completely false.  In reality, On The Move never sent such a video to any underage girls.

44.     In addition, this purported assertion of fact is clearly defamatory.  Defendant Lutwin's statement of purported fact clearly conveys that Plaintiffs committed serious wrongdoing and subjects Plaintiffs to public contempt, hatred, ridicule, aversion and disgrace.  Indeed, since Mr. Hodges and his dance company On The Move teach Irish Dance to young children, it is obvious that the purported statement of fact that Plaintiffs sent a sexually explicit video to young girls subjects Plaintiffs to public contempt, hatred, ridicule, aversion and disgrace.  This false and defamatory allegation has destroyed Mr. Hodges' and his dance company's reputations in the close-knit Irish Dance community.  Therefore, Defendant Lutwin's purported assertions of fact are clearly defamatory.

45.     In addition, Defendant Lutwin's false purported assertion of purported fact constitutes defamation *per se*, as it injures Plaintiffs in their trade, business, and profession and imputes salacious and immoral conduct to the Plaintiffs.  Because teaching Irish Dance involves teaching young children, the defamatory statements made by the Defendants regarding Plaintiffs, including that Mr. Hodges and his dance company On The Move sent a sexually offensive video

to under 14 year old children, are, on their face, completely destructive to Mr. Hodges' profession and On The Move's business.  It is plainly incompatible with the proper conduct of an Irish Dance teacher and school who teach young children for them to send sexually inappropriate videos to young girls. Therefore, Defendant Lutwin's false assertions of purported fact regarding the Plaintiffs constitute defamation *per se*.

46.     Second, Defendant Lutwin made another assertion of purported fact, that is utterly and demonstrably false.   Defendant Lutwin asserted that, as a matter of purported fact, On The Move admitted to sending the inappropriate video by allegedly ***apologizing*** for sending the video to young girls.  This assertion of purported fact clearly conveys to the reader that Mr. Hodges and his dance company On The Move apologized, and thus acknowledged, they did in fact send the sexually offensive video to under 14 year old girls, accepting responsibility for such a reprehensible act.  This assertion of purported fact is utterly and demonstrably false, and Plaintiffs will prove this assertion to be false.  In reality, On The Move did not send the video, and never "apologized" or in any other way admitted sending any such video.

47.     In addition, this false assertion of purported fact regarding Plaintiffs constitutes defamation because it is a false statement of fact which subjects the Plaintiffs to public contempt, ridicule, aversion or disgrace, and is designed to destroy Plaintiffs' reputation and business. Indeed, since Mr. Hodges and his dance company On The Move teach Irish Dance to young children, it is obvious that the allegation of purported fact that Plaintiffs supposedly apologized and thereby admitted sending a sexually explicit video to under 14 year old girls (by allegedly apologizing for such extremely outrageous conduct) subjected the Plaintiffs to public contempt, hatred, ridicule, aversion and disgrace.

48.     In addition, the false purported assertion of fact that Plaintiffs apologized and thereby admitted to sending a sexually explicit video to underage girls constitutes defamation *per se,* as it clearly injures Plaintiffs in their trade, business, and profession and impute salacious and immoral conduct to the Plaintiffs.  It is plainly incompatible with the proper conduct of an Irish Dance teacher and school who teach young children for them to send sexually inappropriate videos to young girls.

49.     As set forth below, Defendant Lutwin made the defamatory assertions regarding the Plaintiffs acting solely out of malice, and with actual knowledge of the falsity of the assertions. There are many facts set forth below evidencing that Defendant Lutwin acted solely out of malice. Moreover, Defendant Lutwin proceeded to maliciously and excessively publish and repeat these defamatory assertions regarding the Plaintiffs to multiple additional third parties who live around the world, and caused the defamatory allegations to be sent to a news outlet.

**B.      Detailed Allegations of Lutwin's Malice and Ongoing Excessive Publication**

50.     In making the above-quoted defamatory statements of purported facts regarding the Plaintiffs, Defendant Lutwin fabricated the defamatory allegations against the Plaintiffs acting solely out of malice, and thus made the false and defamatory allegations with actual knowledge of their falsity.

51.     There are many facts that demonstrate that Lutwin acted solely out of malice.  First, the timing of Defendant Lutwin's November 24, 2019 defamatory email evidences malice:  Within one week of Plaintiffs receiving approval on November 18, 2019 by Mid-Atlantic to participate in an Irish Dance camp, Defendant Lutwin – a competitor of Plaintiffs – intentionally and maliciously defamed Plaintiffs by sending multiple people within Mid-Atlantic the November 24, 2019 email

13

that contained the false and defamatory statements regarding the Plaintiffs, thereby destroying the Plaintiffs' reputation and business.

52.    Second, Lutwin's November 24, 2019 reveals that, while she repeatedly asserts as purported absolute fact that Plaintiff On the Move sent a sexually explicit video to two girls under the age of 14, and then purportedly admitted doing so by "apologizing" for this, Lutwin actually has absolutely no personal knowledge that these things occurred.  In fact, Lutwin's email later admits that she is making the defamatory allegations regarding the Plaintiffs without actually having *any* personal knowledge whatsoever for what she is claiming as fact.

53.    Indeed, a careful reading of Lutwin's November 24, 2019 email (attached at Exhibit B hereto) demonstrates that Lutwin does not even identify who actually told her about the alleged sexually inappropriate video -- whether it was the two alleged under 14 year old girls who told her this, the parents of the girls, some other girls, or the parents of those other girls, or someone else. In that regard, Lutwin states that "I received a call letting me know what happened on Friday." This assertion does not indicate who called her, but the next sentence reveals that it was not the parents of the under 14 girls.  Lutwin states in the next sentence that after getting the first call, Lutwin then "called the girls' parents immediately after, and talked to all of the students and families involved."   But Lutwin never states who actually represented to her what actually happened:  there is no statement as to whether it was the two under 14 girls, the parents of those girls, some other girls, or the parents of such other girls.  Thus, Lutwin's alleged "support" for making such outrageous defamatory accusations against the Plaintiffs is only a vague mess of hearsay on top of hearsay – which Lutwin maliciously uses to proclaim as self-evident "fact" the false and defamatory allegations she made against the Plaintiffs.

54.     Third, Lutwin admits in her November 24, 2019 email that there is actually no screen shot, or any other tangible evidence, of the alleged improper video or alleged apology being part of any Instagram chat that the Plaintiff On the Move supposedly sent.  Indeed, Lutwin asserts in her November 24, 2019 email to all five Mid-Atlantic individuals that she understands from unidentified sources that the sender of the allegedly explicit video – Plaintiff On the Move – allegedly "deleted" the sexual video and its purported apology from the Instagram chat, so that there is now no evidence whatsoever on the Instagram chat that the explicit video or apology were in fact ever sent.

