UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMIE HODGES AND ON THE MOVE LTD,

                              Plaintiffs,

          – against –

JAMES EARLY, IRISH DANCING TEACHERS
ASSOCIATION OF NORTH AMERICA-MID-
ATLANTIC REGION, INC., MOLLY KATHLEEN
LUTWIN, FRANCIS ACADEMY OF IRISH DANCE,
and KEITH L. LABIS,

                              Defendants.

---

20 Civ. 9878 (ALC)

**MEMORANDUM OF LAW OF IN SUPPORT OF DEFENDANTS JAMES EARLY'S,
IRISH DANCING TEACHERS ASSOCIATION OF NORTH AMERICA MID-
ATLANTIC REGION, INC.'S, AND KEITH L. LABIS'S MOTION TO DISMISS**

YANKWITT LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 801-5930
*Counsel for Defendants James Early, Irish
Dancing Teachers Association of North America
Mid-Atlantic Region, Inc., and Keith L. Labis*

## <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ................................................................................................................... 3

    I.   The Complaint ......................................................................................................... 3

    II.  Procedural History ................................................................................................... 8

LEGAL STANDARD ............................................................................................................ 8

DISCUSSION ..................................................................................................................... 9

    I.   The Complaint Fails to State a Plausible Defamation Claim ............................................ 9

        A.  Applicable Law ................................................................................................. 9

            1. Defamation .............................................................................................. 9

            2. Privilege................................................................................................. 11

            3. Malice ................................................................................................... 12

            4. Excessive Publication ............................................................................... 13

        B.  The Alleged Statements Are Privileged................................................................ 15

        C.  Plaintiffs' Allegations of Malice Are Insufficient ..................................................... 17

        D.  Plaintiffs' Allegations of Excessive Publication Are Insufficient ............................... 20

        E.  Plaintiffs' Allegations Against Labis Have Additional Insufficiencies...................... 22

    II.  The Complaint Fails to State a Plausible Claim for Tortious Interference with Prospective Business Relations........................................................................................... 23

CONCLUSION ................................................................................................................ 25

## TABLE OF AUTHORITIES

**Cases**                                                                              **Page(s)**

*Altschuler v. Univ. of Pennsylvania Sch. of Law*,
    201 F.3d 430 (2d Cir. 1999) ................................................................... 19

*Anas v. Brown*,
    702 N.Y.S.2d 732 (App. Div. 4th Dep't 2000) .................................. 14, 21

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................ 8

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................ 8

*Berger v. Temple Beth-El of Great Neck*,
    839 N.Y.S.2d 504 (App. Div. 2d Dep't 2007)................................... 14, 19

*Berman v. Sugo LLC*,
    580 F. Supp. 2d 191 (S.D.N.Y. 2008) ..................................................... 24

*Bidonthecity.com LLC v. Halverston Holdings Ltd.*,
    2014 WL 1331046 (S.D.N.Y. Mar. 31, 2014).......................................... 9

*Biro v. Conde Nast*,
    807 F.3d 541 (2d Cir. 2015) ................................................................... 13

*Biro v. Conde Nast*,
    883 F. Supp. 2d 441 (S.D.N.Y. 2012) ............................................... 10, 23

*Byam v. Collins*,
    111 N. Y. 143 (Ct. App. 1888) ............................................................... 12

*Chandok v. Klessig*,
    632 F.3d 803 (2d Cir. 2011) ............................................................*Passim*

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
    669 F. Supp. 2d 405 (S.D.N.Y. 2009) ............................................... 11, 22

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
    248 F. Supp. 3d 487 (S.D.N.Y. 2017) ..................................................... 24

*Grayson v. Ressler & Ressler*,
    271 F. Supp. 3d 501 (S.D.N.Y. 2017) ..................................................... 24

*Harte-Hanks Comm. v. Connaughton*,
    491 U.S. 657 (1989) .................................................................................. 13

*Hillel v. Obvio Health USA, Inc.*, No. 20-CV-4647 (LAP), 2021 WL 229967, at *10 (S.D.N.Y.
    Jan. 21, 2021)..................................................................................... 10, 24

*Kassner v. 2nd Ave. Delicatessen Inc.*,
    496 F.3d 229 (2d Cir.2007) ........................................................................ 9

*Konikoff v. Prudential Ins. Co. of Am.*,
    234 F.3d 92 (2d Cir. 2000) ................................................................... 13, 15

*Liberman v. Gelstein*,
    80 N.Y.2d 429 (Ct. App. 1992) ....................................... 11, 13, 16, 18

*Makinen v. City of New York*,
    53 F. Supp. 3d 676 (S.D.N.Y. 2014) ........................................................ 9

*Melious v. Besignano*,
    37 Misc. 3d 1203(A), 964 N.Y.S.2d 60 (Sup. Ct. 2012) ..................... 14

*Orenstein v. Figel*,
    677 F. Supp. 2d 706 (S.D.N.Y. 2009) ............................................ 10, 12, 18

*Peters v. Baldwin Union Free Sch. Dist.*,
    320 F.3d 164 (2d Cir. 2003) ............................................................... 9, 11

*Plasticware, LLC v. Flint Hills Res., LP*,
    852 F. Supp. 2d 398 (S.D.N.Y. 2012) .................................................. 24

*Scutti Enters., LLC. v. Park Place Entm't Corp.*,
    322 F.3d 211 (2d Cir.2003) .................................................................. 24

*Shapiro v. Health Ins. Plan of Greater New York*,
    7 N.Y.2d 56 (Ct. App. 1959) ......................................................... 12, 17

*Slue v. New York Univ. Med. Ctr.*,
    409 F. Supp. 2d 366 (S.D.N.Y. 2006) .................................................. 13

*Stukuls v. State*,
    397 N.Y.S.2d 740 (Ct. App. 1977)........................................... 13, 14, 15

*Tannerite Sports, LLC v. NBCUniversal News Grp.*,
    864 F.3d 236 (2d Cir. 2017) .................................................................. 10

*Thai v. Cayre Grp., Ltd.*,
   726 F. Supp. 2d 323 (S.D.N.Y. 2010) ............................................................ 10, 12

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) ................................................................... 11

*Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*,
   2014 WL 463616 (S.D.N.Y. Feb. 4, 2014) ....................................................*Passim*

*Tracy v. Newsday*,
   5 N.Y.2d 134 (1959) ................................................................................................ 10

*Wexler v. Allegion (UK) Ltd.*,
   374 F. Supp. 3d 302 (S.D.N.Y. 2019) ................................................................... 10

*Wilson v. New York*,
   2018 WL 1466770 (E.D.N.Y. Mar. 26, 2018) ................................................... 10, 23

## Rules

Fed. R. Civ. Proc. 12(b)(6) ................................................................................................ 8

## Other Authorities

Restatement (Second) of Torts § 604 (1977) .......................................... 13, 14, 15, 21

Defendants James Early, Irish Dancing Teachers Association of North America Mid-Atlantic Region, Inc. ("Mid-Atlantic Teachers"), and Keith L. Labis, Esq. (collectively "Defendants") respectfully submit this memorandum of law in support of Defendants' motion to dismiss the complaint (the "Complaint") of Plaintiffs Jamie Hodges and On The Move Ltd. ("Plaintiffs").

