LSK&D #: 266-2014 / 4850-9034-2623

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
JAMIE HODGES and ON THE MOVE LTD.,

                                                   1:20-cv-09878-ALC

                        Plaintiffs,

                -against-

JAMES EARLY, IRISH DANCING TEACHERS
ASSOCIATION OF NORTH AMERICA-MID-
ATLANTIC REGION, INC., MOLLY
KATHLEEN LUTWIN, FRANCIS ACADEMY
OF IRISH DANCE, and KEITH L. LABIS,

                        Defendants.

-----------------------------------------------------------------x

## MEMORANDUM OF LAW ON BEHALF OF DEFENDANT MOLLY KATHLEEN LUTWIN, DOING BUSINESS AS THE FRANCIS ACADEMY OF IRISH DANCE IN SUPPORT OF HER MOTION TO DISMISS

LESTER SCHWAB KATZ & DWYER, LLP
100 Wall Street
New York, New York 10005
(212) 964-6611
Attorneys for Defendant
Molly Kathleen Lutwin, doing business as the
Francis Academy of Irish Dance

Thomas A. Catalano,
Of counsel

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ............................................................................................ii-iv

PRELIMINARY STATEMENT ........................................................................................ 1

STATEMENT OF FACTS ................................................................................................. 1

    POINT I ..............................................................................................................................6

        Plaintiffs' claims for defamation should be dismissed because
        Ms. Lutwin's communications were protected by a qualified
        privilege and plaintiffs' allegations of malice are not plausible ...................................... 6

            Standard of review. ..................................................................................................... 6

            Defamation .................................................................................................................. 7

            Common interest qualified privilege. ......................................................................... 7

    POINT II ...........................................................................................................................11

        The alleged publication to news media by Lutwin has no
        factual basis and is therefore not plausible..................................................................... 11

    POINT III ..........................................................................................................................13

        Plaintiffs' claim for tortitious interference should be dismissed
        as duplicative of the defamation claim ........................................................................... 13

CONCLUSION................................................................................................................. 15

# TABLE OF AUTHORITIES

Page

## Cases

*Adelson v. Harris*,
   973 F Supp 2d 467 [SDNY 2013],
   *affd*, 876 F3d 413 [2d Cir 2017] ............................................................. 6

*Anas v. Brown*,
   269 AD2d 761 [4th Dept 2000] ............................................................. 8

*Ashcroft v. Iqbal*,
   556 US 662 [2009] ............................................................................... 6

*Bell Atl. Corp. v. Twombly*,
   550 US 544 [2007] ............................................................................... 6

*Brimelow v. New York Times Co.*,
   20 CIV. 222 (KPF), 2020 WL 7405261 [SDNY Dec. 16, 2020] ............... 6

*Chamilia, LLC v. Pandora Jewelry, LLC*,
   04-CV-6017 (KMK), 2007 WL 2781246 [SDNY Sept. 24, 2007] ............ 8

*Citizens United v. Schneiderman*,
   882 F.3d 374 (2d Cir. 2018) ................................................................. 12

*Dane v. UnitedHealthcare Ins. Co.*,
   974 F3d 183 [2d Cir 2020] ................................................................... 7

*Davis v. Costa-Gavras*,
   580 F Supp 1082 [SDNY 1984] ............................................................ 13

*Deaton v. Napoli*,
   17CV4592RRMGRB, 2019 WL 4736722 [EDNY Sept. 27, 2019] ........... 14

*Dillon v. City of New York*,
   261 AD2d 34 [1st Dept 1999] ............................................................... 7

*ExpertConnect, LLC v. Fowler*,
   18 CIV. 4828 (LGS), 2020 WL 3961004 [SDNY July 13, 2020] ............. 14

*Folwell v. Miller*,
   145 F 495 [2d Cir 1906] ....................................................................... 13

ii

*Garson v. Hendlin*,
  141 AD2d 55, 61 [2d Dept 1988] ......................................................... 9

*Geraci v. Probst*, 15 NY3d 336, 342 [2010] ............................................. 13