55.     Fourth, Lutwin's explanation of the alleged incident contradicts the "screen shot" evidence that Lutwin earlier sent to only *one* of the five Mid-Atlantic individuals, but then tellingly *omitted* when she sent the defamatory comments to all five Mid-Atlantic individuals – because the "screen shot" evidence actually completely contradicts the fabricated story Lutwin was telling to the five Mid-Atlantic individuals.   Lutwin asserts in her November 24, 2019 email to all five Mid-Atlantic individuals that Plaintiff On the Move allegedly "deleted" the sexual video and its purported apology from the Instagram chat.  See Exhibit A hereto.  Yet, the screen shot that Lutwin earlier provided to only one of those five Mid-Atlantic people facially contradicts this allegation.

56.     Specifically, before Lutwin wrote to all five Mid-Atlantic individuals, at 10:20 am on November 24, 2019, Lutwin first wrote an email only to Colleen Cary.  In that 10:20 am email, Lutwin attached screen shots of the Instagram conversation at issue.  That screen shots show that On the Move was asked to send a copy of its promotional video.  The screen shots next show that On the Move responded by sending a video, and the icon of the video is the same icon from On the Move's promotional video.  Attached at Exhibit C here is copy of the screen shots of the text images that Lutwin attached only in her email to Ms. Cary.

15

57.     Importantly, this screen shot shows that the one and only video that On the Move sent was in fact ***not*** deleted.  In response to this single video, the next responsive text – which was clearly written in a transparent effort to manufacture so-called evidence of wrongdoing against the Plaintiffs – clearly accuses the sender as having sent <u>one</u> video, which was allegedly offensive.  Critically, this response does **not** make any mention of there having been two videos – one legitimate promotional video, and one inappropriate one.

58.     Thus, the fact that the single video icon in the chat was ***not*** deleted clearly shows that the story that Lutwin was reciting as fact actually makes no sense.   What makes more sense is the obvious:   the person feigning outrage at supposedly receiving an inappropriate video was making a false assertion.  No inappropriate video was sent.  In efforts to make up a story as to why the video and apology is not in the Instagram chain, Defendant Lutwin falsely asserts in her November 24, 2019 email that these were allegedly "deleted" by Plaintiff On the Move.  Yet, the screen shot clearly shows that the one and only video was not deleted.

59.     Another inconsistency between the screen shots of the Instagram chat and the false version of events the Defendant Lutwin told in her defamatory November 24, 2019 email is the sophisticated language being used by the supposedly "under 14" year old girls.  For example, the text that "objects" to the imaginary video that was never sent asserts, in very adult fashion: "The video you sent me was extremely inappropriate.  I'm not sure if that was an accident, but that was very unprofessional and wrong."   The sentence structure and phraseology (including the adult phrase "extremely inappropriate") clearly suggests that this feigned objection to the imaginary video was written by an adult, not under 14 girls, in efforts to manufacture some type of so-called "evidence" of wrongdoing.  Moreover, the author objects to "[t]he video you sent ***me***" – one person.  This further calls into the question the notion that the Instagram text was being received

*in real time* by two under 14 year old girls.  The bottom line is that the actual screen shots of the Instagram chat at issue contradicts the false story that Defendant Lutwin set forth in her November 24, 2019 email to five people associated with Mid-Atlantic.

60.   Because the screen shots of the Instagram conversation actually contradict the story that Lutwin fabricated, Lutwin intentionally ***omitted*** the screen shots of the conversation when she later wrote to all five Mid-Atlantic individuals.  See Ex. B.  This intentional omission is further evidence of Lutwin's malice.

61.   Fifth, Lutwin's November 24, 2019 email clearly manifests her ill-will, spite and pure malice, making clear that her intent is that the Plaintiffs must be destroyed regardless of any facts or evidence.  As explained above, after proclaiming as fact that Plaintiff On the Move sent the sexually explicit video to under 14 year old girls, and then purportedly apologized for it, Lutwin's stated basis for knowing this is a mash of hearsay upon hearsay, which doesn't even identify who confirmed the facts to Lutwin.  And Lutwin also admits that the incriminating video and alleged apology were purportedly "deleted" – so there is no tangible evidence for the hearsay upon hearsay.  Yet, Lutwin maliciously insists in her November 24, 2019 email what should be done despite this lack of facts or evidence:  taking a page from the Salem witch trials, and despite Lutwin's lack of personal knowledge as to what happened, lack of knowledge of which particular individual sent the alleged video, lack of any evidence of wrongdoing in the screen shots of the chat, and her admitting that it is unclear whether the sending of the video was "accidental or purposeful," Lutwin nevertheless proclaims that the Plaintiffs should not be "around our dancers."

62.   Completely missing from Lutwin's malicious insistence that the Plaintiffs must be instantly presumed unfit to be around children, is any notion that Lutwin and Mid-Atlantic should present the Plaintiffs with the accusations being made against them, and provide them with an

opportunity to explain their side of the story.  Lutwin's malice is clear on its face, because obtaining the facts and evidence was not her purpose.  Instead, Lutwin's purpose was to convert an unsubstantiated allegation into an immediate death sentence to the reputation and business of the Plaintiffs.  Lutwin's clear "destruction by accusation" approach – combined with the lack of any personal knowledge on her part, or any tangible evidence for what she was asserting – manifests that Lutwin was solely motivated by malice in making the false and defamatory assertions regarding the Plaintiffs.

63.     As set forth above, Defendant Lutwin intentionally fabricated the defamatory allegations against the Plaintiffs and acted solely out malice, with actual knowledge of the falsity of her fabricated defamatory assertions.  However, pleading in the alternative, even assuming that Defendant Lutwin contends that someone informed her of the defamatory allegations, Defendant Lutwin still acted with malice.   In the very least, Lutwin repeated the defamatory allegations regarding the Plaintiffs to numerous individuals with reckless disregard for the falsity of the statements, and repeated the defamatory allegations with a high degree of awareness of their probable falsity.  Even assuming that Defendant Lutwin asserts that someone else informed her that Plaintiffs had sent a sexually inappropriate video to underage girls, Defendant Lutwin clearly acted in a reckless and grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

64.     Defendant Lutwin knew Plaintiff Hodges personally, and had his contact information, yet inexplicably never even contacted him to hear his side of the story.  For example, Lutwin did not contact Plaintiff Hodges or his brother – both of whom she knew – to inquire whether the allegation was true, and which individuals had access to the On the Move Instagram account.  Lutwin also did not contact Instagram, nor did she ask if the parents of the alleged under

14 year old children contacted Instagram to investigate.  The screen shots of the chat do not evidence that On the Move sent anything inappropriate: there is only the one-sided statement in the chat that the allegedly-deleted video was inappropriate, which by itself proves nothing. Without any personal knowledge of what actually happened, no tangible evidence of any wrongdoing by Plaintiffs in the screen shots, and at best acting only on hearsay upon hearsay – all while the screen shots of the Instagram conversation contradicted the story being told – Defendant Lutwin, in the least, acted with reckless disregard for the falsity of the defamatory statements which she proceeded to repeat to numerous third parties as fact.