## PRELIMINARY STATEMENT

In this case, Plaintiffs allege that Defendants – a not-for-profit organization of Irish Dance teachers, its volunteer Regional Director, and a lawyer providing the organization counsel – defamed them during a Mid-Atlantic Teachers quarterly membership meeting by reading out loud a correspondence the Mid-Atlantic Teachers Board (the "Board") had received.  The correspondence was a formal complaint from an Irish Dance teacher, co-defendant Molly Kathleen Lutwin ("Lutwin"), that Plaintiffs had sent obscenity to minors via Instagram.  According to materials attached to the Complaint, after the correspondence was read, there was inquiry from members regarding whether and how the Board further reported Lutwin's formal complaint, to which Defendants responded that they had reported it to criminal authorities.

Plaintiffs assert claims for defamation and tortious interference with prospective business relations against Defendants upon the foregoing, denying that they sent the obscene video and repeatedly alleging conclusorily that Defendants acted maliciously.  But the allegations in the Complaint are simply nowhere near sufficient to support these claims.  The claims are foreclosed by clearly-established precedent which establishes that the statements, even if false, are not defamatory.

The claims against the Defendants should be dismissed entirely.  Even accepting the allegations in the Complaint as true, which they are not, the allegedly defamatory statements are

privileged.  The statements are squarely within the protection of the common interest privilege, as they were allegedly made at a members' only meeting of Mid-Atlantic Teachers, and the members shared an interest in Lutwin's correspondence, and likewise within the privilege for statements made by those discharging a duty.  Because it is an element of defamation that the alleged statements are not privileged, courts routinely dismiss claims based on statements that are privileged in order to prevent impediment to the flow of information between members of a group with a common interest and duty.

Plaintiffs' apparent attempt to avoid the dispositive privilege issue by pleading malice falls far short.  Allegations of malice must be sufficient to demonstrate, if proved, that the one and only cause for publication was defendant's spite, or that the defendant in fact entertained serious doubts about the truth of the publication.  Plaintiffs do not sufficiently allege either form of malice.  Indeed, the documents attached to their Complaint demonstrate the contrary:  that the complaint against Plaintiffs was credible, serious, and merited reporting, and, further, that Defendants treated it as such.

Moreover, Plaintiffs' apparent attempt to avoid the privilege by emphasizing that Mid-Atlantic Teachers had hundreds of members also is misplaced.  There is no limit on the number of people who may share a common interest for purposes of the privilege, and a statement is not excessively published unless it is made to people who do not come within the privilege, which is not alleged here.

The defamation claim against Labis fails for the additional reason that he is not alleged to have made a false statement.  To the extent Plaintiffs claim defamation by omission, such allegations are not actionable under New York law.  And insofar as their claim as predicated on allegedly false implications of true statements, Plaintiffs fail to allege sufficient facts to support

the application of that narrow defamation doctrine.

Plaintiffs' tortious interference claim likewise is insufficient, as multiple elements are insufficiently pleaded, and the claim is nearly entirely duplicative of the defamation claim.

Accordingly and for the reasons set forth below, the claims against Defendants should be dismissed.

## BACKGROUND

Defendant Mid-Atlantic Teachers is a non-profit teacher's organization dedicated to promoting Irish Dance. Defendant Early is a volunteer at Mid-Atlantic Teachers serving as its Regional Director, and defendant Labis is a lawyer who provides counsel to Mid-Atlantic Teachers. Plaintiff Jamie Hodges is an Irish Dance teacher who is not a member of Mid-Atlantic Teachers, and plaintiff On the Move is Hodges' company.

## I.    The Complaint

In the Complaint, Plaintiffs allege that Early defamed them at a quarterly meeting of members of Mid-Atlantic Teachers on or about January 26, 2020, by "*read[ing] out loud*" during the correspondence portion of the meeting a written complaint that had been submitted to Mid-Atlantic Teachers. (Compl. ¶ 88 (emphasis in original); *see id.* ¶¶ 83-106.) The written complaint was from an Irish Dance teacher, co-defendant Molly Kathleen Lutwin, and was that Plaintiffs had sent obscenity to minors via Instagram. (Compl. ¶¶ 40-41; *id.* Ex. B.)

Plaintiffs allege that previously, approximately two months before the quarterly meeting of members, Hodges contacted Early to talk about a Dance Camp that Hodges sought to offer. (*Id.* ¶ 31; *id.* Ex. A.) Plaintiffs allege that on or about November 18, 2019, Early emailed Hodges that Mid-Atlantic Teachers "have no problem with your Dance Camp . . . On the Move being run within the [Mid-Atlantic Region]. . ." (*Id.* ¶ 33; *id.* Ex. A.)