*Goldman v. Barrett*,
  733 Fed Appx 568 [2d Cir 2018] ................................................... 14, 15

*Hengjun Chao v. Mount Sinai Hosp.*,
  476 Fed Appx 892 [2d Cir 2012] ...................................................... 14

*Herlihy v. Metro. Museum of Art*,
  214 AD2d 250 [1st Dept 1995] .......................................................... 8

*Hillel v. Obvio Health USA, Inc.*,
  20-CV-4647 (LAP), 2021 WL 229967 [SDNY Jan. 21, 2021] ........................... 9, 10

*Krepps v. Reiner*,
  588 F Supp 2d 471 [SDNY 2008],
  *affd*, 377 Fed Appx 65 [2d Cir 2010] ............................................... 15

*Lesesne v. Brimecome*,
  918 F Supp 2d 221 [SDNY 2013] ....................................................... 14

*Liberman v. Gelstein*,
  80 NY2d 429 [1992] .................................................................... 7

*Meloff v. New York Life Ins. Co.*,
  240 F3d 138 [2d Cir 2001] ........................................................... 7, 8

*Orenstein v. Figel*,
  677 F Supp 2d 706 [SDNY 2009] ..................................................... 10, 11

*Qureshi v. St. Barnabas Hosp. Ctr.*,
  430 F Supp 2d 279 [SDNY 2006] ........................................................ 8

*Restis v. Am. Coalition Against Nuclear Iran, Inc.*,
  53 F Supp 3d 705 [SDNY 2014] ........................................................ 15

*Rosenfeld v. Lenich*,
  370 F Supp 3d 335 [EDNY 2019] ....................................................... 12

*Schoepflin v. Coffey*,
  162 N.Y. 12, 56 N.E. 502 [1900] ..................................................... 13

*Silverman v. Clark*,
  35 AD3d 1 [1st Dept 2006]...................................................................................... 9

*Stukuls v. State*,
  42 NY2d 272 [1977] ............................................................................................... 8

*Travelex Currency Services, Inc. v. Puente Enterprises, Inc.*,
  18 CIV. 1736 (ER), 2019 WL 1259102 [SDNY Mar. 19, 2019] ........................... 14

*Yong Ki Hong v. KBS Am., Inc.*,
  951 F Supp 2d 402 [EDNY 2013] ........................................................................... 8

## PRELIMINARY STATEMENT

The memorandum of law is submitted on behalf of Defendant Molly Kathleen Lutwin ("Lutwin"), doing business as the Francis Academy of Irish Dance (the "Francis Academy"), in support of her motion to dismiss the complaint pursuant to Rule 12(b)(6). The Francis Academy, a tradename, is improperly named as a defendant.[1] The first and second claims are for defamation and the third claim alleges tortious interference with prospective business relations. Lutwin moves to dismiss the complaint on the grounds that the alleged publications were protected by the common interest qualified privilege, the allegations of malice are not plausible, and the claim for tortious interference is duplicative of the defamation claims.

## STATEMENT OF FACTS

Lutwin is the director and owner of the Francis Academy. Compl. ¶ 16. The Co-defendant Irish Dance Teachers Association of North America ("IDTANA") "is the official body that offers Irish Dance instructors in the United States certification to teach Irish Dance." Compl. *Id*. ¶ 15. Co-defendant Mid-Atlantic Region "is one of seven regions within North America that are a part of IDTANA." *Id*. "An Coimisiún Le Rincí Gaelacha ("CLRG"), located in Ireland, "is the worldwide governing body for competitive Irish Dance." Compl. ¶ 14. Because the Francis Academy is located in Syracuse, New York (Compl.¶ 16), its local governing body is the Mid-Atlantic Region.

As a school teacher, Lutwin is a "mandated reporter" under N. Y. Social Services Law § 413(1)(a), and in that capacity she is required to "report or cause a report to be made" if she had

---

[1] The Complaint "fails to allege a judicial status for" the Francis Academy and therefore the Francis Academy "cannot be sued, for it is not a natural person, a corporation, a partnership, or any other legally cognizable entity." *Ragin v. Harry Macklowe Real Estate Co., Inc.*, 126 FRD 475, 480 [SDNY 1989].