65.     It is critical that Lutwin does not state whether she or anyone (including the parents of the purported under 14 year old girls who were allegedly participating in the text) reported the incident to Instagram so that Instagram could investigate and get the facts.  If an inappropriate video was in fact sent and then deleted by the wrongdoer, a concerned adult could easily have reported the incident to Instagram to allow it to confirm whether the alleged wrongdoer/user in fact posted an improper video in the chat, and then in fact deleted it along with the alleged apology. Any truly concerned adult would also report the incident to Instagram in the hopes of confirming the truth of the allegation, and if it were true, ensuring that the On the Move account would be blocked by Instagram to protect children.  However, Lutwin took none of these simple fact-finding steps, because getting at the facts or the truth was not her motive: Lutwin was acting solely out of malice to destroy the Plaintiffs' reputations.

66.     Defendant Lutwin's failure to contact Plaintiff Hodges (who she personally knew and had contact information for), and her failure to explain whether any adult reported the incident and alleged deletions to Instagram, highlight that her purpose was not to gather facts, but instead that she acted solely out of malice.  In the very least, Defendant Lutwin repeated the defamatory

allegations regarding the Plaintiffs to numerous individuals with reckless disregard for the falsity of the statements, and repeated the defamatory allegations with a high degree of awareness of their probable falsity. Defendant Lutwin clearly acted in a reckless and grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

67. Defendant Lutwin's malice is also evidenced by the fact that she proceeded to excessively publish her defamatory statements regarding the Plaintiffs to numerous individuals.

68. On or around November 28, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Simona Santina Mauriello, who runs an Irish Dance school in the United Kingdom and sells costumes for Irish Dancers. On or around November 28, 2019, Ms. Mauriello was visiting the United States for an Irish Dance event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that November 28, 2019 encounter, Defendant Lutwin stated to Ms. Mauriello that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school."

69. On or around November 28, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Ellie O'Sullivan, an Irish Dance performer who lives in the United Kingdom. Ms. O'Sullivan was also visiting the United States for the Irish Dance event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that November 28, 2019 encounter, Defendant Lutwin stated to O'Sullivan that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school."

70. On or around December 1, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Rosey Jackson, who lives in the United Kingdom and sells Irish Dance merchandise including wigs. Ms. Jackson was also visiting the United States for the Irish Dance

event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that December 1, 2019 encounter, Defendant Lutwin stated to Ms. Jackson that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school."

71.     Finally, on information and belief, at some point between November 24, 2019 and January 2, 2020 Lutwin sent her defamatory allegations to news media in further efforts to spread her defamatory accusations, all of which she had no personal knowledge of, which was based on hearsay upon hearsay, and which was contradicted by the screen shots of the Instagram conversation that she conveniently omitted when she wrote to the five Mid-Atlantic individuals.

72.     In light of the above, Defendant Lutwin and Francis Academy excessively published the defamatory statements regarding the Plaintiffs to numerous people solely out of malice to spread the defamation widely.

73.     As set forth in detail above, this purported statement of fact – that Plaintiff sent a sexually explicit video to two girls under the age of 14 – is false, is defamatory, and also constitutes defamation per se.

74.     At all times relevant herein, Defendant Lutwin was acting on her own behalf, as well as on behalf of her Irish Dance School, the Francis Academy, and thus all of Defendant Lutwin's actions and the liability for such actions are imputed to the Francis Academy as well. Indeed, on the November 24, 2019 email in which Defendant Lutwin made her defamatory assertions, a large logo of the Francis Academy appears at the bottom of the email.

**V.      Mr. Hodges Receives Inquiry From a News Outlet Regarding The Defamatory Allegations Have Been Made Against Him**

75.     On January 3, 2020, Mr. Hodges received a shocking email from a woman named Kerry O'Shea who identified herself as a contributor to Irish Central, a popular global news publisher.  Ms. O'Shea's January 3, 2020 email claimed, among other things, that she received,

purportedly from "anonymous sources," a complaint regarding Mr. Hodges and his company On the Move sending an inappropriate Instagram message to student dancers at the Francis Academy. Specifically, Ms. O'Shea's email stated that there was a "complaint that was lodged against Jamie and Mitchell Hodges /On the Move regarding an inappropriate Instagram message and dancers at the Francis Academy."  A true and correct copy of this email is attached hereto as Exhibit D.

76.     Upon information and belief, Defendant Lutwin was the purported "anonymous source" who made and repeated the defamatory statements regarding Plaintiffs.  Defendant Lutwin was motivated solely by malice in repeating the defamatory assertions to Ms. O'Shea and the Irish Central, in the hopes of causing the defamatory assertions to be repeated in media and social media.

77.     Pleading in the alternative, if in fact another person was the anonymous source of the defamatory statements made to Ms. O'Shea, this still demonstrates that Defendant Lutwin has repeated her defamatory statements to multiple people, at least one of whom repeated it to the Irish Central.

78.     Due to the defamatory nature of the allegations, Mr. Hodges was outraged, and wanted an explanation.  Mr. Hodges, through counsel, responded to Ms. O'Shea the very next day, on January 4, 2020, unequivocally denying the allegations and stating that the dissemination of any article on this subject would defame the Mr. Hodges.  A true and correct copy of Plaintiffs' counsel's email to Ms. O'Shea is attached hereto as Exhibit E.

**VI.     IDTANA Questions Plaintiffs Regarding the Baseless Allegations**

79.     Approximately three weeks later, on January 22, 2020, Mr. Hodges discovered more details about the November 24, 2019 defamation, this time from Judy McCafferty, who at the time was a member and board member of both CLRG and IDTANA (Mid-Atlantic is one of the regions within IDTANA).  Ms. McCafferty's email stated that she was assigned to investigate

allegations regarding two young girls from the Francis Academy receiving an unidentified "video."

In connection with her investigation, Ms. McCafferty's January 22, 2020 email to Mr. Hodges

requested the personal email address of Mitchell Hodges, Mr. Hodges' brother and business

partner at On The Move.

80.     Specifically, the January 22, 2020 email from Judy McCafferty stated the

following:

> I need a personal email address for Mitchell Hodges. I am a member of Coiste Faire
> and have been assigned to look into the video that was received by 2 young girls
> from the Francis Academy of Irish Dance. Thank you.

A true and correct copy of Ms. Cafferty's email is attached hereto as Exhibit F.

81.      Because the allegation regarding the video was false, Mr. Hodges immediately

responded to Ms. McCafferty's email, and requested to know who had made the false allegations.

A true and correct copy of Mr. Hodges' email in response to Ms. McCafferty's email is attached

hereto as Exhibit G.

82.     In response, the very next day, on January 23, 2020, Ms. McCafferty responded,

and stated to Mr. Hodges that, "upon further review, the matter was closed."  A true and correct

copy of McCafferty's email is attached hereto as Exhibit H.  This naturally led Plaintiffs to

conclude that the investigation uncovered no substantiation for the allegations made against them,

and that the investigation was, indeed, "closed" by CLRG, IDTANA and its regions, including

Mid-Atlantic.