Plaintiffs allege that approximately six days later, on or about November 24, 2019, Mid-Atlantic Teachers received via email the written complaint from Lutwin.  (*Id.* ¶¶ 40-41; *id.* Ex. B.) Lutwin was a member of Mid-Atlantic Teachers.  Her correspondence was directed to the Mid-Atlantic Teachers Board.  Its subject was "Formal complaint – On the Move."  It read:

> To the Mid Atlantic Board,
>
> I need to make you aware of an extremely inappropriate situation involving Jamie and Mitchell Hodges and their business, On the Move.  I have also notified the local authorities and will be speaking to them this week.
>
> There are two u14 girls in my school, Francis Academy of Irish Dance, who share and run an Instagram account for Irish Dancing.  The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls shared account.  The girls agreed to upload the promotional video.
>
> On the Move then sent them a video that was extremely inappropriate and disturbing.  The video is of a visibly naked woman running towards a camera and jumping on it.  The camera than reveals a cartoon or CGI baby within the private parts of the . . . woman.  It is shocking and difficult to describe.
>
> The girls did not know what to do.  They responded to On the Move that the video was inappropriate.
>
> On the Move then apologized and told the girls that the account got hacked.  The user then deleted the video off the message and then deleted the apology/"we've been hacked" message.  My students saved the video before it was erased but the apology was not.  Word spread to other students and eventually their parents, which is where I came in to the conversation.
>
> The messages were sent to the girls this past Thursday, 11/21.  I received a call letting me know what had happened on Friday.  I called the girls' parents immediately after, and talked to all of the students and families involved.
>
> The girls were very upset and uncomfortable.  This is a brand they represent and keep in contact with over social media, and that trust has been betrayed.  Accident or purposeful, these are grown adults working with young people, and mistakes like this cannot happen. This video was highly tasteless and sexual.  As a mom, teacher, and female I would feel uncomfortable to have the members of On the Move to be associated with young teens and dancers.

> I am very concerned as I have seen On the Move advertised on the MAR social media pages and I know that they will be at the upcoming Oireachtas. I don't know what can be done, but I don't believe that these young men should be around our dancers.
>
> I would like to lodge a formal complaint to CLRG against Jamie and Mitchell Hodges and On the Move. . . .

(*Id.* ¶ 41; *id.* Ex. B.)

Plaintiffs deny sending the obscene video: "[T]he purported assertion of fact that Mr. Hodges and his dance company On The Move sent a sexually explicit video to two girls under the age of 14 is utterly and completely false. In reality, On The Move never sent such a video to any underage girls." (*Id.* ¶¶ 43, 73.) Plaintiffs allege that Lutwin's report was "fabricated." (*E.g.*, *id.* ¶¶ 50, 55, 60, 63.)

However, Plaintiffs attach to the Complaint as Exhibit C a copy of the alleged Instagram messages between On the Move and the underage girls. In the messages, the contemporaneous response to On the Move reads: "The video you sent me was extremely inappropriate. I'm not sure if that was an accident, but that was very unprofessional and wrong." (*Id.* Ex. C.)

Plaintiffs further allege that on or about January 3, 2020, Hodges received a media query about the incident and other matters. (*Id.* ¶¶ 75-78; *id.* Ex. D.) The following day, Hodges' counsel responded on Hodges' behalf. (*Id.* ¶ 78; *id.* Ex. E.)

Plaintiffs next allege that in or about January 2020, Coiste Faire, an investigative arm of CLRG, the global Irish Dancing governing commission, initiated an investigation. (*Id.* ¶¶ 79-82.) Plaintiffs allege that on or about January 23, 2020, an investigator, Judy McCafferty, informed Hodges that, "upon further review, the matter was closed." (*Id.* ¶ 82; *id.* Ex. H.)

Plaintiffs attach to the Complaint as Exhibit J a letter from McCafferty to Lutwin regarding the investigation. McCafferty explained, among other things, that Coiste Faire's investigation was restricted because Hodges was not a member of CLRG: "First and foremost, neither Jamie nor

Mitchell Hodges are members of CLRG. . . . That puts severe restrictions on actions that Coiste Faire can take. . . ." (*Id.* Ex. J.)  McCafferty advised Lutwin to continue to work with local authorities. (*Id.* Ex. J.)  The letter concluded, "Based on the above information we are formally closing this investigation as of January 29, 2020." (*Id.*)

Plaintiffs allege that on or about January 26, 2020, during the regularly scheduled quarterly meeting for members of Mid-Atlantic Teachers, Early read Lutwin's correspondence. (*Id.* ¶¶ 83, 84, 88, 91; *id.* Ex. I.)  Plaintiffs allege that the membership "consists of hundreds of Irish Dance teachers who teach in New York, New Jersey, Pennsylvania and Delaware." (*Id.*)  Attached to the Complaint as Exhibit I is a purported partial transcript of selected portions of the quarterly meeting. According to the partial transcript, after Early read Lutwin's correspondence describing that Plaintiffs sent obscenity to minors, there was a follow-up question from a member about whether and how Lutwin's complaint was reported to authorities. (*Id.* Ex. I, at 3-4.)  During the discussion, Labis allegedly confirmed that the complaint had been reported, and said ". . . because I have contact with this federal agency I went back to them immediately.  The next day they were involved.  Its nice to report it to the board and to CLRG and that but really when you suspect abuse, like I said, you all remember I came here and talked about going for the gold with gymnastics because my niece was involved. . . . But we followed the steps that the federal agency asked me to follow.  So we made the recording to a federal police agent and then it followed it through to the New York State police." (*Id.* Ex I, at 4.)

Plaintiffs attach to the Complaint as Exhibit L minutes of the quarterly meeting of members.  The minutes set forth that the meeting began with an instruction not to record the meeting, and an explanation from Labis that there should be an open discussion at the meeting. (*Id.* Ex. L, at 1.)  After sections regarding the reading of another letter regarding lawsuits and

acceptance of minutes from the prior quarterly meeting in November 2019, the fourth item of the fourth section of the meeting minutes, "Correspondence," reads:

> Correspondence was read from a teacher regarding an Irish dance camp and it's owners. New York State authorities confirmed they had looked into the matter and they believed a crime had not been committed.  Discussion followed over whether this dance camp had been granted Open status.  A camp can go on without Open status being granted, but any dancers who are currently CLRG registered would associate themselves to the other dancers schools in the camp.  This would mean teachers connected to those dancers would also be associated.  Another member discussed open status standards for camps and how they differ from an after school program.  It was suggested that the member compose a letter that our representatives could bring to the committee at CLRG.
>
> Members voiced concerns over vetting only being required for those in "constant contact" with dancers, such as TCRGs and ADCRGs, and not those who provide other services such as personal training.

(*Id.* Ex. L, at 1-2.)