"reasonable cause to suspect that a child" was "an abused or maltreated child, or when [she had] reasonable cause to suspect that a child is an abused or maltreated child."

On or about November 21, 2019, Lutwin learned that two fourteen year-old girls in her Irish dance class had received an obscene video from the plaintiffs via an Instagram direct message. This eight-second video shows a naked woman running towards a camera, jumping up exposing her private parts, with camera's point of view changing to tunneling into her womb until it reached a cartoon baby giving a thumps-up sign. This video, which we informally sent to plaintiffs' counsel at his request, will be delivered to chambers upon request.

Sending obscene material to minors is a crime under both New York State and federal law,[2] and Lutwin's two 14 year-old students were victims of this sex crime. As a mandated reporter Lutwin was required to take action to report this incident as it constitutes child abuse or child maltreatment or both. If Lutwin had failed to report this incident she herself would be guilty of a crime as well as subject to civil liability.[3]

Lutwin appropriately reported the incident by contacting her regional governing body, the Mid-Atlantic Region. She initially sent an email to Colleen Carey, who was then a member of the Mid-Atlantic Region Executive Board, on November 24, 2019 at 10:20 a.m., in which she described the incident. That email, annexed as Exhibit C to the complaint, states in relevant part:

---

[2] N.Y. Penal Law § 235.22, *Disseminating indecent material to minors in the first degree*; 18 USCA § 147, *Transfer of obscene material to minors*.
[3] N. Y. Social Services Law § 420.

Colleen,

There are two u14 girls in my school, Francis Academy of Irish Dance, who share and run an Instagram account for Irish Dancing. The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls shared account. The girls agreed to upload the promotional video, and the one sent by On the Move was extremely inappropriate and disturbing. The video is of a visibly naked woman running towards a camera and jumping on it. The camera than reveals a cartoon or CGI baby within the private parts of the the [*sic*] woman. It is shocking and difficult to describe.

The girls did not know what to do. They responded to On the Move that the video was inappropriate. On the Move then apologized and told the girls that the account got hacked. The user then deleted the video off the message and then deleted the apology / "we've been hacked" message. My students saved the video before it was erased but the apology was not. Word spread to other students and eventually their parents, which is where I came into the conversation.

The messages were sent to the girls this past Thursday, 11/21. I received a call letting me know what had happened on Friday. I called the girls' parents immediately after, and talked to all of the students and families involved.

The girls were very upset and uncomfortable. This is a brand they represent and keep in contact with over social media, and that trust has been betrayed. Accident or purposeful, these are grown adults working with young people, and mistakes like this cannot happen. This video was highly tasteless and sexual. As a mom, teacher, and female I would feel uncomfortable to have the members of On the Move to be associated with young teens and dancers.

Thus, Lutwin reported to the Mid-Atlantic Region precisely the information that she had obtained. She made it clear that she was not accusing the plaintiffs of acting intentionally as she had no knowledge of whether the video was send by them accidently or on purpose: "Accident or purposeful, these are grown adults working with young people, and mistakes like this cannot happen." Email, 4th para., 3rd sentence.

3

Approximately 40 minutes later, Lutwin sent an email to other members of Mid-Atlantic Region Executive Board, which described the incident in substantially the same way as the earlier email to Colleen Carey. Compl, Exhibit B. and ¶ 41. In addition, Lutwin expressed concern that plaintiff Hodges would be in the presence of children at an Irish dance event, the Oireachtas, that was to take place the following weekend:

> I am very concerned as I have seen On the Move advertised on the MAR social media pages and I know that they will be at the upcoming Oireachtas. I don't know what can be done, but I don't believe that these young men should be around our dancers.

> I would like to lodge a formal complaint in CLRG against Jaime and Mitchell Hodges and On the Move.

> I would appreciate the board letting me know what can be done to protect our dancers next weekend.