**VII.    On January 26, 2020, Defendant James Early Maliciously and Intentionally
Repeats The Defamatory Assertions To Hundreds of Teachers in the Irish
Dance Community**

83.     Three days after Ms. McCafferty (who was then a board member of IDTANA and

CLRG) informed Plaintiff Hodges that the investigation had been closed, and without any further

notice to the Plaintiffs, on January 26, 2020, Defendants Mid-Atlantic and James Early (who was also a board member of IDTANA and CLRG and the Regional Director of Mid-Atlantic) did the unthinkable:  during the January 26, 2020 meeting of Defendant Mid-Atlantic that was attended by hundreds of Irish Dance teachers throughout the Mid-Atlantic region (including teachers from New York, New Jersey, Delaware, and Pennsylvania), Defendant Early read out loud to all the hundreds of attendees at the meeting the false and defamatory accusation that had been made by Defendant Molly Kathleen Lutwin and the Francis Academy, namely, that the Plaintiffs sent an inappropriate video to young girls.

84.     The details and timing of the character assassination of Plaintiffs are chilling.  On January 26, 2020, Defendant Mid-Atlantic held its regularly scheduled quarterly meeting for all of its members, which consists of hundreds of Irish Dance teachers who teach in New York, New Jersey, Pennsylvania and Delaware.

85.     The January 26, 2020 meeting was held at Marriot Hotel in Saddle Brook, New Jersey, with dozens of attendees also participating via telephone.

86.     Included among those attendees of the meeting were dozens of colleagues of Plaintiff Hodges, who had worked with Mr. Hodges during his many successful Irish Dance performances and teaching career.  In addition, Mr. Hodges was known by nearly every attendee of the January 26, 2020 meeting by virtue of Mr. Hodges attending various events at many of their dance schools.

87.     As an Irish Dance instructor, Mr. Hodges' livelihood and reputation depended on these individuals working with him in the future.  Defendants knew of Mr. Hodges' essential connections to the dozens of attendees at the January 26, 2020 meeting.

88.     During the January 26, 2020 meeting, Defendant Early shockingly **read out loud** Defendant Lutwin's defamatory accusations regarding the Plaintiffs as purported statements of fact, to the hundreds of participants attending the meeting.   This was particularly malicious and outrageous, because Early read the Lutwin accusations out loud to hundreds of people despite the fact that he was fully aware of the fact that three days earlier, on January 23, 2020, Mr. Hodges was advised by Ms. McCafferty that the investigation regarding this matter was "closed."  Again, Defendant Early was a board member of IDTANA, the Regional Director of Mid-Atlantic (one of IDTANA's regions), and was on the Rules Committee of CLRG.  Thus, Early interacted regularly with co-board member of IDTANA Ms. McCafferty (who also served with Early in leadership positions at CLRG), who just three days earlier informed Plaintiff Hodges that the investigation into Lutwin's allegations had been "closed."

89.     Indeed, because the investigation was "closed," Mid-Atlantic and IDTANA never gave Plaintiff Hodges the opportunity he requested to fully understand what allegations were being made and an opportunity to provide his side of the story.  The reason that Early and Mid-Atlantic did not want Plaintiff Hodges' side of the story was because they were not interested in the truth, facts, evidence or fairness: rather, they were plainly motivated solely by malice to destroy the reputations of the Plaintiffs.

90.     Defendant Early's malicious repetition of the defamatory Lutwin allegations to hundreds of people was captured on an audio recording.  A copy of the transcription of the recording is attached hereto as Exhibit I.  The audio recording will be played at trial for the jury to hear.  As a result, Defendants will not be able to deny the outrageous and despicable defamation of Plaintiffs that occurred.

91.     As the audio recording proves, at the January 26, 2020 meeting of Mid-Atlantic, Defendant Early maliciously repeated as a purported statement of fact, that Plaintiff Hodges and his dance company On The Move sent a sexually explicit video to girls of the Francis Academy Irish Dance school.  Specifically, Defendant Early read out loud the following to hundreds of participants at the meeting:

> The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls' shared account. The girls agreed to upload the promotional video. **On the Move then sent them a video that was extremely inappropriate and disturbing.  The video is of a visibly naked woman running towards a camera and jumping on it.  The camera then reveals a cartoon or CGI baby within the private parts of the the woman.** It is shocking and difficult to describe… I would like to lodge a formal complaint to CLRG against Jamie and Mitch Hodges and On the Move.  I would appreciate the board letting me what can be done to protect our dancers and attendees next weekend. Thank you, Molly Lutwin.

See Exhibit I (transcript of audio recording of the January 26, 2020 Mid-Atlantic meeting).

92.     Defendant Early's repetition of the purported assertion of fact that On The Move sent an offensive video to girls is utterly and demonstrably false.  This assertion clearly conveys to the reader that Plaintiff Hodges and his dance company On The Move sent an offensive video of a visibly naked woman to girls.  In reality, On The Move did not send any such video, and did not send such a video to any girls.

93.     Defendant Early's repetition of the purported assertion of fact is also defamatory. Defendant Early's statement clearly conveys to the reader that Plaintiffs committed serious wrongdoing and clearly subjects Plaintiffs to public contempt, hatred, ridicule, aversion or disgrace.  Indeed, as stated above, since Mr. Hodges and his dance company On The Move teach Irish Dance to young children, it is obvious that reading out loud to hundreds of people the allegations that Plaintiffs sent an offensive video to girls subjects Plaintiffs to public contempt,

hatred, ridicule, aversion or disgrace, and completely destroys Mr. Hodges and his dance company's reputations.

94.     It also obvious that these defamatory statements were motivated solely by malice and intended to completely destroy Mr. Hodges' reputation and ability to earn a living.  Defendant Early made the defamatory allegations with actual knowledge of their falsity.  In addition, Defendant Early incredibly made the defamatory statements to literally hundreds of people in the Irish Dance community when he knew that Plaintiffs critically depended on their business relationships with the attendees at the meeting.

95.     In addition, Early's repetition of the defamatory allegations to hundreds of third parties also constitutes defamation *per se*, as it is of the type of statement that tends to injure Plaintiffs in their trade, business, and profession and imputes salacious and immoral conduct to the Plaintiffs.  It is obvious that widely publishing the allegation that the Plaintiffs sent an offensive video to girls to hundreds of people within the Irish Dance community injures the Plaintiffs' in their trade, business and profession because teaching Irish Dance involves interacting with young girls.  It is plainly incompatible with the proper conduct of an Irish Dance teacher and school who teach young children for them to send sexually inappropriate videos to young girls.

96.     The January 26, 2020 meeting was attended by Defendant Keith Labis, who was acting as the attorney for Defendant Mid-Atlantic.  During the meeting, Defendant Labis further defamed the Plaintiffs.

97.     Specifically, Mr. Labis stated the following at the January 26, 2020 meeting:

**What I want to say is that because of everything going on and because I have contact with this federal agency I went back to them immediately.  The next day they were involved.**  Its nice to report it to the Board and CLRG and that but really when **you suspect abuse**, like I said, you all remember I came here and talked about going for the gold with gymnastics cause my niece was involved and before

any of this happened. . . **So we made the recording to a federal police agent and then it followed it through to the New York State police**.