Plaintiffs allege conclusorily that Early and Labis acted solely out of malice.  (*Id.* ¶¶ 89, 94.)  Plaintiffs also allege conclusorily that Early and Labis knew that Lutwin's correspondence was false (*id.* ¶ 102), and that Early and Labis knew that the Coiste Faire and criminal investigations had been closed without a finding of wrongdoing and intentionally omitted this information at the quarterly meeting.  (*Id.*) Plaintiffs allege that Early and Labis's "purpose was not to actually find out what had occurred or to 'protect children'"; rather they "simply wished to destroy the Plaintiffs' reputations."  (*Id.* ¶ 103.)

Plaintiffs do not make any allegations regarding why Early and Labis would have acted solely out of malice toward Plaintiffs.  Regarding Labis, Plaintiffs do not allege that Labis and Plaintiffs ever met, spoke, or dealt with each other in any way.  Regarding Early, Plaintiffs allege that he had a general conflict of interest as a volunteer with Mid-Atlantic Teachers because he also ran an Irish Dance school and served as an Irish Dance judge.  (*Id.* ¶¶ 27-28.)  Plaintiffs do not

allege that they and Early ever met before November 16, 2019, when Hodges contacted Early about a dance camp with which Early had "no problem." (*Id.* Ex. A.)

## II.     Procedural History

The Complaint was filed in this Court on November 23, 2020, asserting claims for defamation, defamation per se, and tortious interference with prospective business relations. Defendants agreed to accept service, and filed a pre-motion letter summarizing this anticipated motion to dismiss on January 25, 2021.   In the interim, undersigned counsel requested that Plaintiffs provide a copy of the recording of the Mid-Atlantic Teachers meeting on which Plaintiffs rely.  (See, e.g., id. ¶¶ 9, 10, 90, 91, 97, 122, 124.)  Plaintiffs' counsel declined to provide it.

In addition, co-defendants Lutwin and Academy of Irish Dance filed a pre-motion letter on January 25, 2021.  As set forth in the pre-motion letter of Lutwin and Francis Academy of Irish Dance, it is apparent that the allegation on which Plaintiffs base their entire Complaint – that they did not send the video to the minors on Instagram – is absurd.

## <u>LEGAL STANDARD</u>

Pursuant to Rule 12(b)(6), a claim must be dismissed when it lacks "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility 'when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*, No. 12 CIV. 6854 (ALC), 2014 WL 463616, at *1 (S.D.N.Y. Feb. 4, 2014) (quoting *Iqbal*, 556 U.S. at 678).  While the Court must accept the plaintiff's allegations as true and draw all reasonable inferences in plaintiff's favor, "the court need not accept allegations that are merely conclusions of law," and a "complaint [is] inadequate if it

'merely offers labels and conclusions.'" *Id.* (quoting *Kassner v. 2nd Ave. Delicatessen Inc.*, 496 F.3d 229, 237 (2d Cir.2007)).

"In considering a motion to dismiss, the Court may consider documents attached as an exhibit thereto or incorporated by reference, documents that are integral to plaintiff's claims, even if not explicitly incorporated by reference, and matters of which judicial notice may be taken." *Bidonthecity.com LLC v. Halverston Holdings Ltd.*, No. 12 CIV. 9258 (ALC) (MHD), 2014 WL 1331046, at *10–11 (S.D.N.Y. Mar. 31, 2014) (Carter, J.) (internal quotation marks and citations omitted).

## DISCUSSION

## I.     The Complaint Fails to State a Plausible Defamation Claim

### A.     Applicable Law

#### 1.     Defamation

The elements of a defamation claim are "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free Sch. Dist.*, 320 F.3d 164, 169-70 (2d Cir. 2003) (internal quotation marks and citations omitted); *see Makinen v. City of New York*, 53 F. Supp. 3d 676, 700 (S.D.N.Y. 2014) (Carter, J.) (same).

Because the second element of a defamation claim is publication without privilege, a claim based on statements that are privileged is properly dismissed on a Rule 12(b)(6) motion. *See, e.g.*, *Tongring*, 2014 WL 463616, at *6-7 (Carter, J.) (granting motion to dismiss defamation claim based on application of common interest privilege); *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335-36 (S.D.N.Y. 2010) (same); *Orenstein v. Figel*, 677 F. Supp. 2d 706, 711 (S.D.N.Y. 2009) (same) ("Defendants can succeed on a qualified privilege defense at the motion to dismiss stage.");

*Hillel v. Obvio Health USA, Inc.*, No. 20-CV-4647 (LAP), 2021 WL 229967, at *10 (S.D.N.Y. Jan. 21, 2021) (granting motion to dismiss defamation claim and tortious interference claim based on common interest privilege, rejecting plaintiff's procedural argument); *see also Wexler v. Allegion (UK) Ltd.*, 374 F. Supp. 3d 302, 311 (S.D.N.Y. 2019) ("A statement is not defamatory if it is privileged . . . .").

Additionally, because the first element of a defamation claim is a false statement, a defamation claim based on statements that are not allegedly false is properly dismissed. *See Tannerite Sports, LLC v. NBCUniversal News Grp.*, 864 F.3d 236, 244-45 (2d Cir. 2017).

There is no recognized claim in New York for defamation by omission. *See Biro v. Conde Nast*, 883 F. Supp. 2d 441, 466 (S.D.N.Y. 2012) ("New York courts have also been hesitant to find defamation based on the omission of facts, unless the omitted facts would materially change the meaning of the statements that are expressed."). Where a plaintiff seeks to base a defamation claim on an allegedly false implication of otherwise truthful statements, plaintiff must meet the requirements of "a narrow doctrine": "To survive a motion to dismiss a claim for defamation by implication where the factual statements at issue are substantially true, the plaintiff must make a rigorous showing that the language of the communication as a whole can be reasonably read both to impart a defamatory inference and to affirmatively suggest that the author intended or endorsed that inference." *Wilson v. New York*, No. 15-CV-23 (CBA) (VMS), 2018 WL 1466770, at *4–5 (E.D.N.Y. Mar. 26, 2018). "The alleged innuendo 'may not enlarge upon the meaning of words so as to convey a meaning that is not expressed' . . . . [T]he Court will look to whether such omission would materially change the alleged implication or render untrue what is otherwise unchallenged." *Biro*, 883 F. Supp. 2d at 466 (quoting *Tracy v. Newsday*, 5 N.Y.2d 134 (1959)).