Lutwin fulfilled her obligation to report under N. Y. Social Services Law § 413(1)(a) because the Mid-Atlantic Region followed up and reported the incident to both federal authorities and the New York State Police within one day, as set forth in the "Transcript of 26/01/20 Mid Atlantic Region Meeting," annexed as Exhibit I to the complaint:

> **Karen Petri** [Assistant Director of the Mid Atlantic, Officer of CLRG & IDTANA] - 'We went to the authorities within a day'

> ***

> **Karen Petri**   'I want it to be clear that this was with the authority within a day'

> ***

> **Keith Labis** - 'What I want to say is that because of everything going on and because I have contact with this federal agency I went back to them immediately. The next day they were involved. Its [*sic*] nice to report it to the board and to CLRG and that but really when you suspect abuse, like I said, you all remember I came here and talked about going for the gold with gymnastics cause my niece was involved and before any of this happened I said it's important to know. But we followed the steps that the federal agency asked me to follow. <u>So we made the</u>

recording[4] to a federal police agent and then it followed it through to the New York State police.' (emphasis added)

\*\*\*

**Keith Labis** - 'Well I know I got a call as soon as it came in and I made the call the next day.'

See also Compl. ¶¶ 98, 99.

Although the complaint is silent regarding whether plaintiff Hodges attended the Oireachtas event in Philadelphia the following weekend, plaintiffs allege conversations that Lutwin had with three women at the Marriot Downtown Philadelphia at an "Irish Dance event in Philadelphia,"[5] Compl. ¶¶ 68 to 70. The complaint alleges that Lutwin told three women about the video incident. The complaint also alleges that each of these women was at the hotel for an Irish dance event and was involved in other ways in the Irish Dance community. *Id*. Simona Santina Mauriello "runs an Irish Dance school in the United Kingdom and sells costumes for Irish Dancers." *Id*. at 68. Ellie O'Sullivan is "an Irish Dance performer who lives in the United Kingdom." *Id*. at 69. Rosey Jackson "lives in the United Kingdom and sells Irish Dance merchandise including wigs." *Id*. at ¶ 70.

The members of the Mid-Atlantic board, and the three women who Lutwin allegedly spoke to at the Oireachtas event in Philadelphia all shared a common duty and interest in the welfare of young Irish dancers including, most importantly, protecting them from sexually inappropriate behavior on the part of the adults who teach them. See Point I. Therefore, these communications are protected by the common interest qualified privilege, which can only be

---

[4] So in original, probably should have been transcribed as "report" or "reporting."
[5] The Court may take judicial notice that the *2019 Mid Atlantic Oireachtas* took place on November 29 through December 1, 2019 at the Philadelphia Marriott Downtown. Last visited March 3, 2021.
<https://static1.squarespace.com/static/561c25f0e4b0982b2a58f408/t/5d5c1f12429ae8000162270b/1566318355931/2019+MidAtlantic+Oireachtas++Syllabus.pdf>

vitiated by a showing of malice. Plaintiffs' allegations of malice are not plausible, and therefore the claims for defamation should be dismissed. Point I.

Although plaintiffs allege "upon information and belief" that Lutwin "sent her defamatory allegations to news media" (*Id.* at ¶ 71) there is no plausible basis for that allegation. See Point II.

Plaintiffs' claim for tortious interference with prospective business relations is duplicative of the defamation claims and it should be dismissed. See Point III.

## POINT I

### PLAINTIFFS' CLAIMS FOR DEFAMATION SHOULD BE DISMISSED BECAUSE MS. LUTWIN'S COMMUNICATIONS WERE PROTECTED BY A QUALIFIED PRIVILEGE AND PLAINTIFFS' ALLEGATIONS OF MALICE ARE NOT PLAUSIBLE

**Standard of review.**

"Because a defamation suit may be as chilling to the exercise of First Amendment freedoms as fear of the outcome of the lawsuit itself, courts should, where possible, resolve defamation actions at the pleading stage." *Brimelow v. New York Times Co.*, 20 CIV. 222 (KPF), 2020 WL 7405261, at *4 [SDNY Dec. 16, 2020], citing *Adelson v. Harris*, 973 F Supp 3d 467, 481 [SDNY 2013], *affd,* 876 F3d 413 [2d Cir 2017].