See Exhibit I.  Again, there is an audio recording of what Mr. Labis stated, so Mr. Labis – an attorney and officer of the court – will not be able to deny what he stated, and what he intentionally omitted to state.

98.     Defendant Labis' affirmative statements, combined with facts he knew but intentionally omitted, falsely conveys as purported fact that Mr. Hodges was as of January 26, 2020, actively being investigated by state and federal law enforcement authorities.  However, this purported assertion of fact and innuendo was false.  As Mid-Atlantic latter admitted, prior to the January 26, 2020 Mid-Atlantic meeting, Defendants Early and Labis knew that New York State authorities confirmed they had looked into the matter and they believed a crime had not been committed.

99.     Defendant Labis' purported assertion of fact that, as of January 26, 2020, an active investigation by government authorities was in process, is also defamatory.  Defendant Labis' statement clearly conveys to the reader that Plaintiffs are being investigated for serious wrongdoing that warranted a police investigation, and Labis went out of his way to analogize Plaintiffs' conduct to criminal instances of child abuse.  This clearly subjects Plaintiffs to public contempt, hatred, ridicule, aversion, or disgrace.  Indeed, since Plaintiff Hodges and his dance company On The Move teach Irish Dance to young children, the statement of purported fact that Mr. Hodges was being investigated by state and federal law enforcement authorities clearly subjects Plaintiffs to public contempt, hatred, ridicule, aversion, or disgrace, and completely destroys Mr. Hodges and his dance company's reputations.  It is also obvious that these defamatory statements were motivated solely by malice and intended to completely destroy Mr. Hodges' reputation and ability to earn a living because Defendant Labis knew at the time he spoke, and he

intentionally omitted, that in fact law enforcement authorities had already looked into the alleged actions by Plaintiffs and there was no finding of wrongdoing.

100.    In addition, Labis' false assertion that Plaintiffs were being investigated by government authorities also constitutes defamation *per se*, as it is of the type of statement that tends to injure Plaintiffs in their trade, business, and profession and impute salacious and immoral conduct to the Plaintiffs.   It is obvious that telling hundreds of people within the Irish Dance community the statement of purported fact that Plaintiffs were being investigated by state and federal law enforcement authorities for acts that are similar to child abuse would injure the Plaintiffs' trade, business and profession.

101.    Importantly, Defendant Labis' January 26, 2020 statement during the meeting also utterly contradicts Ms. McCafferty's January 23, 2020 email to Mr. Hodges three days earlier which affirmatively stated that the matter had been "closed" ***three days before this meeting took place***.  Labis, who is an attorney and officer of the court, was fully aware of this before he made his defamatory statements regarding the Plaintiffs, but acting solely out of malice, intentionally omitted this exonerating information.

### A.    Detailed Allegations of Early's and Labis' Malice, and Their Clearly Excessive Publication of the Defamatory Statements

102.    Defendant Early's repetition of Lutwin's defamatory allegations, and Labis' defamatory statements, were made solely out of malice, and with actual knowledge of that the defamatory assertions were false.   Early's and Labis' malice is especially clear given their intentional omission of several critical facts to the hundreds of attendees at the January 26, 2020 meeting, which facts Early and Labis were fully aware of before that meeting: (a) that they did not have any have first-hand knowledge of the allegations being made; (b) that Ms. McCafferty had clearly informed Plaintiff that the investigation was "closed" a few days prior to the January 26,

2020 meeting; (c) that Plaintiff Hodges asked on January 23, 2020 to understand what was being alleged and to have an opportunity to respond, but Early, Labis, IDTANA and Mid-Atlantic had intentionally refused to hear Hodges' side of the story, or provide Mr. Hodges with any opportunity to defend himself against the allegations whatsoever; (d) that Mr. Hodges had denied the allegations, and (e) Early, Labis and Mid-Atlantic had actual knowledge that authorities had already been notified, and such authorities had already concluded that there had been no finding of wrongdoing by the Plaintiffs.

103.    Defendants Early, Labis and Mid-Atlantic intentionally and maliciously omitted all of these critical facts, at the very same time that they repeated the wild, defamatory accusations made by Lutwin to hundreds of people within the Irish Dance community.   The reason that Defendants Early, Labis and Mid-Atlantic omitted these key facts was because their purpose was not to actually find out what had occurred or to "protect children."  Rather, acting solely out of malice, Defendants Early, Labis and Mid-Atlantic simply wished to destroy the Plaintiffs' reputations.

104.    Defendants Early, Mid-Atlantic and Labis maliciously omitted all the above exonerating information to falsely convey to the hundreds of attendees at the meeting that the Plaintiffs were under active investigation by authorities – a purported assertion of fact that they knew was false.

105.    Had Defendants Early, Labis and Mid-Atlantic truly intended to protect children, there were obviously numerous ways that they could have and should have taken steps to have the matter investigated, without utterly destroying the Plaintiffs reputation by needlessly repeating the false and unsubstantiated allegations regarding the Plaintiffs to literally hundreds of attendees at the meeting.

106.    Moreover, what is particularly outrageous is that prior to the January 26, 2020 meeting, Early, Labis and Mid-Atlantioc knew that, in fact, an investigation had already taken place by authorities, who had already determined that no wrongdoing had taken place by the Plaintiffs.   Thus, Defendant Early's reading out the unsubstantiated allegations to hundreds of people, and Labis' defamatory statements to the hundreds of attendees, was clearly motivated solely by malice, and clearly constituted excessive publication.

### IV.    The Plaintiffs Are Informed that Approval for Their Camp is Withdrawn, and That They Would No Longer Be Able Work in Irish Dance

107.    The very next day after the January 26, 2020 meeting, Defendant Early notified the Plaintiffs that their approval for the application for Irish Dance camp was rescinded.

108.    Specifically, on January 27, 2020, Defendant Early notified On the Move via email of the following:

> The application was received and was brought to the Rules Committee (Coiste Rialacha) for discussion and review… Additionally, **a formal complaint was filed with the region and brought to the meeting and read**. Following a discussion, the whole matter was sent to the Coiste Faire (Ethics Committee) for a further review and investigation. The timing on the turnaround is unknown. It should also be noted that based upon the letter of complaint from a teacher in Syracuse, the recommendation letter from the Mid-Atlantic Region has been rescinded pending a result from the Coiste Faire investigation. If I hear anything further, I will contact you.

109.    The determination by Early and Mid-Atlantic to rescind the approval was wrongful, and, on top of the defamation that had occurred, constituted tortious interference with contract and prospective business relations.   Based on the prior approval for its camp that Early had provided on November 18, 2019, at least 54 children had already signed up for On the Move's summer camp by November 24, 2019.   Just based on these children, Plaintiffs would have made approximately $53,946 in tuition fees.   Moreover, given the speed with which children were quickly signing up for its camp, if Early had not tortiously interfered as he did, Plaintiff On the

Move was clearly on a course to sell out the camp, and, but for Early's and Mid-Atlantic's tortious inference, Plaintiffs would have been able conduct the camp (including via remote video as many Irish Dance schools did in 2020 due the COVID-19), and would have earned approximately $249,750 in 2020 just for its work with the camp.