### 2.      Privilege

"Courts have long recognized that the public interest is served by shielding certain communications, though possibly defamatory, from litigation, rather than risk stifling them altogether." *Liberman v. Gelstein*, 80 N.Y.2d 429, 437 (Ct. App. 1992). Accordingly, a common interest privilege "extends to a communication made by one person to another upon a subject in which both have an interest." *Chandok v. Klessig*, 632 F.3d 803, 815 (2d Cir. 2011); *Tongring*, 2014 WL 463616, at *6–7. "The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman*, 80 N.Y.2d at 437.

"Such common interest privilege regularly is found where the speaker and the listeners were generally members of a group or organization—which undoubtedly suggested a robust common interest existed." *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173-74 (E.D.N.Y. 2014) (internal quotation marks and citations omitted)); *see also Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 415-16 (S.D.N.Y. 2009) (finding the common interest privilege applicable to a memorandum sent to all employees of a large company); *Liberman*, 80 N.Y.2d at 437 ("This 'common interest' privilege (see, Restatement § 596) has been applied, for example, to employees of an organization, members of a faculty tenure committee and constituent physicians of a health insurance plan." (collecting cases, citations omitted)).

In addition, a communication is privileged "when it is fairly made by a person in the discharge of some public or private duty, legal or moral." *Chandok*, 632 F.3d at 814; *see Peters*, 320 F.3d at 169-70. The rationale for this privilege is that "[t]he rule of law that permits such publications grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and

information about a person in whom they have an interest to another who also has an interest in such person." *Shapiro v. Health Ins. Plan of Greater New York*, 7 N.Y.2d 56, 60–61 (Ct. App. 1959) (further describing that the privilege applies "'though the duty be not a legal one, but only a moral or social duty of imperfect obligation" (quoting (*Byam v. Collins*, 111 N. Y. 143, 150 (Ct. App. 1888))).

### 3.    Malice

The common interest privilege and privilege for communications made pursuant to a moral duty are qualified privileges, and when they apply a defamation claim must be dismissed absent a sufficient showing of common law malice or actual malice.  *See Chandok*, 632 F.3d at 815; *Tongring*, 2014 WL 463616, at *6–7 ("To overcome the qualified privilege at the motion to dismiss stage, a plaintiff must plausibly allege that the defendant acted with malice. . . ."). "Conclusory allegations of malice, unsupported by facts, are insufficient to survive a motion to dismiss." *Id.*, at *7 (citing *Orenstein v. Figel*, 677 F.Supp.2d 706, 711 (S.D.N.Y.2009)); *see Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335–36 (S.D.N.Y. 2010) ("Mere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." (internal quotation marks omitted)).

Common law malice means spite or ill will.  *Chandok*, 632 F.3d at 815.  "[C]ommon-law malice will defeat . . . a privilege only if it was the one and only cause for the publication." *Id.* (internal quotation marks and citations omitted); *see, e.g.*, *Thai*, 726 F. Supp. 2d at 336 ("[Plaintiff] fails to adequately plead facts to support the inference that the statement was made maliciously and for the sole purpose of defaming her."); *Orenstein*, 677 F. Supp. 2d at 711 ("The complaint provides neither factual support for these conclusions nor any explanation of why [defendant] would have an interest in acting maliciously toward [plaintiff].")  When there is a non-malicious

reason for the publication, even if there is also ill will, the statement is privileged.  *See Liberman*, 80 N.Y.2d at 439 ("In this context, however, spite or ill will refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements. If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff."  (internal citations omitted)).

Actual malice means publication with knowledge or reckless disregard of a statement's falsity.  *Chandok*, 632 F.3d at 815.  Actual malice does not mean publication without knowing whether a statement is true:  "As for what is needed to prove actual malice, there is a critical difference between not knowing whether something is true and being highly aware that it is probably false. Only the latter establishes reckless disregard in a defamation action."  *Id.* (internal quotation marks and citations omitted).  The recklessness standard requires a plaintiff to show "'that the defendant in fact entertained serious doubts as to the truth of the publication,'" and speculating about defendant's motives is legally insufficient.  *Slue v. New York Univ. Med. Ctr.*, 409 F. Supp. 2d 366-68 (S.D.N.Y. 2006) (quoting *Harte-Hanks Comm. V. Connaughton*, 491 U.S. 657, 687 (1989)); *see, e.g.*, *Biro v. Conde Nast*, 807 F.3d 541, 546-47 (2d Cir. 2015) (affirming 12(b)(6) dismissal of defamation claim against defendants, including those who republished the statements, because allegations of malice were conclusory and did not make out a plausible claim of "the speaker's subjective doubts about the truth of the publication").

### 4.    **Excessive Publication**

Some courts have identified "excessive publication" as an exception to the application of a qualified privilege.  *See Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) (citing *Stukuls v. State*, 397 N.Y.S.2d 740, 746 (Ct. App. 1977) (citing Restatement (Second) of

Torts § 604 (1977))).  The exception is set forth in the Restatement, and is aimed at situations in

which a defendant publishes a statement both to privileged and non-privileged people:

> One who, upon an occasion giving rise to a conditional privilege for the publication
> of defamatory matter to a particular person or persons, knowingly publishes the
> matter to a person to whom its publication is not otherwise privileged, abuses the
> privilege unless he reasonably believes that the publication is a proper means of
> communicating the defamatory matter to the person to whom its publication is
> privileged.

Restatement (Second) of Torts § 604; *see also id.* Cmt. A. Illustrations.

The Restatement makes clear, including by illustration, that the exception does not apply

to communications between members of an organization of matters about which they share a

common interest or duty:

> Often the only practicable means of communicating defamatory matter involves a
> probability or even a certainty that it will reach many persons whose knowledge of it is of
> no value in accomplishing the purpose for which the privilege is given. In this case, the
> publication is not excessive or an abuse of the privilege, if the importance of the interest
> involved, the gravity of the harm threatened to it and the inconvenience of any other means
> of communication make the publication reasonable. Thus the publication in a fraternal
> magazine of disciplinary action taken against a member for cause is not an abuse of a
> privilege because the magazine may be seen by persons who are not members of the order.

Restatement (Second) of Torts § 604 (1977).