In order to survive a motion to dismiss under Rule 12(b)(6) a plaintiff must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 US 544, 570 [2007]. "Factual allegations must be enough to raise a right to relief above the speculative level." 550 US at 555 (citations omitted). If the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Id.* at 570. Determining whether a claim is plausible is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 US

662, 679 [2009]. While the Court must accept as true all factual allegations and draw from them reasonable inference it is "not required to credit conclusory allegations or legal conclusions couched as factual allegations." *Dane v. UnitedHealthcare Ins. Co.*, 974 F3d 183, 188-89 [2d Cir 2020] (citations, internal quotation marks, and ellipsis omitted).

**Defamation.**

Defamation is "the making of a false statement which tends to expose the plaintiff to public contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-thinking persons, and to deprive him of their friendly intercourse in society." *Dillon v. City of New York*, 261 AD2d 34, 37-38 [1st Dept 1999] (citations and internal quotation marks omitted). "The elements are a false statement, published without privilege or authorization to a third party, constituting fault as judged by, at a minimum, a negligence standard, and, it must either cause special harm or constitute defamation per se (Restatement of Torts, Second § 558)." *Id*. at 38.

**Common interest qualified privilege.**

Each of Lutwin's alleged communications is protected by the common interest qualified privilege. "New York common law affords qualified protection to defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff v New York Life Ins. Co.*, 240 F3d 138, 145 [2d Cir 2001] (citation and internal quotation marks omitted). "The qualified privilege creates "a rebuttable presumption of good faith that may constitute a complete defense." *Id.* at 146.  (citations and internal quotation marks omitted). "The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman v. Gelstein*, 80 NY2d 429, 437 [1992].

New York courts have applied the common interest privilege broadly. "Indeed, the application of qualified privilege is not restricted within the narrow limits of absolute privilege but, rather, its application is widespread." *Herlihy v. Metro. Museum of Art*, 214 AD2d 250, 259 [1st Dept 1995] (citations omitted). "The qualified privilege requires that the communicants share a *common, mutual,* or *corresponding* interest, not an *identical* interest. That is to say, they must both have some vested interest in the subject matter of the communications, but their respective interests need not be aligned." *Yong Ki Hong v. KBS Am., Inc.*, 951 F Supp 2d 402, 437 [EDNY 2013] (emphasis by the Court).

No formal or legal relationship need exist between persons in order for the common interest qualified privilege to apply. "The parties need only have such a relation to each other as would support a reasonable ground for supposing an innocent motive for imparting the information." *Anas v. Brown*, 269 AD2d 761, 762 [4th Dept 2000] (citation omitted). "The interest or duty need not be a legal one, but may be of a moral or social character." *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F Supp 2d 279, 290-91 [SDNY 2006], citing *Stukuls v. State*, 42 NY2d 272, 279 [1977]. The privilege has "been held to encompass a conversation between two businesspersons, meeting to discuss the relationship between their two companies, when the statements were intended to protect one businessperson's business from unethical competition." *Chamilia, LLC v. Pandora Jewelry, LLC*, 04-CV-6017 (KMK), 2007 WL 2781246, at *13 [SDNY Sept. 24, 2007] (citation omitted).

In order to overcome the qualified privilege, a plaintiff must first prove that the statements at issue were false, and second, show that the defendant "acted beyond the scope of the privilege, acted with common law malice or acted with knowledge that the statement was false or with a reckless disregard as to its truth." *Meloff* at 146.

8

A common interest qualified privilege applies to the emails Lutwin sent to the Executive Board of her regional governing body, the Mid-Altantic Region, as well as the statements she allegedly made to three woman at an Irish dance event, all of whom were actively engaged in providing services to the Irish dance community. Lutwin's communications pertained to protecting children from predatory adults who would expose them to pornography or otherwise engage in inappropriate conduct. This is not the type of communications that should be chilled, but to the contrary, it should be encouraged. "Nor should it be overlooked that the common interest privilege has been applied most frequently in circumstances where the alleged defamatory communication itself serves an important public or societal interest." *Silverman v. Clark*, 35 AD3d 1, 11 [1st Dept 2006] (citations omitted).