110.    Importantly, Defendant Early's January 27, 2020 email **confirms** and admits that Defendant Lutwin's false and defamatory statements regarding the Plaintiffs were read out loud at the January 26, 2020 meeting of Mid-Atlantic.

111.    As a direct and proximate result of Defendants' defamation, CLRG – the worldwide body that governs Irish Dance – determined to disqualify the Plaintiffs from being able to teach Irish Dance at all.  In a January 29, 2020 letter from Judy McCafferty on behalf of CLRG, Ms. McCafferty updated Defendant Lutwin on the false and defamatory complaint that Lutwin had launched against the Plaintiffs.  This letter is attached hereto as Exhibit J.

112.    As explained by Ms. McCafferty, CLRG had determined that the Plaintiffs' Irish Camp would not be approved.  Furthermore, Ms. McCafferty stated in that letter that Plaintiff Hodges and his brother Mitchell Hodges would be "flagged" if they ever sought to be certified by CLRG as Irish Dance teachers.

113.    Ms. McCafferty's January 29, 2020 letter also contains a shocking assertion that completely contradicts what Ms. McCafferty had informed Plaintiff Hodges on January 23, 2020. Specifically, Ms. McCafferty's January 29, 2020 letter states that the investigation into Lutwin's complaint about the Plaintiffs was "formally closed as of January 29, 2020."  See Exhibit J.  This assertion completely contradicts what Ms. McCafferty informed Plaintiff Hodges on January 23, 2020.  As set forth above, on January 23, 2020, Ms. McCafferty informed Plaintiff Hodges (in

response to his request to understand the allegations made against him, and to be able to respond), that the investigation was "closed" as of that date, i.e., January 23, 2020.

114.    The new assertion by Ms. McCafferty on January 29, 2020 -- that the investigation was not closed on January 23, 2020, but was instead purportedly closed as of January 29, 2020 – raises a number of extremely troubling issues that demonstrate that Plaintiffs were literally the victims of a hit job.  On the one hand, if in fact the investigation was still ongoing on January 23, 2020 when Plaintiff Hodges asked to understand the allegations being made against him, then Ms. Cafferty's assertion to Mr. Hodges that the investigation was closed was a false and fraudulent statement that was clearly intended to deliberately mislead Hodges into thinking that the investigation was closed, when in fact it was not.  Worse yet, this would mean that CLRG, IDTANA and Mid-Atlantic intentionally refused to provide information to Mr. Hodges, or get his version of the story and facts, while the investigation was still ongoing.

115.    On the other hand, if the investigation was closed as of January 23, 2020, then Ms. McCafferty's statement that the investigation was closed on January 29, 2020 is an obvious and fraudulent attempt to change history to offer Defendant Early some made up "defense" for his repeating Lutwin's defamatory comments to hundreds of people at the January 26, 2020 meeting while being fully aware that (a) the investigation was closed three days earlier; (b) omitting to disclose to the hundreds of attendees that Mr. Hodges was told that the investigation was closed when Hodges asked to be informed of what was being alleged; and (c) that authorities had already found no wrongdoing.

116.    In light of the above, the blatant discrepancy between the dates that Ms. McCafferty told Mr. Hodges the investigation was closed, and the date that she told Defendant Lutwin the investigation was closed, highlights the malice of the Defendants, and that the Plaintiffs were

indeed subject to completely unfair and outrageous witch hunt tactics that shock the conscience and have no place in a civilized society.

## X.   Plaintiffs Again Object to the Outrageous Defamation

117.    Upon learning on what transpired during the January 26, 2020 Mid-Atlantic meeting, on February 3, 2020, Plaintiffs sent the Defendants Early, Mid-Atlantic, and the individual board members a letter responding to the outrageous defamation described above.  In the February 3, 2020 letter, Plaintiffs' counsel spelled out that given the fact that Mr. Hodges has never been found to have engaged in any wrongdoing and had been informed that the matter was "closed" as of January 23, 2020, the Defendants' repetition of the false defamatory allegations to hundreds of attendees was particularly outrageous and malicious.

118.    In the February 3, 2020 letter Mr. Hodges' counsel specifically stated the following:

> Despite the undisputed fact that Jamie Hodges has never been found to have committed any inappropriate act, and that he was informed that the matter had been closed, you outrageously and maliciously proceeded to make defamatory statements regarding Jamie Hodges at the January 26, 2020 meeting that was attended by hundreds of people in the Irish Dance community.
>
> The Eastern Region, IDTANA, CLRG and affiliated entities and officers are complicit in this defamation. It is obvious that if an unsubstantiated complaint is received regarding any person, it is unfair, unlawful and actionable to publicly repeat the defamatory comments to dozens of people (indeed, hundreds of people), without there being any substantiation for the accusation, or any opportunity for the person accused to confront his accuser and be provided an opportunity to defend the allegation. This is a type of malicious character assassination that is simply outrageous. For the Eastern Region, IDTANA, CLRG and its officers to encourage and allow this systematic character assassination and defamation is disgraceful and unlawful.

A true and correct copy of the February 3, 2020 letter sent to the Defendants is attached hereto as Exhibit K.

119.    In addition, the February 3, 2020 letter demanded a written retraction to the people who attended the January 26, 2020 meeting.  To date, the Defendants never responded to Plaintiffs'

February 3, 2020 letter, nor did they issue any retraction to the hundreds of people who attended the January 26, 2020 meeting.

**XI.    The Blatant and Obvious Cover-Up Of What Really Transpired At The January 26, 2020 Meeting**

120.    Adding insult to injury, Defendants Mid-Atlantic, Early and Labis then engaged in a blatant cover up attempt.  In a failed effort to cover up the undeniable fact that the defamatory statements were uttered to hundreds of people, Defendants Mid-Atlantic, Early and Labis decided to engage in fraud and created fake records of what actually transpired during the January 26, 2020 meeting.   After receiving the Plaintiffs' February 3, 2020 letter, these defendants created fraudulent minutes of the January 26, 2020 meeting.

121.    Specifically, these defendants created minutes of the January 26, 2020 Mid-Atlantic meeting, which minutes are dated February 11, 2020.  These "minutes" blatantly recite a false account and summary about what was actually stated by Defendants Early and Labis at the January 26, 2020 meeting.  These falsified minutes falsely indicate that during the January 26, 2020 Mid-Atlantic meeting, the following was stated: "New York authorities looked into the matter and believed that a crime had not been committed."  A true and correct copy of the minutes of the January 26, 2020 meeting is attached hereto as Exhibit L.

122.    However, as the audio recording of the January 26, 2020 meeting demonstrates, the Defendants Early, Labis and Mid-Atlantic in fact deliberately omitted this important exonerating information.