Consistent with the Restatement, courts in New York reject claims of excessive publication

as legally insufficient when the alleged statements are between those with a common interest.  *See,*

*e.g.*, *Anas v. Brown*, 702 N.Y.S.2d 732, 734–35 (App. Div. 4th Dep't 2000) ("The contention of

plaintiffs that publication of the memorandum to FSS members constituted excessive publication

lacks merit because the recipients all shared a common interest with defendants."); *Berger v.*

*Temple Beth-El of Great Neck*, 839 N.Y.S.2d 504, 504–05 (App. Div. 2d Dep't 2007) ("[Plaintiff]

failed to raise an issue of fact as to whether the challenged statements were excessively published,

as the recipients all shared a common interest." (citing *Stukuls*)); *Melious v. Besignano*, 37 Misc.

3d 1203(A), 964 N.Y.S.2d 60 (Sup. Ct. 2012), aff'd, 4 N.Y.S.3d 228 (2015) ("In addition, there is no evidence before this Court sufficient to raise a triable issue as to whether the alleged defamatory statements were excessively published, inasmuch as the recipients each shared an uncontroverted common interest in the allegations of teacher misconduct, which were made by and to persons legally and morally bound to prevent it." (citing *Stukuls*)).[1]

### B.     The Alleged Statements Are Privileged

The allegedly defamatory statements – Early's reading of Lutwin's "Formal complaint" at the quarterly meeting of members of Mid-Atlantic teachers, and Labis's statements in response to inquiry at the same meeting about reporting Lutwin's complaint – are privileged.  Accepting all allegations in the Complaint as true, the statements fall squarely within both the common interest privilege and the privilege for statements made pursuant to a duty.

The common interest privilege applies to the statements at the quarterly meeting of members because they were "made by one person to another upon a subject in which both have an interest."  *Chandok*, 632 F.3d at 815.  They were made by Early, a member and regional director

---

[1]     The Second Circuit and Court of Appeals have each discussed excessive publication in dicta.  In *Konikoff*, the Second Circuit ruled on other grounds, and also considered "authority in other jurisdictions for expanding the [common-interest] privilege to include communications to the general public through the press," expressing some concern that such expansion would be too broad, and declining to rule either way.  234 F.3d at 99-100.

In *Stukuls*, the Court of Appeals ruled on other grounds, and after doing so went on to discuss additional obstacles the plaintiff would face on remand, in particular legal barriers facing the plaintiff absent a sufficient showing of malice.  42 N.Y.2d at 282-83.  The Court noted that one obstacle would be that the statements at issue appeared to have been made to others with a common interest and duty.  *Id.*  The Court noted that the privilege for such communications "will still be subject to defeasance by excessive publication (Restatement, Torts 2d § 604), or by the publication of defamatory matter solely for an improper purpose . . . , including its publication solely from spite or ill will."  *Id.* at 281.  The Court noted that the plaintiff may be able to show malice, but did not further take up excessive publication or suggest that plaintiff had sufficiently alleged facts in support of excessive publication.  *Id.* at 281-82.

of Mid-Atlantic Teachers, and Labis, counsel to Mid-Atlantic Teachers, to a closed meeting of members of Mid-Atlantic Teachers.  Indeed, the meeting allegedly began with Labis explaining that there should be an open discussion among members (Compl. Ex. L, at 1), which is precisely the reason the common interest privilege exists and protects such discussion.  *Liberman*, 80 N.Y.2d at 437 (". . . the flow of information between persons sharing a common interest should not be impeded").

The subject in which the members had a common interest was the correspondence from Lutwin, which she labeled a formal complaint to the Mid-Atlantic Teachers Board, and in which she described that Plaintiffs had sent an obscene video to minors who were Irish Dance students in the Mid-Atlantic Teachers region.  Members of Mid-Atlantic Teachers shared a common interest in this correspondence for numerous reasons.  It was a written complaint by one member of the organization about the conduct of those running an Irish Dance camp in the area, and members of Mid-Atlantic Teachers shared an interest in knowing about such complaints of a fellow member.  It was a formal complaint to the Board of Mid-Atlantic Teachers about a serious and dangerous matter, and members of Mid-Atlantic Teachers shared an interest in knowing whether and how the Board had taken action with respect to the complaint.  And it described conduct that posed a specific threat of harm to children who study Irish Dance in care of the Mid-Atlantic Teachers members, and members of the organization shared an interest in knowing of that reported conduct in order to prevent that harm.[2]

---

[2]    Indeed, the Complaint itself sets forth allegations, in attempting to show defamation *per se* in place of pleading special damages, demonstrating the importance of a member knowing of such reported conduct by an Irish Dance teacher: "It is plainly incompatible with the proper conduct of an Irish Dance teacher and school who teach young children for them to send sexually inappropriate videos to young girls."  (Compl. ¶ 45.)

Likewise, the privilege for statements made pursuant to a duty applies, as the communications at the quarterly meeting of members were fairly made by persons under "a moral or social duty."  *Shapiro*, 7 N.Y.2d at 60.  Again, the application of this privilege in this case is consonant with its rationale: "the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a third person in whom they have an interest to another who also has an interest in such person."  *Id.* at 60-61.  Early was Regional Director and Labis counsel of a not-for profit organization of teachers who taught Irish Dance to children, and a member had made a formal complaint to the Mid-Atlantic Teachers board that an Irish Dance camp in the area had sent obscenity to children who were promoting the camp.  In reading the formal complaint to the members of Mid-Atlantic Teachers and responding to a question about reporting of the complaint, Early and Labis discharged a moral and social duty to report conduct posing a potential threat to children to individuals who are charged with the care of the children.

Accordingly, the allegedly defamatory statements are privileged.

### C.    Plaintiffs' Allegations of Malice Are Insufficient

Plainly aware that the statements on which they base their action are privileged, Plaintiffs allege numerous times in their Complaint that Early and Labis acted with malice.  These allegations, while numerous, are circular, conclusory and insufficient to overcome a motion to dismiss.  (*E.g.*, Compl. ¶ 89 ("The reason that Early and Mid-Atlantic did not want Plaintiff Hodges' side of the story was because they were not interested in the truth, facts, evidence or fairness: rather, they were plainly motivated solely by malice to destroy the reputations of the Plaintiffs.").)  Thus, the defamation claim does not set forth factual allegations that, if true, would sufficiently support a plausible claim of malice.