School teachers and others involved with children, such has Lutwin, should be free to disclose information for the purpose of protecting children from predators without fear of law suits or liability. "The reason for according protection to such defamatory communications is the common convenience and welfare of society, that is, the recognition that on certain occasions the good that may be accomplished by permitting an individual to make a defamatory statement without fear of liability outweighs the harm that may be done to the reputation of others." *Garson v. Hendlin*, 141 AD2d 55, 61 [2d Dept 1988] (citations, internal quotation marks, and ellipsis omitted) ("a perceptible social utility in encouraging the disclosure of information" used in the evaluation of "the best interests of infant children").

The burden is upon the plaintiffs to establish, as an element of their defamation claims, "that the allegedly defamatory statement is not privileged." *Hillel v. Obvio Health USA, Inc.*, 20-CV-4647 (LAP), 2021 WL 229967, at *10 [SDNY Jan. 21, 2021] (citing cases). Plaintiffs' complaint fails to meet that burden.

In *Hillel,* the Court dismissed plaintiff's complaint under Rule 12(b)(6) because the allegations regarding malice were conclusory. Plaintiff had alleged that the allegedly defamatory statements "had no legitimate business purposes and were clearly made with the intent to harm [plaintiff's] professional reputation and interfere with her employment relationship." *Id.* at *11. The Court held that "[t]hose conclusory assertions are not entitled to a presumption of truthfulness and are insufficient to overcome the common interest privilege." *Id.* (citation and internal quotation marks omitted). "As for actual malice, Plaintiff's claims fare no better because her allegations are premised entirely upon surmise, conjecture, and suspicion, which are insufficient to defeat the claim of qualified privilege." *Id.* (citation and internal quotation marks omitted).

*Orenstein v. Figel*, 677 F Supp 2d 706 [SDNY 2009] was an action for defamation and the defendants moved to dismiss under Rule 12(b)(6). The Court held that because the contested statements were subject to a qualified privilege and plaintiff had "failed to allege the requisite malice to overcome such a privilege, defendants' motion to dismiss is granted and the complaint is dismissed with prejudice." *Id.* at 708-09. The Court held that a defendant "can succeed on a qualified privilege defense at the motion to dismiss stage." *Id.* at 711. Plaintiff failed to "overcome this privilege because he does not allege facts that support a plausible inference that [defendants] acted with malice." *Id.* "Bald allegations that defendants acted with malice -- unadulterated by any factual support whatsoever -- do not [meet the] burden" required by *Twombly/Iqbal*. *Id.* Further, the complaint failed to provide any "explanation of why [defendants] would have an interest in acting maliciously towards" plaintiff. *Id.*

The same is true in the present case. Plaintiffs present no plausible reason why Lutwin would fabricate such an outlandishly false story, involving two of her 14 year-old students and

their parents, even to the extent of causing the matter to be reported to federal and state law enforcement authorities by way of her complaint to the Mid-Atlantic Region. Compl. ¶¶ 97, 98, 99, 100 and Exhibit I. In apparent recognition of this fatal shortcoming, plaintiffs concoct a factual scenario out of whole cloth. Plaintiffs allege, without any factual basis whatsoever, that Lutwin "sends dozens of her students to Camp Rice Ceol, and receives compensation as a result of making these referrals" and that the Camp Rice Ceol Irish Dance summer camp is in competition with the plaintiffs' summer camp. Compl. ¶¶ 37, 38.

There is no plausible basis for plaintiffs to make this allegation, "unadulterated by any factual support whatsoever" (*Orenstein* at 711), that Lutwin receives compensation in any form from Camp Rice Ceol or any other summer camp. Nor is it plausible that Lutwin, a teacher operating an Irish dance school in Syracuse, New York, is in any other manner in competition with plaintiffs who are based in the United Kingdom. Compl. ¶¶ 12, 13.