123.    Moreover, the minutes falsely assert that "correspondence" was read out loud about a dance camp.  In reality, what Early and Labis read out loud were the above-quoted outrageous defamatory assertions of purported fact about the Plaintiffs in front of hundreds of attendees.

124.     Thus, after the Defendants maliciously defamed the Plaintiffs in front of hundreds of third parties, and after the Plaintiffs' attorney objected on February 3, 2020 to this outrageous destruction by accusation, the Defendants clearly wanted to create false minutes that deceptively minimize what was actually stated, and give the false impression that Early and Labis fairly informed all the hundreds of attendees at the January 26, 2020 meeting that law enforcement authorities had found no wrongdoing.  However, this cover-up scheme fails in light of the fact that an audio recording of the January 26, 2020 meeting exists, and which irrefutably captures the despicable and malicious defamation carried out by Defendants Early, Labis and Mid-Atlantic.

**XII.     Defendants Lutwin and Early Quickly Gain from The Unfair Destruction of Plaintiffs**

125.     The unfair destruction of Plaintiffs' reputation, and the resulting unfair termination of its summer camp, clearly benefitted a competing Irish Dance summer camp in which Defendant Mr. Early has an economic interest.

126.     Less than two weeks after Defendant Early destroyed the Plaintiffs' reputation in front of hundreds of third parties in the Irish Dance community at the January 26, 2020 meeting, on February 10, 2020, an Irish Dance summer camp named "Camp Rince Ceol" began to send emails soliciting customers with an emphasis on an purported "child safety policy."

127.     Thus, Camp Rince Ceol was clearly seizing on the character assassination and destruction of Plaintiffs.

128.     Defendant Early works for compensation at Camp Rince Ceol as a grade "examiner."

129.     Thus, less than two weeks after the Plaintiffs' reputations and careers were unfairly destroyed by the defamatory allegations that Defendant Early read out loud to hundreds of third

parties, Camp Rince Ceol opportunistically touted its "child protection policy" and thus lured in many Irish Dance students who otherwise would have attended the Plaintiffs' Irish Dance camp.

### XIII. Plaintiffs Suffer Special Damages as A Direct and Proximate Result of Defendants' Defamation

130.    As a direct and proximate result of the above defamatory statements by the Defendants, Plaintiffs have suffered damages that flow directly from the injury to the Plaintiffs' reputation.  These damages include the Plaintiffs' lost income as a result of the cancelation of the Plaintiffs' camp, lost earnings from other teaching opportunities that were destroyed by the defamation, lost future earning capacity and lost business opportunities.

131.    From 2016 to 2019, Plaintiff Hodges worked hard to accomplish increasing success and revenues from teaching Irish Dance.  For example, in 2017 Plaintiff Hodges earned approximately $85,000 from teaching Irish Dance.  Thereafter, in 2018, Plaintiff's income from teaching Irish Dance rose to approximately $107,600.

132.    Plaintiff Hodges incorporated On the Move (along with his brother) in 2019.  In 2019, Plaintiffs Hodges and On the Move earned $142,990 teaching Irish Dance through at least 33 Irish Dance schools listed in Exhibit M hereto.

133.    As a direct and proximate result of the Defendants' defamation as set forth above, Plaintiffs' ability to teach Irish Dance and earn income has been completely destroyed.  But for the Defendants' defamation, the Plaintiffs would not have suffered the damages directly and proximately caused by Defendants' defamation, and would have earned hundreds of thousands of dollars a year in income from teaching Irish Dance.

134.    As set forth above, the Defendants maliciously defamed the Plaintiffs to numerous third parties within the close-knight Irish Dance community.   As a direct and proximate result of this defamation, parents and students within the Irish Dance community are no longer willing to

pay to have the Plaintiffs to teach Irish Dance. Moreover, the approximately 33 Irish Dance schools at which Plaintiffs were teaching will longer employ the Plaintiffs or pay them any money to teach at their schools.

135. Before the January 26, 2020 meeting, customers were signing up for Plaintiffs' Irish Dance camp on a daily basis, but immediately after the meeting, customers stopped signing up. In fact, Mr. Hodges has received emails from a number of parents citing the false accusations stated at the meeting as *the reason* for withdrawing their child's attendance at the camp.

136. For all of these reasons, On The Move was forced to cancel its summer camp, not only losing out on the significant start-up costs, but also losing all future prospects of long term income, which Mr. Hodges had worked for many years to build.

## FIRST CLAIM FOR RELIEF
## DEFAMATION
### (Against All Defendants)

137. The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

138. As set forth above, all of the Defendants published false statements of purported fact regarding the Plaintiffs (who are private figures) to numerous third parties, these purported statements of fact are defamatory, and the statements are not the subject of any privilege.

139. As set forth in detail above, there are numerous facts which clearly evidence that the Defendants acted solely with malice.

140. Defendants had actual knowledge that the information they published concerning the Plaintiff was false, and they acted with malice. In the least, Defendants acted with reckless disregard for the falsity of their statements, and repeated the defamatory allegations with a high degree of awareness of their probable falsity. Even assuming that the Defendants assert that

someone else informed them that Plaintiffs had sent a sexually inappropriate video to underage girls, Defendants clearly acted in a reckless and grossly irresponsible manner without due consideration for the standards of information gathering and dissemination ordinarily followed by responsible parties.

141.    Thus, as set forth above, the Defendants' false statements regarding the Plaintiffs solely out of malice and with the intent to harm Plaintiffs.

142.    In light of the above, the Defendants clearly defamed the Plaintiffs.  The false statements made regarding Plaintiffs constitute false statements of fact which tend to expose the Plaintiffs to public contempt, ridicule, aversion or disgrace.  The Defendants published these false statements to third parties, without authorization or privilege, and did so with fault (acting with malice), causing special harm to the Plaintiffs.

143.    As a direct and proximate result of the Defendants' defamation, the Plaintiffs suffered special harm that flows directly from the injury to reputation caused by the Defendants' defamation.  These damages include the Plaintiffs' lost income as a result of the cancelation of the Plaintiffs' camp, lost earnings from other teaching opportunities that were destroyed by the defamation, lost future earning capacity and lost business opportunities.

144.    But for the Defendants' defamation, the Plaintiffs would not have suffered the damages directly and proximately caused by Defendants' defamation.

145.    Punitive damages are warranted against the Defendants.  Because the Defendants did not allow Plaintiffs to respond to accusations and then informed the Plaintiffs that the investigation was "closed" on January 23, 2020, the decision to defame Plaintiffs to the entire Irish Dance community three days later on January 26, 2020 was particularly malicious.    The

defamation was therefore aimed at the public generally, and is so egregious as to warrant punitive damages.

146.    Plaintiffs are entitled to an award of compensatory and punitive damages in an amount to be determined at trial, but clearly well in excess of the jurisdictional threshold of $75,000.

**SECOND CLAIM FOR RELIEF**
**DEFAMATION PER SE**
**(Against All Defendants)**

147.    The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

148.    The defamatory statements that are set forth above that Defendants published to many third parties regarding the Plaintiffs are false and defamatory, and not the subject of any privilege.