Regarding common law malice, Plaintiffs' allegation that Defendants' sole reason for reading Lutwin's formal complaint to members at the quarterly meeting was to harm Plaintiffs is conclusory and unsupported by factual allegations that could plausibly demonstrate malice. Plaintiffs do not allege any facts for this conclusion nor any explanation of why Early and Labis would make defamatory statements at the meeting solely out of malice against Plaintiffs. *See Orenstein*, 677 F. Supp. 2d at 711 ("The complaint provides neither factual support for these conclusions nor any explanation of why [defendant] would have an interest in acting maliciously toward [plaintiff].")  Plaintiffs do not even allege that Labis and Plaintiffs ever met or had *any* interactions with each other, and they allege only that Early became acquainted with Plaintiffs on November 16, 2019, when he promptly responded "no problem" to Hodges' proposed dance camp.

In apparent recognition of this pleading deficiency, not to mention the glaring senselessness of their conclusory allegation of common law malice under these circumstances, Plaintiffs allege variously that Early operated under a conflict of interest as volunteer Regional Director of Mid-Atlantic Teachers because he also ran an Irish Dance school and served as an Irish Dance judge. (*E.g.*, Compl. ¶¶ 27-28.)  Even accepting these allegations that Early suffered such a general feeling as true, which they are not, they do not and could not plausibly support a claim that Early's sole reason for reading Lutwin's formal complaint – which concerned Plaintiffs' sending obscenity to children – to members of his organization with a common interest in such complaints and in protecting children, was malice. *See Liberman*, 80 N.Y.2d at 439 ("In this context, however, spite or ill will refers not to defendant's general feelings about plaintiff, but to the speaker's motivation for making the defamatory statements. If the defendant's statements were made to further the interest protected by the privilege, it matters not that defendant also despised plaintiff." (internal citations omitted)).  Additionally, there are no such allegations regarding Labis.  Plaintiffs'

allegations of common law malice by Early and Labis are simply conjecture, and insufficient to sustain a claim.

Regarding actual malice, the allegations in the defamation claim fare no better.  Plaintiffs make no allegation that, if proved, would show that Defendants knew that Lutwin's formal complaint was false, or that they "in fact entertained serious doubts as to the truth of the publication."  *Chandok*, 632 F.3d at 815.  Indeed, the allegations in the Complaint and the attachments to it make abundantly clear that the opposite was true.  The correspondence from Lutwin was plainly credible on its face: it was thorough, detailed, contemporaneous, measured, and sourced.  Defendants, as alleged and as referred to in the attachments to the Complaint, promptly reported it further.  Defendants were not required to personally investigate the facts themselves, nor to verify the formal complaint before reading it to members of their non-profit organization, and allegations that they did not do so, even if true, are insufficient to show malice. *See Berger*, 839 N.Y.S.2d at 504–05; *Altschuler v. Univ. of Pennsylvania Sch. of Law*, 201 F.3d 430 (2d Cir. 1999).  There is simply no plausible claim set forth in the Complaint that Defendants in fact entertained serious doubts about the truth of Lutwin's formal complaint.

The allegations in the Complaint that Defendants knew that a Coiste Faire investigation and criminal investigation had been closed are also wholly insufficient to show actual malice.  That is because even if the allegations were true, which they are not, they are entirely irrelevant to the question of whether Defendants seriously doubted the truth of Lutwin's correspondence.

First, regarding the Coiste Faire investigation, the Complaint does not allege that Defendants conducted it or that its alleged closing reflects Defendants' subjective view about Lutwin's complaint.  Moreover, the Complaint and attachments to it themselves make clear that the closing of the Coiste Faire investigation does not even plausibly show that Coiste Faire doubted

the truth of Lutwin's formal complaint.  Coiste Faire's letter, attached as Exhibit J to the Complaint, shows rather that the investigation was closed because Plaintiffs were not members of CLRG, not because of doubts about Lutwin's formal complaint.

Second, regarding the criminal investigation, the Complaint likewise does not allege that Defendants conducted it or that its alleged closing reflects Defendants' subjective views about the truth of Lutwin's formal complaint.  Moreover, the closing of a criminal investigation is utterly irrelevant to the issue of whether Defendants seriously doubted Lutwin's formal complaint.  That is because Lutwin's formal complaint does not simply allege that Plaintiffs committed a crime. Rather, Lutwin's complaint alleges conduct that may or may not be criminal, but that in any event is troubling and merits disclosure to members at the quarterly meeting.  Lutwin herself acknowledged that the obscene video may have been sent by mistake, and to the extent that criminal authorities allegedly closed the matter, that could have been for numerous reasons – a finding of mistake, a lack of intent, or insufficient proof of identity, among others–other than that Lutwin's formal complaint was false.  Thus, even accepting as true Plaintiffs' allegation that Defendants knew a criminal investigation was closed, the allegation goes to show nothing regarding Defendants' subjective view of the truth of Lutwin's formal complaint, and does not support a claim of actual malice.

Accordingly, the allegations of malice in the Complaint are insufficient to overcome the plain application of privilege to the statements and the defamation claim against Defendants should be dismissed.

### D.    Plaintiffs' Allegations of Excessive Publication Are Insufficient

Plaintiffs' allegations regarding excessive publication are likewise insufficient to make out an exception to the application of privilege to the allegedly defamatory statements.  As an initial

matter, this exception has little support in New York case law, as it is largely relegated to dicta or to cases rejecting a plaintiffs' attempt to rely on it.  In any event, assuming there is a recognized exception for excessive publication, the allegations in the Complaint would not make out its application in this case.

The excessive publication exception does not apply because the allegedly defamatory statements were allegedly made only to members of Mid-Atlantic Teachers, all of whom shared a common interest with Defendants, at their quarterly meeting.  (Compl. ¶ 84; *see id.* Ex. L, at 1.) *See* Restatement (Second) of Torts § 604; *see, e.g.*, *Anas v. Brown*, 702 N.Y.S.2d 732, 734–35 (App. Div. 4th Dep't 2000) ("The contention of plaintiffs that publication of the memorandum to FSS members constituted excessive publication lacks merit because the recipients all shared a common interest with defendants.").  Here, there is no allegation that Defendants published statements to anyone other than members of their non-profit organization who, as set forth above, shared a common interest and a duty with Defendants regarding Lutwin's formal complaint.  Accordingly, the excessive publication exception is inapplicable.