## POINT II

### THE ALLEGED PUBLICATION TO NEWS MEDIA BY LUTWIN HAS NO FACTUAL BASIS AND IS THEREFORE NOT PLAUSIBLE.

Of course a report to the news media would not be covered by the common interest privilege. Plaintiff Hodges alleges that he received an email from Kerry O'Shea, a contributor to "the Irish Central, a popular global news publisher," which stated that she received a report from "anonymous sources" that plaintiffs had sent an inappropriate Instagram message to student dancers at the Francis Academy. Compl. ¶ 76. Plaintiffs then allege, without any factual basis whatsoever: "Finally, on information and belief, at some point between November 24, 2019 and January 2, 2020 Lutwin sent her defamatory allegations to news media in further efforts to spread her defamatory accusations [.]" Compl. ¶ 71. "Upon information and belief, Defendant

Lutwin was the purported 'anonymous source' who made and repeated the defamatory statements regarding Plaintiffs." Compl. ¶ 77.

There are no factual allegations in the complaint to support this claim and it is therefore not plausible under *Twombly* and *Iqbal*. "Without additional factual allegations suggesting that there was in fact [a disclosure to the Irish Central by Lutwin] Plaintiff's conclusory statement 'upon information and belief' . . . does not "cross the line from conceivable to plausible." *Rosenfeld v. Lenich*, 370 F Supp 3d 335, 348 [EDNY 2019] (brackets and internal quotation marks omitted), citing *Iqbal*, 556 U.S. at 680, quoting *Twombly*, 550 U.S. at 570. "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *Citizens United v. Schneiderman*, 882 F.3d 374 (2d Cir. 2018), as quoted in *Rosenfeld* at 348.

As if to bring home the point that there is no factual basis for the allegation that Lutwin published to the Irish Central, plaintiffs plead in the alternative: "Pleading in the alternative, if in fact another person was the anonymous source of the defamatory statements made to Ms. O'Shea, this still demonstrates that Defendant Lutwin has repeated her defamatory statements to multiple people, at least one of whom repeated it to the Irish Central." Compl. ¶ 77.

This allegation cannot establish any basis for liability as against Lutwin. Plaintiffs ignore the well established rule that Lutwin is not responsible for republication of the alleged defamatory statements, except under circumstances not relevant here. As stated, Lutwin's publications to the Mid-Atlantic Region Executive Board and alleged publications to three woman attending the Irish dance event are protected under the common interest privilege. If any of those recipients, or any persons receiving the information from those recipients, informed the Irish Central, Lutwin cannot be held liable for those republications.

"It is too well settled to be now questioned that one who utters a slander, or prints and publishes a libel, is not responsible for its voluntary and unjustifiable repetition, without his authority or request, by others over whom he has no control [.]" *Geraci v. Probst*, 15 NY3d 336, 342 [2010], quoting *Schoepflin v. Coffey,* 162 N.Y. 12, 17, 56 N.E. 502 [1900]. "The rationale behind this rule is that each person who repeats the defamatory statement is responsible for the resulting damages." *Id.* (citation omitted).   "As the Second Circuit noted in *Folwell v. Miller,* where a defendant "had no actual part in composing or publishing," he cannot be held liable "without disregarding the settled rule of law that no man is bound for the tortious act of another over whom he has not a master's power of control." *Davis v. Costa-Gavras*, 580 F Supp 1082, 1096 [SDNY 1984], quoting *Folwell v. Miller*, 145 F 495, 497 [2d Cir 1906].

## POINT III

### PLAINTIFFS' CLAIM FOR TORTIOUS INTERFERENCE SHOULD BE DISMISSED AS DUPLICATIVE OF THE DEFAMATION CLAIM

For the reasons stated, plaintiffs' claims for defamation should be dismissed. Plaintiffs cannot avoid dismissal of the complaint by couching the allegations in a claim for tortious interference.