149.    Defendants had actual knowledge that the information they published was false, and they acted with malice.   In the alternative, in knowingly publishing highly derogatory information regarding the Plaintiffs (who are private figures), Defendants acted in a grossly irresponsible manner and without due consideration for the standards of information gathering, and with reckless disregard of the falsity of their assertions concerning the Plaintiffs.

150.    Defendants' false statements concerning the Plaintiffs constitute defamation *per se*, as they are of the type that tend to injure Plaintiffs in their trade, business, and profession and impute salacious and immoral conduct to the Plaintiffs.   Because teaching Irish Dance involves teaching young children, the defamatory statements made by the Defendants regarding Plaintiffs, including that Plaintiffs sent a sexually offensive video to girls, are obviously completely destructive to Mr. Hodges' profession and On The Move's business.

151.    It is plainly incompatible with the proper conduct of an Irish Dance teacher and school who teach young children for them to send sexually inappropriate videos to young girls.

152.    The Defendants made the defamatory statements regarding Plaintiffs solely out of malice and with the intent to destroy the Plaintiffs' reputation and business.

153.    As a direct and proximate result of the Defendants' defamation, Plaintiffs have suffered damages, including but not limited to damage to their reputation, their business relationships and Mr. Hodges' career.   These damages include the Plaintiffs' lost income as a result of the cancelation of the Plaintiffs' camp, lost earnings from other teaching opportunities that were destroyed by the defamation, lost future earning capacity and lost business opportunities. However, because the defamation by Defendants consists of defamation *per se*, it is not necessary for Plaintiffs to plead or prove special damages.

154.    But for the Defendants' defamation, the Plaintiffs would not have suffered the damages directly and proximately caused by Defendants' defamation.

155.    The injurious character of Defendants' false statements is a self-evident fact of common knowledge which need not be pleaded or proved.

156.    As such, Defendants' false statements are actionable without proof of special damages.

157.    Plaintiffs seek damages and punitive damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF
### TORTIOUS INTERFERENCE WITH PROSPECTIVE BUSINESS RELATIONS
### (On The Move Against All Defendants)

158.    The above paragraphs are repeated and incorporated by reference as if fully set forth herein.

159.    Defendants' wrongful conduct detailed above also constitutes tortious interference with prospective business relations.

160.    Defendants knew of On The Move's business relationships with third parties and intentionally and maliciously interfered with those relationships.  Defendants Early and Molly Kathleen Lutwin are Irish Dance teachers and are well aware of On The Move's business relationships and prospective business relationships with other Irish Dance students within the tight-knit Irish Dance community.

161.    Defendants acted with the sole purpose of harming the Plaintiffs, and used wrongful, dishonest, unfair or improper means to injure those business relationships by virtue of Defendants scheme to destroy On The Move's Irish Dance business, which included fraudulent misrepresentations.

162.    These fraudulent misrepresentations included the false and defamatory allegation that Plaintiffs sent a sexually offensive video to minors.  The Defendants engaged in this conduct for the wrongful and malicious purpose of destroying On The Move's business relationships with its customers for its Irish Dance camp and future teaching opportunities.

163.    Defendants' wrongful conduct constitutes tortious interference with prospective economic advantage.  Defendant Early also suffered from a conflict of interest and wrongfully exploited his authority at Mid-Atlantic, IDTANA and CLRG to destroy the Plaintiffs. The Plaintiffs had business relations with third parties.   The Defendants knew of these business relations.   Defendant Early directly contacted these third parties using wrongful means, and induced them not to do business with On The Move.  The Defendants' wrongful means included fraudulent misrepresentations and defamation concerning the Plaintiffs, including reading aloud the defamatory allegations to hundreds of people within the Irish Dance community, and

circulating emails concerning an apparent "updated child protection policy" as a means of destroying On The Move's reputation and business relationships with its existing and prospective clients and customers.  Defendants acted solely for the malicious purpose of inflicting intentional harm on Mr. Hodges and destroying On The Move's business relationships, which the Defendants accomplished.

164.    As a direct and proximate result of Defendants' defamation campaign, not only has Mr. Hodges' reputation been destroyed, but On The Move's business has also been destroyed. Parents of children that had agreed to attend the Plaintiffs' camp stated that they would not attend the camp in light of the malicious false statements made by the Defendants.

165.    As a direct and proximate result of Defendants' tortious interference, the Plaintiffs' suffered damages including the Plaintiffs' lost income as a result of the cancelation of the Plaintiffs' camp, lost earnings from other teaching opportunities that were destroyed by the defamation, lost future earning capacity and lost business opportunities.

166.    As a direct and proximate result of Defendants malicious and wrongful defamation, On The Move is unable to operate and conduct its camp because the Defendants maliciously destroyed its business relationships.

167.    Importantly, it is not only the Defendants' wrongful defamation that caused the tortious interference with Plaintiffs' prospective business relations.  Defendant Early's and Mid-Atlantic's wrongful withdrawal of the Mid-Atlantic's approval of Plaintiffs' camp – a blatant and wrongful exercise of Early's conflict of interest – is an independent wrongful act that goes beyond Defendants' defamation.

168.    The damages resulting from Defendants' tortious interference with Plaintiffs' prospective business relations also do not completely overlap with the damages from Defendants'

defamation.  For example, even if there were any parents or students who wanted to participate in an Irish Dance camp with the Plaintiffs, or any Irish Dance schools who wanted to allow Plaintiffs to conduct their dance camp through their schools, Mid-Atlantic and Early have made that impossible because, as set forth above, Defendants Early and Mid-Atlantic have wrongfully refused to approve the Plaintiffs to teach with any Irish Dance schools.  Thus, the damages sought in Plaintiffs' tortious interference with prospective business relations claim are not duplicative of the damages sought in Plaintiffs' defamation claim.

169.    As a direct and proximate result of the Defendants' defamation, On The Move has been damaged in an amount to be determined at trial.  Punitive damages are also sought and warranted for the outrageous and malicious nature of the wrongs committed by the Defendants.

## JURY DEMAND

170.    Pursuant to Federal Rule of Civil Procedure 38, Plaintiffs hereby demand a jury trial on the claims set forth above.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs pray for judgment against Defendants on all of Plaintiffs' causes of action as follows:

      a.  An award of compensatory and punitive damages in an amount to be determined at trial;

      b.  A declaratory judgment that Defendants' statements regarding the Plaintiffs are false;

      c.  An award of attorneys' fees, costs, and expenses; and

      d.  Such other and further relief as the Court deems just and proper.

Dated: New York, New York
       November 23, 2020

**CATAFAGO FINI LLP**

/s/ Tom M. Fini
Tom M. Fini, Esq.
Adam Sherman, Esq.
The Empire State Building
350 Fifth Avenue, Suite 7710
New York, NY 10118
212-239-9669
tom@catafagofini.com
*Counsel for Plaintiffs*