Moreover, Plaintiffs' apparent emphasis on their allegation that the quarterly meeting was attended by <u>hundreds</u> of members of Mid-Atlantic Teachers, even if true, is misplaced.  Excessive publication does not refer to the quantity of people who receive the communication.  There is no limit on the number of people who may fit within the common interest privilege.  Courts have applied it to communications made to innumerable people, such as all employees at a large company.[3]  *E.g.*, *Fuji Photo Film*, 669 F. Supp. 2d at 415.  Indeed, the very illustration used in the Restatement of an instance of privileged publication – publication in a fraternal magazine –

---

[3]   Nor would such a limit make any sense.  Rather it would arbitrarily withhold from larger organizations privileges in place to protect open discussion among members, employees, and others with a common interest, for no reason other than that they are large.

describes a statement made to a lot of people.  *Id.*  Rather, excessive publication refers to the type of people who receive the communication, and here, there is no allegation that Defendants made the statements to those other than members of their organization.  Excessive publication, therefore, is no basis for permitting Plaintiffs to proceed any further on their baseless and implausible defamation claim.

### E.   Plaintiffs' Allegations Against Labis Have Additional Insufficiencies

The defamation claim against Labis fails for the additional reason that it does not include sufficient allegations to make out the first element, a false statement.  Labis was counsel to Mid-Atlantic Teachers, has no alleged interest whatsoever related to Plaintiffs and is not even alleged to have ever met them, and was not the person who read Lutwin's formal complaint at the quarterly meeting of members.  Rather, Plaintiffs seek to bring a defamation claim against Labis based on his allegedly truthful response during the quarterly meeting to a question from a member regarding whether Lutwin's formal complaint had been further reported.  (Compl. Ex. I, at 4.)  Plaintiffs allege that Labis, in confirming that it had been reported to law enforcement, maliciously defamed Plaintiffs, because Labis allegedly knew that the criminal investigation had resulted in a finding that no crime had been committed and omitted this information.[4]

Those allegations, however, cannot support a defamation claim against Labis.  <u>First</u>, omissions are not actionable in defamation.  *Biro*, 993 F. Supp. 2d at 446.  Rather, Plaintiffs "must

---

[4]   Plaintiffs' alleged basis for making this claim against Labis, which is false, is that the alleged minutes of the quarterly meeting, authored by someone else and dated approximately two weeks later, state that New York State authorities confirmed they had looked into the matter and they believed a crime had not been committed.  (Compl. Ex. L, at 1.)  Plaintiffs further allege, based on a purported three hour, prohibited recording of the meeting, that this was omitted from the meeting. Plaintiffs, however, chose to file only a partial and selected transcript of the meeting with their Complaint, and have declined requests for a copy of the video that they allege, no less than ten times in their Complaint, irrefutably supports their case.

make a rigorous showing" to meet the "narrow doctrine" of defamation by implication, that the language of the communication as a whole at the members meeting can be reasonably read to impart a defamatory inference that criminal authorities believed Plaintiffs had committed a crime and that Labis intended or endorsed that inference. *Wilson*, 2018 WL 1466770, at *4-5. Labis, however, was not even talking about the substance, merits, or results of the alleged criminal investigation. Rather, he was responding to a question from a member about reporting of Lutwin's formal complaint, that it had been promptly reported to criminal authorities. Plaintiffs' attempt to allege that Labis's response that the matter had been reported, was instead innuendo for criminal authorities believe that Plaintiffs committed a crime, "enlarge[s] upon the meaning of words so as to convey a meaning that is not expressed," *Biro*, 883 F. Supp. 2d at 466, which is insufficient for Plaintiffs to make the rigorous showing required of them to overcome a motion to dismiss a defamation claim based on allegedly truthful statements.

For this reason and those set forth above, the defamation claim against Labis must be dismissed.

## II.     The Complaint Fails to State a Plausible Claim for Tortious Interference with Prospective Business Relations

The claim for tortious interference with prospective business relations should also be dismissed. "To state a claim of tortious interference with prospective business relations under New York law, a plaintiff must establish the following elements: '(i) the plaintiff had business relations with a third party; (ii) the defendants interfered with those business relations; (iii) the defendants acted for a wrongful purpose or used dishonest, unfair, or improper means; and (iv) the defendants' acts injured the relationship.'" *Berman v. Sugo LLC*, 580 F. Supp. 2d 191, 208 (S.D.N.Y. 2008) (quoting *Scutti Enters., LLC. v. Park Place Entm't Corp.*, 322 F.3d 211, 215 (2d Cir.2003).

"As a general rule, in order to satisfy the third element of tortious interference with business relations, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts. . . ."  *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494-95 (S.D.N.Y. 2017).  Regarding the first element, "[a] properly pleaded complaint must allege relationships with specific third parties with which the respondent interfered."  *Plasticware, LLC v. Flint Hills Res., LP*, 852 F. Supp. 2d 398, 402–03 (S.D.N.Y. 2012).  Moreover, when a tortious interference claim is based on the same facts as a defamation claim, it is properly dismissed.  *See Grayson v. Ressler & Ressler*, 271 F. Supp. 3d 501, 520 (S.D.N.Y. 2017); *see, e.g.*, *Hillel*, 2021 WL 229967, at *12.

Here, the tortious interference claim is insufficiently pleaded in several ways.  It is nearly entirely duplicative of the defamation claim and should be dismissed on this basis.  (Compl. ¶¶ 158-69.)  Insofar as Plaintiffs purport to distinguish this claim with the conclusory allegation that Early withdrew Mid Atlantic-Teachers' approval of Plaintiffs' camp, (Compl. ¶ 167), that allegation is insufficient to meet the third element of their claim of conduct amounting to a crime or independent tort.  Nor do Plaintiffs allege specific business relationships with which Defendants allegedly interfered, and thereby fail to meet the first element as well.

Accordingly, the claim for tortious interference with prospective business relations should be dismissed.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request the Court dismiss the Complaint against the Defendants in its entirety with prejudice.

Dated: White Plains, New York
       March 8, 2021

                                        YANKWITT LLP


                              By:  _____
                                        Russell M. Yankwitt
                                        Benjamin Allee
                                        140 Grand Street, Suite 705
                                        White Plains, New York 10601
                                        Tel.: (914) 686-1500
                                        Fax: (914) 801-5930
                                        *Counsel for Defendants James Early, Irish*
                                        *Dancing Teachers Association of North*
                                        *America Mid-Atlantic Region, and Keith L.*
                                        *Labis*

25