The allegations in the claim for tortious interference pertaining to Lutwin are not in any manner different from their allegations of defamation. Plaintiffs vaguely allege: "Defendants knew of On The Move's business relationships with third parties and intentionally and maliciously interfered with those relationships." Compl. ¶ 160. Plaintiffs alleges that Defendants acted for "the sole purpose of harming the Plaintiffs, and used wrongful, dishonest, unfair or improper means to injure those business relationships" but do not allege any other acts other than the alleged defamation, which are now rebranded as "fraudulent misrepresentations." Compl. ¶¶ 161 and 162.

13

"[I]t is well settled that a claim for tortious interference is duplicative of a defamation claim where both claims seek damages only for injury to reputation, or where the entire injury complained of by plaintiff flows from the effect on his reputation." *Travelex Currency Services, Inc. v. Puente Enterprises, Inc.*, 18 CIV. 1736 (ER), 2019 WL 1259102, at *7 [SDNY Mar. 19, 2019](citation and internal quotation marks omitted).

*Goldman v. Barrett*, 733 Fed Appx 568, 571 [2d Cir 2018] is controlling. There, plaintiff alleged a defamation claim and a tortious interference claim. The Court held that the "converging claims are premised on identical underlying factual content." Further, "[e]ven if the Defendants possessed more than one intention, Plaintiffs have not alleged an independent source of harm." The Court held that "[t]he tortious interference claim was therefore properly dismissed as duplicative of the defamation claim because any economic damages derive from defamatory statements." *See also Hengjun Chao v. Mount Sinai Hosp.*, 476 Fed Appx 892, 895 [2d Cir 2012] ("other tort claims are virtually identical to the facts underlying his defamation claim" and were dismissed).

In *Lesesne v. Brimecome*, 918 F Supp 2d 221, 224-25 [SDNY 2013], cited with approval in *Goldman*, the Court held that "that claims arising from these acts sound in defamation rather than tortious interference." The "claims arising from these acts sound in defamation rather than tortious interference." *Id*. at 225. *See also ExpertConnect, LLC v. Fowler*, 18 CIV. 4828 (LGS), 2020 WL 3961004, at *4 [SDNY July 13, 2020] ("A tortious interference claim that is 'premised on identical underlying factual content' as a defamation claim will be dismissed as duplicative," quoting *Goldman*).

Plaintiffs' general allegations of loss of business due to the defamation does not save the claim. In *Deaton v. Napoli*, 17CV4592RRMGRB, 2019 WL 4736722, at *9 [EDNY Sept. 27,

2019], "the alleged interference and resultant loss of business flowed from reputational damage." The plaintiffs "allege that they lost a business relationship because the Napolis damaged their reputation by disseminating accusations of infidelity and harassment." The Court dismissed the tortious interference claim as duplicative of the defamation claim. "While Plaintiffs allege in connection with this cause of action that they have suffered economic injuries, including lost profits, loss of third party contracts and economic opportunities, all of these alleged injuries arose out of UANI's allegedly defamatory statements." *See also Restis v. Am. Coalition Against Nuclear Iran, Inc.*, 53 F Supp 3d 705, 726 [SDNY 2014] (cite to complaint omitted). "Plaintiff is not permitted to dress up a defamation claim as a claim for intentional interference with a prospective economic advantage." *Krepps v. Reiner*, 588 F Supp 2d 471, 485 [SDNY 2008], *affd,* 377 Fed Appx 65 [2d Cir 2010], as quoted in *Goldman v. Barrett*, 15 CIV. 9223 (PGG), 2017 WL 4334011, at *7 [SDNY July 25, 2017], *affd,* 733 Fed Appx 568 [2d Cir 2018].

## **CONCLUSION**

For the reasons stated, Lutwin's motion to dismiss the complaint should be granted.

Dated:         New York, New York
                March 8, 2021

                                Respectfully submitted,

                                LESTER SCHWAB KATZ & DWYER, LLP

                                s/Thomas A. Catalano
                                _____
                                Thomas A. Catalano
                                Attorneys for Defendant Molly Kathleen Lutwin d/b/a
                                Francis Academy of Irish Dance s/h/a Molly Kathleen
                                Lutwin and Francis Academy Of Irish Dance
                                100 Wall Street
                                New York, New York 10005
                                (212) 964-6611

TO: All counsel of record by ECF

15