UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMIE HODGES and ON THE MOVE LTD,

                Plaintiffs,

     -against-

JAMES EARLY, IRISH DANCING TEACHERS
ASSOCIATION OF NORTH AMERICA-MID-
ATLANTIC REGION, INC., MOLLY KATHLEEN
LUTWIN, FRANCIS ACADEMY OF IRISH DANCE
and KEITH L. LABIS,

                Defendants.

20-cv-9878(ALC)(KHP)

---

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS MOLLY KATHLEEN LUTWIN AND FRANCIS ACADEMY OF IRISH DANCE'S PRE-ANSWER MOTION TO DISMISS**

CATAFAGO FINI LLP
The Empire State Building
350 Fifth Ave., Suite 7710
New York, NY  10118
Tel.: (212) 239-9669

## TABLE OF CONTENTS

PRELIMINARY STATEMENT .................................................................................... 1

STATEMENT OF FACTS ......................................................................................... 4

ARGUMENT ....................................................................................................... 13

I.   THE COMPLAINT ADEQUATELY ALLEGES EXCEPTIONS TO DEFENDANT LUTWIN'S "COMMON INTEREST DEFENSE" – A DEFENSE WHICH  RAISES FACT ISSUES THAT CANNOT BE RESOLVED ON THIS MOTION TO DISMISS GIVEN THE COMPLAINT'S WELL-PLED ALLEGATIONS .................................................. 13

    A.   Courts Have Cautioned Against Dismissing Complaints Based On The Common Interest Privilege At The Pre-Answer Motion To Dismiss Stage ...................................... 14

    B.   The Complaint Adequately Pleads Malice ................................................. 15

    C.   The Complaint More Than Adequately Alleges That The Lutwin Defendants "Excessively Published" Their Defamatory Statements ...................................... 18

    1.   The Allegations Regarding Defendant Lutwin's Publication To The News Media Are Sufficient To Defeat This Motion To Dismiss ................................................. 20

II.   THE LUTWIN DEFENDANTS' MOTION IMPROPERLY RAISES FACTS OUTSIDE OF THE COMPLAINT .............................................................................. 22

CONCLUSION ................................................................................................... 25

# TABLE OF AUTHORITIES

## CASES

*Arts4All, Ltd. v. Hancock*, 5 A.D.3d 106 (1st Dep't 2004) ........................................................ 16

*Campo v. Paar*, 18 A.D.2d 364 (1st Dep't 1963) ...................................................................... 22

*Chefs' Warehouse, Inc. v. Wiley*, 2019 WL 4640208 (S.D.N.Y. Sept. 24, 2019)................. 16, 18

*Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902 (2d Dep't 2014) ............................................. 17

*Conti v. Doe*, 2019 WL 952281 (S.D.N.Y. Feb. 27, 2019) ........................................................ 15

*D'Lima v. Cuba Memorial Hosp., Inc.*, 833 F.Supp.2d 383 (W.D.N.Y. 2011) ........................... 20

*DeWolf v. Samaritan Hospital*, 2018 WL 3862679 (N.D.N.Y. Aug. 14, 2018).................... 17, 23

*Edwards v. North American Power and Gas, LLC*, 120 F.Supp.3d 132 (D. Conn. 2015)........... 23

*ExpertConnect, LLC v. Fowler*, 2020 WL 3961004 (S.D.N.Y. Jul. 13, 2020)....................... 2, 15

*Hillel v. Obvio Health USA, Inc.*, 2021 WL 229967 (S.D.N.Y. Jan. 21, 2021)........................... 15

*Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92 (2d Cir 2000) .......................................... 19

*Krusen v. Moss*, 174 A.D.3d 1180 (3d Dep't 2019).................................................................. 17

*Levy v. Smith*, 132 A.D.3d 961 (2d Dep't 2015)....................................................................... 22

*Melious v. Besignano*, 2009 WL 385542 (Sup. Ct., Richmond Cty., 2009)............................... 16

*Menaker v. C.D.*, 2018 WL 5776533 (E.D.N.Y. Nov. 1, 2018) ................................................. 15

*N.Y. Times Co. v. Sullivan*, 376 U.S. 254 (1964) ..................................................................... 18

*National Puerto Rican Day Parade, Inc. v. Casa Publications, Inc.*, 79 A.D.3d 592 (1st Dep't
    2010) ...................................................................................................................................... 22

*Orenstein v. Figel*, 677 F. Supp.2d 706 (S.D.N.Y. 2009) ......................................................... 15

*Palin, v. New York Times Company,* 940 F.3d 804 (2d Cir. 2019)............................................ 16

*Peffers v. Stop & Shop Supermarket Co. LLC*, 2015 WL 5460203 (S.D.N.Y. June 9, 2015)...... 16

*Penn Group, LLC v. Slater*, 2007 WL 2020099 (S.D.N.Y. Jun. 13, 2007)................................. 20

*Ragin v. Harry Macklowe Real Estate Co., Inc.*, 126 F.R.D. 475 (S.D.N.Y. 1989)................... 23

*Recant v. New York Presbyterian Hosp.*, 2009 WL 3490940 (N.Y. Sup. Ct. Oct. 15, 2009) ...... 15

*Scotto v. City of New York*, 2019 WL 6701919 (S.D.N.Y. Dec. 9, 2019) ................................... 19

*Scotto v. City of New York*, 2019 WL 6701919 (S.D.N.Y. Dec. 9, 2019) .................................. 16

*Securities and Exchange Commission v. Fiore*, 416 F.Supp.3d 306 (S.D.N.Y. 2019) ............... 23

*Sokol v. Leader*, 74 AD3d 1180 (2d Dep't 2010) ..................................................... 17

*Stukuls v. State*, 42 N.Y.2d 272 (1977) ............................................................... 19

*Techcon Contracting, Inc. v. Village Of Lynbrook*, 2004 WL 2339796 (Sup. Ct., Nassau Cty.

2004) ........................................................................................................ 16

*Thompson v. American Eagle Airlines, Inc.*, 2000 WL 1505972 (S.D.N.Y. Oct. 6, 2000) .......... 20

Plaintiffs Jamie Hodges and On The Move Ltd (collectively, "Plaintiffs"), by their undersigned counsel, respectfully submit this memorandum of law in opposition to the pre-answer motion to dismiss filed by Defendants Molly Kathleen Lutwin and the Francis Academy of Irish Dance (collectively, the "Lutwin Defendants").

## PRELIMINARY STATEMENT

The Lutwin Defendants' motion to dismiss at this early pleading stage is wholly without merit and premature.  The Complaint in this action clearly sets forth in great detail the factual basis for Plaintiffs' defamation claims.  In light of the Complaint's detailed allegations, the defenses asserted by the Early Defendants in their pre-answer motion plainly raise fact-intensive issues that should not be decided on this pre-answer motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

First, it is undisputed for purposes of this motion that the Lutwin Defendants made the defamatory assertions at issue: namely accusing Plaintiffs of sending an inappropriate video of a naked lady to two minor girls -- an accusation that Plaintiffs contend and will prove is utterly false.  Furthermore, Defendant Lutwin repeated these allegations to numerous individuals at Mid-Atlantic,[1] even though the Instagram chat at issue, which she pointed to as proof, does not support her accusation.  Even worse, after Defendant Lutwin made this accusation to a number of people in the Mid-Atlantic Region, and before they conducted any investigation of the accusation, Defendant Lutwin rushed to repeat these defamatory statements to additional numerous individuals who live outside of the United States and are not part of Mid-Atlantic.  The Complaint also sets forth numerous details supporting that Lutwin acted with malice.  Among these details include the fact that Lutwin was a competitor of the Plaintiffs, and directly benefitted by destroying their reputation.  Lutwin knew the Plaintiffs and had their contact information, but never contacted them for their version of what was being accused.  Instead, Lutwin rushed to destroy the Plaintiffs' reputations, thus benefitting by destroying a competitor's reputation, without ever even asking the Plaintiffs for their version of events.

---

[1] Defendant Irish Dancing Teachers Association Of North America Mid-Atlantic Region, Inc. is referred to herein as "Mid-Atlantic."

Yet, despite these well pleaded facts, the Lutwin Defendants seek to have this case dismissed at the pre-answer motion to dismiss stage, by asserting a qualified "common interest" privilege – a defense which courts have cautioned is typically fact-intensive and is usually not appropriate to dismiss a pleading on a motion to dismiss.  For the reasons set forth below, the Lutwin Defendants' motion fails.

First, the Lutwin Defendants assert the fact-intensive, qualified common interest privilege. Courts have repeatedly held that they should exercise caution before using the common interest privilege to dismiss a defamation claim on a pre-answer motion to dismiss. *See e.g.*, *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at *3 (S.D.N.Y. Jul. 13, 2020) (holding that "[t]he Second Circuit has cautioned that the common interest privilege is better considered on a motion for summary judgment than a Rule 12 motion").

There are two well-established and independent exceptions to the common interest privilege. These two independent exceptions involve situations where the defamatory statements were made with malice, or were "excessively published."  If either of these two independent exceptions are adequately pleaded, then this motion must be denied.  Here, the Complaint adequately alleges with great detail both of these independent exceptions to the qualified common interest privilege.

The first exception to a claim of common interest privilege involves situations where the defendant acted with malice.  Here, the Complaint alleged in great detail chilling facts which more than adequately support, for the pleading stage of litigation, that the Lutwin Defendants acted with malice. The Complaint sets forth in twenty detailed paragraphs that the Lutwin Defendants' statements were made with actual malice, or, in the least, with reckless disregard for the truth.  For example, the Complaint alleges that the Lutwin Defendants had a motive to defame the Plaintiffs – they were competitors of the Plaintiffs.  The Complaint also details how Defendant Lutwin's used an Instagram chat to support her accusations, but the Instagram chat actually provides no support, and actually contradicts, what Lutwin accused the Plaintiffs of.  Indeed, although Lutwin knew the Plaintiffs personally, she failed to contact them to even ask them for their version of what happened, while at the same time she rushed to intentionally destroy their reputations, thus destroying a competitor as she

2

planned all along. These detailed allegations are more than sufficient to allege malice for the purposes of a motion to dismiss.

The Complaint also more than adequately alleges that the Lutwin Defendants "excessively published" their defamatory statements. It is well-settled that where, as here, a defendant disseminates defamatory statements to an excessive number of people or in an excessive manner, that defendant cannot invoke the qualified common interest privilege to shield itself from liability. Here, the Complaint details that Defendant Lutwin "excessively published" her defamatory statements by repeating the statements to numerous individuals, including multiple individuals who have no connection to Defendant Mid-Atlantic and no common interest with the Defendants. The Lutwin Defendants' motion must fail for this reason alone, since excessive publication is an independent ground which defeats the qualified common interest privilege.

Third, the Lutwin Defendants' motion is also facially flawed in that it is premised on a host of incorrect and one-sided assertions of purported fact that contradict the facts alleged in Plaintiffs' Complaint. For example, Lutwin asserts that she is a "mandated reporter." This is simply not true. For the mandated reporter statute to apply, a "report" needs to be made to a local child protective service. This action does not involve any report made to a local child protective service, which is the only basis for protection under the mandatory reporter statute. The reason that Lutwin did not report the incident to any child protective service is that her motive was not to protect children, but to smear Plaintiffs' reputations. Thus, Lutwin reported nothing to any protective service, or any police, but instead rushed to repeat the false allegation to many individuals throughout the Irish Dance world. In any event, although Lutwin's assertion that she was making a "mandated report" is utterly false, in the least this is obviously a fact question not ripe for a motion to dismiss.

Lutwin's baseless and wild counter-factual allegations in her motion to dismiss only highlight the unfounded witch hunt and smear campaign she conducted against the Plaintiffs. Now, by way of a motion to dismiss, the Lutwin Defendants seek to have this Honorable Court bless her conduct, as a matter of law, as being protected – without any chance for the victims here to have their day in Court or even obtain any discovery from the Defendants, who completely destroyed the Plaintiffs'

reputations. The motion improperly assumes numerous self-serving facts that would need to be proven at trial and are not appropriately considered on a motion to dismiss. Even after *Iqbal* and *Twombly*, wrongdoers who face specific allegations of wrongdoing cannot ask courts to condone their conduct as a matter of law, by dismissing well-plead claims out of hand. It is still well-settled that when a Court assesses the plausibility of a claim, it is to be based on what the Plaintiffs allege, not contradictory facts that the Lutwin Defendants wish to introduce (which is only permissible, at best, on summary judgment). For this reason alone, the Lutwin Defendants' motion should be denied. Lutwin was not some angel who issued a "mandated report" to any protective child agency. Rather, Lutwin was a competitor of the Plaintiffs, who maliciously raced to smear the Plaintiffs' names, and she has no entitlement for a pronouncement from this Court that, as a matter of law on a motion to dismiss, she had the unfettered right to conduct a defamation and smear campaign against the Plaintiffs.

For the reasons explained herein, the Lutwin Defendants' motion should be denied.

## STATEMENT OF FACTS

This defamation and tortious interference action arises out of the malicious and intentional defamation of Plaintiffs Jamie Hodges ("Mr. Hodges") and On The Move Ltd (collectively, "Plaintiffs") by Defendants Molly Kathleen Lutwin ("Defendant Lutwin"), the Francis Academy of Irish Dance (collectively, the "Lutwin Defendants"), James Early, Irish Dancing Teachers Association Of North America Mid-Atlantic Region, Inc. ("Mid-Atlantic") and Keith L. Labis (collectively, the "Early Defendants").[2]

### A.    Summary of Complaint's Allegations Against the Lutwin Defendants

#### 1. Mr. Hodges' Reputation Prior to the Defendants' Malicious Actions

Prior to the Defendants' malicious defamation of the Plaintiffs as detailed below, Plaintiff Hodges had a highly successful career as an Irish Dance performer and Irish Dance instructor, and had an excellent reputation in the close-knit Irish Dance community. Complaint at ¶ 29. Mr. Hodges has been engaged in Irish Dance for over 15 years, during which time his accomplishments included five world team titles. Mr. Hodges has also successfully taught Irish Dance for years, which involved

---

[2] The Complaint is attached to the Declaration of Tom M. Fini as Exhibit A.

teaching thousands of students across 16 countries, including the United States, Australia, the United Kingdom, Ireland, mainland Europe, Mexico, Kazakhstan, the United Arab Emirates, Oman & Singapore.  Complaint at ¶ 29.

## 2. Defendants Early and Mid-Atlantic Acknowledged Plaintiffs' Strong Reputation and Qualifications to Teach Irish Dance By Approving Plaintiffs To Participate in An Irish Dance Summer Camp

In November 2019, Mr. Hodges contacted Defendant Early, the Regional Director for Mid-Atlantic, to apply for approval from Mid-Atlantic to conduct an Irish Dance summer camp. Complaint at ¶ 31.  On November 18, 2019, Mr. Early emailed Mr. Hodges and confirmed the approval to Mr. Hodges.   Specifically, Defendant Early stated the following to Mr. Hodges in his November 18, 2019 email: "The Mid-Atlantic Region of IDTANA Inc have no problem with your Dance Camp; On the Move being run within the MAR [Mid-Atlantic Region] next July provided that all rules and regulations of CLRG pertaining to such Open Dance Camps are followed and adhered to."  Complaint at ¶ 33, Exhibit A.   After Plaintiffs received approval from Defendants Early and Mid-Atlantic to conduct an Irish Dance Camp, Plaintiffs proceeded to sign up dozens of students for the summer camp. Complaint at ¶ 36.

## 3. Defendant Lutwin Defames the Plaintiffs

### a. Defendant Lutwin Competes with Plaintiffs For Business, Thus Providing a Motive for Her Defamation of Plaintiff

Defendant Lutwin owns Defendant Francis Academy of Irish Dance ("Francis Academy"). Francis Academy competes with Plaintiffs for business in the Irish Dance community.[3]  For example, Defendants Lutwin and Francis Academy have business relationships with an Irish Dance summer camp called Camp Rince Ceol.  Complaint at ¶ 37.  Among other things, Defendant Lutwin sends dozens of her students to Camp Rice Ceol, and receives compensation as a result of making these

---

[3] At all times relevant herein, Defendant Lutwin was acting on her own behalf, as well as on behalf of her Irish Dance School, the Francis Academy, and thus all of Defendant Lutwin's actions and the liability for such actions are imputed to the Francis Academy as well.  Indeed, on the November 24, 2019 email in which Defendant Lutwin made her defamatory assertions, a large logo of the Francis Academy appears at the bottom of the email. Complaint at ¶ 74.

referrals.  Complaint at ¶ 37.  The Camp Rice Ceol Irish Dance summer camp is in competition with the Irish Dance summer camp in which the Plaintiffs sought approval from Defendants Early and Mid-Atlantic.  Complaint at ¶ 37.

### b. Defendant Lutwin Defames the Plaintiff

Acting solely out of malice, Defendant Lutwin began defaming the Plaintiffs on November 24, 2019 – just one week after Plaintiffs had received approval to run an Irish Dance camp that competes with the Irish Dance camp that Lutwin and Francis Academy do business with and profit from. Complaint at ¶ 38.

Unbeknownst to Plaintiffs, on November 24, 2019, within one week after Defendant Mid-Atlantic's approval of Plaintiffs' summer camp, Defendants Lutwin and Francis Academy (acting through Lutwin) defamed the Plaintiffs in an email that Defendant Lutwin sent to at least 5 individuals associated with Mid-Atlantic, the same entity that approved Plaintiffs' Irish Dance summer camp the prior week.  Complaint at ¶ 39.

Specifically, on November 24, 2019, Defendant Lutwin sent an email to multiple third parties associated with Defendant Mid-Atlantic (including Debbie Lynch-Webber, Colleen Carey, Karen A. Petri, Eileen Coyle-Henry and Amy Segal Loxley), falsely asserting that Plaintiff Hodges' company On The Move sent an inappropriate video featuring a naked woman to two girls under the age of 14. Complaint at ¶ 40.

Defendant Lutwin's November 24, 2019 email stated, in relevant part:

> There are two u14 girls in my school, Francis Academy of Irish Dance, who share and run an Instagram account for Irish Dancing. The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls shared account. The girls agreed to upload the promotional video. **On the Move then sent them a video that was extremely inappropriate and disturbing.  The video is of a visibly naked woman running towards a camera and jumping on it**…
>
> The girls did not know what to do.  **They responded to On the Move that the video was inappropriate.  On the Move then apologized and told the girls that the account got hacked.**

Complaint at ¶ 41, Exhibit B.

The above statements made by Defendant Lutwin to multiple third parties include purported statements of fact (highlighted in bold) that are utterly and demonstrably false, and Plaintiffs will prove these purported assertions of fact to be false.   Complaint at ¶ 42.

First, the purported assertion of fact that Mr. Hodges and his dance company On The Move sent a sexually explicit video to two girls under the age of 14 is utterly and completely false.  In reality, On The Move never sent such a video to any underage girls.  Complaint at ¶ 43.

 In addition, this purported assertion of fact is clearly defamatory.  Defendant Lutwin's statement of purported fact clearly conveys that Plaintiffs committed serious wrongdoing and subjects Plaintiffs to public contempt, hatred, ridicule, aversion and disgrace.  Indeed, since Mr. Hodges and his dance company On The Move teach Irish Dance to young children, it is obvious that the purported statement of fact that Plaintiffs sent a sexually explicit video to young girls subjects Plaintiffs to public contempt, hatred, ridicule, aversion and disgrace.  This false and defamatory allegation has destroyed Mr. Hodges' and his dance company's reputations in the close-knit Irish Dance community.  Therefore, Defendant Lutwin's purported assertions of fact are clearly defamatory.  Complaint at ¶ 44.  In addition, Defendant Lutwin's false purported assertion of purported fact constitutes defamation *per se*, as it injures Plaintiffs in their trade, business, and profession and imputes salacious and immoral conduct to the Plaintiffs.  Complaint at ¶ 45.

Second, Defendant Lutwin made another assertion of purported fact, that is utterly and demonstrably false.  Defendant Lutwin asserted that, as a matter of purported fact, On The Move admitted to sending the inappropriate video by allegedly ***apologizing*** for sending the video to young girls.  This assertion of purported fact clearly conveys to the reader that Mr. Hodges and his dance company On The Move apologized, and thus acknowledged, they did in fact send the sexually offensive video to under 14 year old girls, accepting responsibility for such a reprehensible act.  This assertion of purported fact is utterly and demonstrably false, and Plaintiffs will prove this assertion to be false.  In reality, On The Move did not send the video, and never "apologized" or in any other way admitted sending any such video.  Therefore, Defendant Lutwin's statement is defamatory and also constitutes defamation *per se*.  Complaint at ¶ 46.

      **c.  Detailed Allegations of Lutwin's Malice and Ongoing Excessive Publication**

Plaintiff's Complaint alleges numerous facts that demonstrate that Lutwin acted solely out of malice.  First, the timing of Defendant Lutwin's November 24, 2019 defamatory email evidences malice:  Within one week of Plaintiffs receiving approval on November 18, 2019 by Mid-Atlantic to participate in an Irish Dance camp, Defendant Lutwin – a competitor of Plaintiffs – intentionally and maliciously defamed Plaintiffs by sending multiple people within Mid-Atlantic the November 24, 2019 email that contained the false and defamatory statements regarding the Plaintiffs, thereby destroying the Plaintiffs' reputation and business.  Complaint at ¶ 51.

Second, Lutwin's November 24, 2019 reveals that, while she repeatedly asserts as purported absolute fact that Plaintiff On the Move sent a sexually explicit video to two girls under the age of 14, and then purportedly admitted doing so by "apologizing" for this, Lutwin actually has absolutely no personal knowledge that these things occurred.  Complaint at ¶ 52.

Indeed, a careful reading of Lutwin's November 24, 2019 email (attached to the Complaint at Exhibit B) demonstrates that Lutwin does not even identify who actually told her about the alleged sexually inappropriate video -- whether it was the two alleged under 14 year old girls who told her this, the parents of the girls, some other girls, or the parents of those other girls, or someone else.  In that regard, Lutwin states that "I received a call letting me know what happened on Friday."  This assertion does not indicate who called her, but the next sentence reveals that it was not the parents of the under 14 girls.  Lutwin states in the next sentence that after getting the first call, Lutwin then "called the girls' parents immediately after, and talked to all of the students and families involved."  But Lutwin never states who actually represented to her what actually happened:  there is no statement as to whether it was the two under 14  year old girls, the parents of those girls, some other girls, or the parents of such other girls.  Thus, Lutwin's alleged "support" for making such outrageous defamatory accusations against the Plaintiffs is only a vague mess of hearsay on top of hearsay – which Lutwin maliciously uses to proclaim as self-evident "fact" the false and defamatory allegations she made against the Plaintiffs.  Complaint at ¶ 53.

Third, Lutwin admits in her November 24, 2019 email that there is actually no screen shot, or any other tangible evidence, of the alleged improper video or alleged apology being part of any

Instagram chat that the Plaintiff On the Move supposedly sent.  Indeed, Lutwin asserts in her November 24, 2019 email to all five Mid-Atlantic individuals that she understands from unidentified sources that the sender of the allegedly explicit video – Plaintiff On the Move – allegedly "deleted" the sexual video and its purported apology from the Instagram chat, so that there is now no evidence whatsoever on the Instagram chat that the explicit video or apology were in fact ever sent.  Complaint at ¶ 54.

Fourth, Lutwin's explanation of the alleged incident contradicts the "screen shot" evidence that Lutwin earlier sent to only *one* of the five Mid-Atlantic individuals, but then tellingly *omitted* when she sent the defamatory comments to all five Mid-Atlantic individuals – because the "screen shot" evidence actually completely contradicts the fabricated story Lutwin was telling to the five Mid-Atlantic individuals.   Lutwin asserts in her November 24, 2019 email to all five Mid-Atlantic individuals that Plaintiff On the Move allegedly "deleted" the sexual video and its purported apology from the Instagram chat.  See Complaint at Exhibit A.  Yet, the screen shot that Lutwin earlier provided to only one of those five Mid-Atlantic people facially contradicts this allegation.  Complaint at ¶ 55.

Specifically, before Lutwin wrote to all five Mid-Atlantic individuals, at 10:20 am on November 24, 2019, Lutwin first wrote an email only to Colleen Cary.  In that 10:20 am email, Lutwin attached screen shots of the Instagram conversation at issue.  That screen shots show that On the Move was asked to send a copy of its promotional video.  The screen shots next show that On the Move responded by sending a video, and the icon of the video is the same icon from On the Move's promotional video.  See Complaint at ¶ 56, Exhibit C.

Importantly, this screen shot shows that the one and only video that On the Move sent was in fact ***not*** deleted.  In response to this single video, the next responsive text – which was clearly written in a transparent effort to manufacture so-called evidence of wrongdoing against the Plaintiffs – clearly accuses the sender as having sent *one* video, which was allegedly offensive.  Critically, this response does **not** make any mention of there having been two videos – one legitimate promotional video, and one inappropriate one.  See Complaint at ¶ 57.

Thus, the fact that the single video icon in the chat was ***not*** deleted clearly shows that the story that Lutwin was reciting as fact actually makes no sense.   What makes more sense is the obvious: the

person feigning outrage at supposedly receiving an inappropriate video was making a false assertion. No inappropriate video was sent.  In efforts to make up a story as to why the video and apology is not in the Instagram chain, Defendant Lutwin falsely asserts in her November 24, 2019 email that these were allegedly "deleted" by Plaintiff On the Move.  Yet, the screen shot clearly shows that the one and only video was not deleted.  See Complaint at ¶ 58.

Another inconsistency between the screen shots of the Instagram chat and the false version of events the Defendant Lutwin told in her defamatory November 24, 2019 email is the sophisticated language being used by the supposedly "under 14" year old girls.  For example, the text that "objects" to the imaginary video that was never sent asserts, in very adult fashion: "The video you sent me was extremely inappropriate.  I'm not sure if that was an accident, but that was very unprofessional and wrong."  The sentence structure and phraseology (including the adult phrase "extremely inappropriate") clearly suggests that this feigned objection to the imaginary video was written by an adult, not under 14 girls, in efforts to manufacture some type of so-called "evidence" of wrongdoing. Moreover, the author objects to "[t]he video you sent *me*" – one person.  This further calls into the question the notion that the Instagram text was being received *in real time* by two under 14 year old girls.  The bottom line is that the actual screen shots of the Instagram chat at issue contradicts the false story that Defendant Lutwin set forth in her November 24, 2019 email to five people associated with Mid-Atlantic.  See Complaint at ¶ 59.  Because the screen shots of the Instagram conversation actually contradict the story that Lutwin fabricated, Lutwin intentionally *omitted* the screen shots of the conversation when she later wrote to all five Mid-Atlantic individuals.  See Complaint at ¶ 60, Ex. B. This intentional omission is further evidence of Lutwin's malice.

Fifth, Lutwin's November 24, 2019 email clearly manifests her ill-will, spite and pure malice, making clear that her intent is that the Plaintiffs must be destroyed regardless of any facts or evidence. Lutwin maliciously insists in her November 24, 2019 email what should be done despite this lack of facts or evidence:  taking a page from the Salem witch trials, and despite Lutwin's lack of personal knowledge as to what happened, lack of knowledge of which particular individual sent the alleged video, lack of any evidence of wrongdoing in the screen shots of the chat, and her admitting that it is

unclear whether the sending of the video was "accidental or purposeful," Lutwin nevertheless proclaims that the Plaintiffs should not be "around our dancers." See Complaint at ¶ 61.

Completely missing from Lutwin's malicious insistence that the Plaintiffs must be instantly presumed unfit to be around children, is any notion that Lutwin and Mid-Atlantic should present the Plaintiffs with the accusations being made against them, and provide them with an opportunity to explain their side of the story.  Lutwin's malice is clear on its face, because obtaining the facts and evidence was not her purpose.  Instead, Lutwin's purpose was to convert an unsubstantiated allegation into an immediate death sentence to the reputation and business of the Plaintiffs.  Lutwin's clear "destruction by accusation" approach – combined with the lack of any personal knowledge on her part, or any tangible evidence for what she was asserting – manifests that Lutwin was solely motivated by malice in making the false and defamatory assertions regarding the Plaintiffs.  See Complaint at ¶ 62.

As set forth above, Defendant Lutwin intentionally fabricated the defamatory allegations against the Plaintiffs and acted solely out malice, with actual knowledge of the falsity of her fabricated defamatory assertions.  However, pleading in the alternative, even assuming that Defendant Lutwin contends that someone informed her of the defamatory allegations, Defendant Lutwin still acted with malice.  In the very least, Lutwin repeated the defamatory allegations regarding the Plaintiffs to numerous individuals with reckless disregard for the falsity of the statements, and repeated the defamatory allegations with a high degree of awareness of their probable falsity.  Complaint at ¶ 63.

Defendant Lutwin knew Plaintiff Hodges personally, and had his contact information, yet inexplicably never even contacted him to hear his side of the story.  For example, Lutwin did not contact Plaintiff Hodges or his brother – both of whom she knew – to inquire whether the allegation was true, and which individuals had access to the On the Move Instagram account.  Complaint at ¶ 64.

It is critical that Lutwin does not state whether she or anyone (including the parents of the purported under 14 year old girls who were allegedly participating in the text) reported the incident to Instagram so that Instagram could investigate and get the facts.  If an inappropriate video was in fact sent and then deleted by the wrongdoer, a concerned adult could easily have reported the incident to Instagram to allow it to confirm whether the alleged wrongdoer/user in fact posted an improper video

11

in the chat, and then in fact deleted it along with the alleged apology. Any truly concerned adult would also report the incident to Instagram in the hopes of confirming the truth of the allegation, and if it were true, ensuring that the On the Move account would be blocked by Instagram to protect children. However, Lutwin took none of these simple fact-finding steps, because getting at the facts or the truth was not her motive: Lutwin was acting solely out of malice to destroy the Plaintiffs' reputations. Complaint at ¶ 65.

Defendant Lutwin's malice is also evidenced by the fact that she proceeded to excessively publish her defamatory statements regarding the Plaintiffs to numerous individuals. On or around November 28, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Simona Santina Mauriello, who runs an Irish Dance school in the United Kingdom and sells costumes for Irish Dancers. On or around November 28, 2019, Ms. Mauriello was visiting the United States for an Irish Dance event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that November 28, 2019 encounter, Defendant Lutwin stated to Ms. Mauriello that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school." Complaint at ¶ 66.

On or around November 28, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Ellie O'Sullivan, an Irish Dance performer who lives in the United Kingdom. Ms. O'Sullivan was also visiting the United States for the Irish Dance event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that November 28, 2019 encounter, Defendant Lutwin stated to O'Sullivan that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school." Complaint at ¶ 67.

On or around December 1, 2019, Defendant Lutwin orally repeated her defamatory allegations in person to Rosey Jackson, who lives in the United Kingdom and sells Irish Dance merchandise including wigs. Ms. Jackson was also visiting the United States for the Irish Dance event in Philadelphia, and ran into Defendant Lutwin at the Marriot Downtown Philadelphia. During that December 1, 2019 encounter, Defendant Lutwin stated to Ms. Jackson that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school." Complaint at ¶ 68.

d. **Mr. Hodges Receives Inquiry From a News Outlet Regarding Defamatory Allegations That Have Been Made Against Him That Are Substantially**

**Similar To Defendant Lutwin's Statements**

On January 3, 2020, Mr. Hodges received a shocking email from a woman named Kerry O'Shea who identified herself as a contributor to Irish Central, a popular global news publisher.  Ms. O'Shea's January 3, 2020 email claimed, among other things, that she received, purportedly from "anonymous sources," a complaint regarding Mr. Hodges and his company On the Move sending an inappropriate Instagram message to student dancers at the Francis Academy.  Specifically, Ms. O'Shea's email stated that there was a "complaint that was lodged against Jamie and Mitchell Hodges/On the Move regarding an inappropriate Instagram message and dancers at the Francis Academy."  See Complaint at ¶ 75, Exhibit D.

Upon information and belief, Defendant Lutwin was the purported "anonymous source" who made and repeated the defamatory statements regarding Plaintiffs.  Defendant Lutwin was motivated solely by malice in repeating the defamatory assertions to Ms. O'Shea and the Irish Central, in the hopes of causing the defamatory assertions to be repeated in media and social media.

In light of the Complaint's detailed well-pleaded allegations, the Lutwin Defendants' motion to dismiss should be denied.

## ARGUMENT

### I.   THE COMPLAINT ADEQUATELY ALLEGES EXCEPTIONS TO DEFENDANT LUTWIN'S "COMMON INTEREST DEFENSE" – A DEFENSE WHICH RAISES FACT ISSUES THAT CANNOT BE RESOLVED ON THIS MOTION TO DISMISS GIVEN THE COMPLAINT'S WELL-PLED ALLEGATIONS

It is undisputed for purposes of this motion that the Lutwin Defendants made the defamatory assertions at issue: namely accusing Plaintiffs of sending a Plaintiffs sent an inappropriate video to two minor girls -- an accusation that Plaintiffs contend and will prove is utterly false.  Yet the Lutwin Defendants assert that their defamatory assertions made against the Plaintiffs are protected by the fact-intensive "common interest" privilege.  Doc. 34, Def. Br. at 7-11.

However, given the well-plead allegations of the Complaint, including the two well-recognized exceptions to the common interest privilege, it is premature for the Lutwin Defendants to raise the common interest privilege on these alleged facts.

The common interest privilege only affords a qualified privilege and defense to a defamation claim, but there are two well-established and independent exceptions to this privilege. These two independent exceptions involve situations where the defamatory statements were made with malice, or were "excessively published." If either of these two, independent exceptions are adequately alleged, then this motion must be denied. Here, the Complaint adequately alleges both exceptions. Thus, based on the Complaint's well-plead allegations, the Lutwin Defendants cannot use the common the interest privilege at this pre-answer stage to dismiss the Complaint in this action.

## A. Courts Have Cautioned Against Dismissing Complaints Based On The Common Interest Privilege At The Pre-Answer Motion To Dismiss Stage

Courts have repeatedly held that they should exercise caution before using the common interest privilege to dismiss a defamation claim on a pre-answer motion to dismiss. *See e.g.*, *ExpertConnect, LLC v. Fowler*, 2020 WL 3961004, at *3 (S.D.N.Y. Jul. 13, 2020) (holding that "[t]he Second Circuit has cautioned that the common interest privilege is better considered on a motion for summary judgment than a Rule 12 motion"); *Conti v. Doe*, 2019 WL 952281, at *9 (S.D.N.Y. Feb. 27, 2019) (holding that "the Second Circuit has cautioned district courts against dismissing defamation claims based on the common interest privilege when deciding a Rule 12(b)(6) motion, holding that the privilege is better considered on a motion for summary judgment").[4]

It is true that if a complaint consists of only bare and conclusory allegations of malice and excessive publication, then some courts have held that the common interest privilege can be used

---

[4] Some courts have gone so far as to hold that because the common interest privilege is an affirmative defense, it flatly cannot be used as a basis for dismissal at the pre-answer motion stage whatsoever. *Menaker v. C.D.*, 2018 WL 5776533, at *6 (E.D.N.Y. Nov. 1, 2018) (denying motion to dismiss "[b]ecause the common interest privilege constitutes an affirmative defense ... it does not lend itself to a preanswer motion to dismiss..."); *Penn Group, LLC v. Slater*, 2007 WL 2020099, at *6 (S.D.N.Y. Jun. 13, 2007) (denying motion to dismiss where defendant raised common interest privilege because "these factual questions depend upon the assessment of an evidentiary record, which is not available to us on a Rule 12(b)(6) motion"). *See also e.g.*, *Recant v. New York Presbyterian Hosp.*, 2009 WL 3490940, at *4 (N.Y. Sup. Ct. Oct. 15, 2009) ("This issue cannot be determined on a motion to dismiss. This court is bound to follow the First Department decision in *Garcia v. Puccio*, 17 AD3d 199, 201 (1st Dep't 2005), which holds that a claim of qualified privilege is an affirmative defense, to be raised in defendant's answer, and then in a summary judgment motion."). However, some recent decisions have held that if the exceptions to the common interest privilege are purely conclusory, dismissal pursuant to Rule 12(b)(6) may be granted. See Def. Br. at 10. Here, the Complaint alleges malice and excessive publication with great specificity and factual support, and thus dismissal based on the common interest defense is clearly not warranted.

successfully on a motion to dismiss.  However, in this case, the Complaint sets forth very specific facts and details supporting that the Defendants acted with malice and excessively published the defamatory statements.  In light of the Complaint's well-pleaded allegations, the Lutwin Defendants cannot use the common the interest privilege to dismiss this Complaint.

### B.    The Complaint Adequately Pleads Malice

As noted above, one of the two well-recognized and independent exceptions to the common interest privilege is where it is alleged that the Defendants' statements were made with malice.  *See e.g.*, *Peffers v. Stop & Shop Supermarket Co. LLC*, 2015 WL 5460203, at *8 (S.D.N.Y. June 9, 2015) (motion to dismiss denied, despite assertion of common interest privilege, because allegations that defendants "fabricate[d] an encounter with plaintiff to provide Stop & Shop with a basis for firing him" was sufficient to plead actual malice); *Scotto v. City of New York*, 2019 WL 6701919, at *11 (S.D.N.Y. Dec. 9, 2019) (denying motion to dismiss based on common interest privilege because  an "issue of fact remains as to whether Defendant Caraway acted with malice or reckless disregard for the truth").

It is well-established that on a pre-answer motion, a complaint adequately alleges malice if the plaintiff alleges that the defamatory statement was made even though the defendants knew that it false or with reckless disregard of whether it was false.  *See e.g.*, *Palin, v. New York Times Company,* 940 F.3d 804, 816 (2d Cir. 2019) (denying motion to dismiss, holding that "actual malice does not mean maliciousness or ill will; it simply means the statement was 'made with knowledge that it was false or with reckless disregard of whether it was false or not'"); *Chefs' Warehouse, Inc. v. Wiley*, 2019 WL 4640208, at *9 (S.D.N.Y. Sept. 24, 2019) (holding that "[b]ecause Chefs' Warehouse has pleaded a plausible defamation claim alleging actual malice its claim … should not be dismissed"); *Melious v. Besignano*, 2009 WL 385542, at *3 (Sup. Ct., Richmond Cty., 2009) (holding that malice was sufficiently pleaded because "the statements … reflect[ed] hostility towards plaintiff, and the allegations of the former's continuing attempts to secure statements from third parties (including students) in an effort to demonstrate plaintiff's misconduct"); *Techcon Contracting, Inc. v. Village Of Lynbrook*, 2004 WL 2339796, at *6 (Sup. Ct., Nassau Cty. 2004) (holding that malice was sufficiently pleaded because of allegations that a competitor "acted in a grossly irresponsible manner in making

such false and misleading statements, and did so with the intent to harm Techcon's reputation in the construction community").

Importantly, in opposing a pre-answer motion to dismiss, courts have been careful to point out that the plaintiff does not have the burden of showing evidentiary facts to survive the motion. *See e.g.*, *Arts4All, Ltd. v. Hancock*, 5 A.D.3d 106, 109 (1st Dep't 2004) ("Plaintiffs have no obligation to show evidentiary facts to support [their] allegations of malice on [this] motion to dismiss [the] complaint.'"); *Colantonio v. Mercy Med. Ctr.*, 115 A.D.3d 902, 903 (2d Dep't 2014) *citing Sokol v. Leader*, 74 AD3d 1180, 1182 (2d Dep't 2010) ("Notably, a plaintiff has no 'obligation to show evidentiary facts to support [his or her] allegations of malice on a motion to dismiss pursuant to CPLR 3211 (a)(7)'").

In light of the above standards for pleading malice on a pre-answer motion, the Plaintiffs' Complaint more than adequately alleges that the Lutwin Defendants acted with malice. Indeed, the Complaint contains an entire section entitled "**Detailed Allegations of Lutwin's Malice and Ongoing Excessive Publication**," which sets forth in over twenty detailed paragraphs that the Defendants' statements were made with actual malice, or, in the least, with reckless disregard for the truth. Complaint at ¶ 50-74. For example, the Complaint details that Defendant Lutwin had a motive to defame the Plaintiff – she was a competitor of Plaintiffs. Complaint at ¶ 51. *See e.g.*, *Krusen v. Moss*, 174 A.D.3d 1180, 1180-1182 (3d Dep't 2019) (holding that malice was "sufficiently pleaded" where the statements at issue were made by a party that was a competitor to the plaintiff). Moreover, the Complaint details how the Instagram chat that Lutwin points to support her defamatory accusations against the Plaintiffs do not support the allegations, and indeed, contradicts them. Lutwin knew the Plaintiffs personally, but never bothered to contact them to get their version of events. Instead, Lutwin raced to tell numerous people throughout the Irish Dance world that the Plaintiffs in fact sent an inappropriate video to two minor girls – a purported assertion of fact which is completely false, and for which there is no evidence.

In response to this, the Lutwin Defendants barely address the Complaint's detailed allegations of malice. See Def. Br. at 9-11. Their statement in their brief denying that Defendant Lutwin is a competitor of the Plaintiffs fails at this motion to dismiss stage. *See e.g., DeWolf v. Samaritan Hospital,*

2018 WL 3862679, at *3 n.3 (N.D.N.Y. Aug. 14, 2018) (denying a motion to dismiss because "Defendants rely in part on facts outside the pleadings" and "a court must accept plaintiff's nonconclusory allegations as true").   Moreover, the Lutwin Defendants' argument that it is not "plausible" for Defendant Lutwin to compete with Plaintiffs because they are based in the United Kingdom is without merit because the Complaint alleges that Plaintiffs' business relationships were in the United States, and that he taught in classes and camps throughout the world (including within the State of New York (see Complaint Exhibit M)).   The Defendants' arguments based on facts outside of the Complaint, in the least, raise fact issues that cannot be resolved on this motion to dismiss.[5]

The Complaint also alleges that Defendant Lutwin ***knew*** that the defamatory statements she made about the Plaintiffs were false – which is sufficient to establish malice.   *Id*. at ¶  63.   *See e.g.*, *Chefs' Warehouse, Inc. v. Wiley*, 2019 WL 4640208, at *9 (S.D.N.Y. Sept. 24, 2019) *quoting N.Y. Times Co. v. Sullivan*, 376 U.S. 254, 279–80 (1964). ("A statement is made with actual malice if it was 'issued with knowledge of its falsity'").   In addition, the Complaint further alleges why Lutwin acted with malice, out of spite, and/or with reckless disregard for the truth:   The Complaint details how Defendant Lutwin is a competitor of the Plaintiffs'; that the Instagram chat she points to support her wild accusation actually does not support it; her version of events is based on double or triple hearsay, with no personal knowledge, and is filled with numerous inconsistencies; and she raced to repeat her smear defamation assertions to numerous individuals, without once even asking the Plaintiffs (who she knew personally), for their version of what had occurred.

For example, the Complaint explains that the screen shots of the Instagram messages do not show that Plaintiffs sent any inappropriate video, and contain no apology whatsoever.   In fact, the screen shots contradict the Lutwin Defendants' claim that the Plaintiffs ever stated anything inappropriate.   Complaint at ¶ 55-59, Exs. B and C.   The Complaint alleges that Lutwin failed to even ask the Plaintiffs, who she knew, for their explanation of what happened, and failed to report the

---

[5] The Complaint alleges that Plaintiffs' Irish Dance camp competed with the Lutwin Defendants' camp.  See Complaint at ¶ 37.  The Lutwin Defendants' Irish Dance camp conducts camps in New York, New Jersey and Pennsylvania.  These facts that will come out in discovery.  The Lutwin Defendants are not entitled on a motion to dismiss to assert that they are not competitors of Plaintiffs, which is simply false.

allegedly improper texts to Instagram before repeating to numerous third parties the devastating, and career-destroying allegations which she had no personal knowledge of, and heard only, at best, by double and triple hearsay.  Complaint at ¶ 64.

In light of the above, the Complaint more than adequately alleges one of the two independent exceptions to the common interest privilege, namely that the Lutwin Defendants made her statements with malice and with knowledge of their falsity, or in the least, acted with gross or reckless disregard for the truth.  Complaint at ¶ 50.  These detailed allegations, in the least, are sufficient to plead malice for the purposes of this pre-answer  motion to dismiss.  *See Scotto v. City of New York*, 2019 WL 6701919, at *11 (S.D.N.Y. Dec. 9, 2019) (defeating the common interest privilege on a motion to dismiss because  an "issue of fact remains as to whether Defendant Caraway acted with malice or reckless disregard for the truth").

### C.     The Complaint More Than Adequately Alleges That The Lutwin Defendants "Excessively Published" Their Defamatory Statements

A second fact-intensive exception to the qualified privilege is where the defendant "excessively publishes" the defamatory statements.  It is well-established under New York law that excessive publication is an exception to the common interest privilege, and that excessive publication results in a defendant not being able to rely on the qualified "common interest" defense.  *See e.g.*, *Scotto v. City of New York*, 2019 WL 6701919, at *10 (S.D.N.Y. Dec. 9, 2019) *quoting Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000) (holding that "[i]f a defamatory communication is conditionally privileged, the plaintiff may nonetheless prevail by establishing that it was published excessively"); *Stukuls v. State*, 42 N.Y.2d 272, 281 (1977) (reversing the granting of a motion to dismiss where an unsubstantiated defamatory letter was read to numerous individuals, holding that "the protection of the [common interest] privilege will still be subject to defeasance by excessive publication").

Here, the Complaint clearly alleges that the Lutwin Defendant "excessively published" her defamatory statements by repeating the statements to numerous individuals, including multiple individuals who have no connection to Defendant Mid-Atlantic, and are individuals who reside around

the world, and who are not within the leadership of Mid-Atlantic, and are not even part of Mid-Atlantic. Complaint at ¶ 67-70.  In response to these allegations, the Lutwin Defendants baselessly argue that Defendant Lutwin's statements to these individuals should, as a matter of law at the motion to dismiss stage, be protected under the common interest privilege because these individuals provide "services" to the Irish Dance community.  See Def. Br. at 9.  This argument is obviously strained and proves too much.

The Lutwin Defendants' argument is without merit because it is well-settled that the common interest privilege is not so far reaching that any individual within a large community can be said to be in a common interest with another, especially at the pre-answer motion to dismiss stage.  *See e.g., Penn Group, LLC v. Slater*, 2007 WL 2020099, at *6 (S.D.N.Y. Jun. 13, 2007) (holding that "[a]lthough Slater claims that a common interest exists 'among all whom Penn Group touches,' … that suggestion does not justify dismissal…  Whether such a privilege would apply here depends on who the recipients were, whether those recipients actually shared a common interest with Slater and with each other… All of these factual questions depend upon the assessment of an evidentiary record, which is not available to us on a Rule 12(b)(6) motion"); *Thompson v. American Eagle Airlines, Inc.*, 2000 WL 1505972, at *7 (S.D.N.Y. Oct. 6, 2000) (denying summary judgment as to the common interest privilege as to statements between two individuals in the airline industry "statements were published to American Airlines employees who were not co-employees of Wheatley.  The issue of whether Wheatley and the American Airlines security guards share a sufficient interest in the subject of the statement for the qualified privilege to attach is an issue of fact that cannot be resolved on this motion for summary judgment"); *D'Lima v. Cuba Memorial Hosp., Inc.*, 833 F.Supp.2d 383, 391 (W.D.N.Y. 2011) (holding that the common interest privilege did not apply to statements made to an individual because "Glover does not hold an administrative position at CMH and does not have a similar interest or job responsibility to investigate the health and safety of CMH employees and patients.  Rather, Glover is a dental hygienist").

There is no indication from the Complaint that the individuals who Defendant Lutwin repeated her defamatory statements to had any sort of common interest with her.  To the contrary, one the

individuals merely sold Irish Dance merchandise, including wigs.  Complaint at ¶ 70.  The other individuals were merely individuals who happen to work in the Irish Dance field and are far beyond the leadership of Mid-Atlantic.

Under the Lutwin Defendants' logic, the well-settled law of excessive publication would be wiped out because if any person in any common field repeated their defamatory statements to one another, the statement would be protected under an incredibly broad far-reaching "interest" of merely being in the same field of work.  Lawyers could accuse other lawyers of stealing money at large bar association meetings, under a purported "common interest" of knowing which lawyers are thieves. This expansive view of the common interest privilege, at this motion to dismiss stage, is simply incorrect and untenable.  It would involve the Court stepping in to protect the wrongdoer as a matter of law, and turning away victims of gruesome defamation, without victims having any day in Court or even any discovery, completely stripping wronged plaintiffs from any remedy despite indisputable proof that defendants intentionally smeared the Plaintiffs and destroyed their reputations.  The Complaint's detailed allegations more than adequately alleged that the Lutwin Defendants excessively published their defamatory statements, and it is simply wrong for them ask this Court to protect their wrongful conduct as a matter of law at this pre-answer motion to dismiss stage.

### 1. The Allegations Regarding Defendant Lutwin's Publication To The News Media Are Sufficient To Defeat This Motion To Dismiss

The Complaint alleges that Defendant Lutwin maliciously forwarded her defamatory allegations to news media in further efforts to spread her defamatory accusations, which also highlights the Lutwin Defendants' excessive publication.  Complaint at ¶ 71.  The Court does not need to reach this issue, because, as set forth above, the Complaint already contains other specific allegations that Lutwin repeated her defamatory statements to numerous individuals, including three individuals outside of Mid-Atlantic.  Thus, apart from the newspaper, the Complaint adequately alleges that Lutwin excessively published her defamation.  However, though not necessary for the Court to address on this motion, the Lutwin Defendants also adequately allege that Defendant Lutwin was the anonymous

source who made and repeated the defamatory statements regarding Plaintiffs to the news media in further efforts to spread her defamatory accusations.

While it true that one who makes a defamatory statement is not responsible for its re-communication *without his authority or request* by another over whom he has no control, it well-settled that, where, as here, it is alleged that the defamer gave the statement to a representative of the media and authorized or intended its publication, that individual *is* responsible for any damage caused by the publication.  *See e.g.*, *National Puerto Rican Day Parade, Inc. v. Casa Publications, Inc*., 79 A.D.3d 592, 594 (1st Dep't 2010) (holding that a defamation claim was sufficiently stated because "[t]he motion court … correctly found that the pleading sufficiently stated that Feliciano was the source of the two articles"); *Levy v. Smith*, 132 A.D.3d 961, 962-963 (2d Dep't 2015) (holding that "the facts alleged in the complaint were sufficient to permit a reasonable inference that the appellant intended and authorized the republication of the allegedly defamatory content of the press releases"); *Campo v. Paar*, 18 A.D.2d 364, 368 (1st Dep't 1963) (holding that "[a]nyone giving a statement to a representative of a newspaper authorizing or intending its publication is responsible for any damage caused by the publication").

Here, the Complaint sufficiently pleads facts that give rise to a plausible inference that Defendant Lutwin was the source of the publication to Kerry O'Shea, who is a contributor to Irish Central, a popular global news publisher.  See Complaint at ¶ 75.  The Complaint alleges that Ms. O'Shea emailed Plaintiff Hodges claiming that she received an email containing the exact same defamatory statement that Defendant Lutwin made regarding Plaintiffs.  See *Id*; Exhibit D to the Complaint.  It is therefore not mere speculation that Ms. Lutwin was the individual who repeated her statement to Ms. O'Shea.  This is because in her email, Ms. O'Shea did in fact repeat Ms. Lutwin's exact defamatory statement. It is therefore clear that either Ms. Lutwin herself repeated her defamatory statement to Ms. O'Shea, or she repeated the statement to some other person, who in turn then repeated it to Ms. O'Shea at Irish Central.  In either case, the fact that the newspaper received the exact defamation that originated with Lutwin highlights that Lutwin had spread the allegation so widely that it made its way to the newspaper very shortly after Lutwin originated the false allegation.  Again, while

this adequately pleads a basis for believing the Lutwin as the person who sent the information to the newspaper, the Court need not reach this issue because the Lutwin Defendants excessively published their statements to numerous other individuals that the Complaint specifically identifies.    See Complaint at ¶ 72.

## II.    THE LUTWIN DEFENDANTS' MOTION IMPROPERLY RAISES FACTS OUTSIDE OF THE COMPLAINT

The Lutwin Defendants' motion is also facially flawed in that it is premised on a host of incorrect and one-sided assertions of fact that contradict the facts alleged in Plaintiffs' Complaint.[6]

Even after *Iqbal* and *Twombly*, it is still well-settled that when a Court assesses the plausibility of a claim, it is to be based on what the Plaintiffs allege, not contradictory facts that the Defendants wish to introduce (which is only permissible, at best, on summary judgment).  *See e.g.*, *Securities and Exchange Commission v. Fiore*, 416 F.Supp.3d 306, 330 (S.D.N.Y. 2019) (holding that because "Fiore's defense would require the Court to consider facts outside the Complaint, Defendants' Motion To Dismiss this claim is denied"); *DeWolf v. Samaritan Hospital,* 2018 WL 3862679, at *3 n.3 (N.D.N.Y. Aug. 14, 2018) (denying a motion to dismiss because "Defendants rely in part on facts outside the pleadings" and "a court must accept plaintiff's nonconclusory allegations as true"); *Edwards v. North American Power and Gas, LLC*, 120 F.Supp.3d 132, 140 (D. Conn. 2015) (holding that "NAPG is essentially arguing that the allegations in the Complaint are false … The Court does not and cannot grant the motion based on this reasoning. To prevail on a motion to dismiss, NAPG cannot introduce facts outside of the complaint").

---

[6] In their preliminary statement, the Lutwin Defendants contend that the Francis Academy is improperly named as a Defendant because they assert it is only a "tradename," and cite *Ragin v. Harry Macklowe Real Estate Co., Inc.*, 126 F.R.D. 475 (S.D.N.Y. 1989) in a footnote.  See Def. Br. at 1, footnote 1.  However, Defendants are incorrect.  Even under *Ragin*, the case cited by the Lutwin Defendants, their argument fails.  In *Ragin*, the Defendants argued for dismissal of an entity sued because the Defendant asserted that the entity was "only a trade name." *Id*. at 480.  The Court held that "plaintiffs are entitled to discovery in order to examine the legal structures in which the Macklowe Organization operates, and if it is a 'trade name' only, as defendants assert, then plaintiffs will be permitted to amend their complaint to add the appropriate substitute for the Harry Macklowe Organization." Here, since the Lutwin Defendants claim that the Francis Academy is only a "tradename," Plaintiffs respectfully submit the Court, as in *Ragin*, order that Plaintiffs be entitled to discovery to examine the legal structures in which the Francis Academy operates and be permitted to amend their complaint to add the appropriate substitute for the Francis Academy.

The Lutwin Defendants improperly seek to have the Court adopt their version of the facts on a pre-answer motion to dismiss.  For example, the Lutwin Defendants assert, as a purported fact on this pre-answer motion to dismiss, that Plaintiffs sent an obscene video to minors, and in doing so, committed a crime.  See Doc. 34, Def. Br. at 2 ("Lutwin's two 14 year-old students were victims of this sex crime" citing N.Y. Penal law §235.22).  To begin, the Lutwin Defendants ignore that the Plaintiffs' Complaint outright denies this purported fact.  The Complaint clearly alleges that the Defendant Lutwin's purported assertion of fact, that Plaintiffs sent a sexually explicit video to two girls under the age of 14, is utterly and completely false.  Complaint at ¶ 43.  The Complaint also denies that Plaintiffs ever "apologized" for sending any inappropriate video, indeed because the Plaintiffs allege they never sent such a video.  Complaint at ¶ 46-47.  Indeed, the Instagram text that Defendant Lutwin points to support her defamation against the Plaintiffs contain no inappropriate video, no apology, and in fact refers to only one legitimate video, which appears in the chat.  Yet, in the context of a motion to dismiss, the Lutwin Defendants' motion improperly assumes that Plaintiffs did in fact send the inappropriate video to underage girls, and apologized for doing so.

Moreover, Defendant Lutwin now asserts in her motion that a crime was committed under N.Y. Penal Law §235.22.  But that penal law clearly requires that the perpetrator induce a minor to have sex.[7]  Here, there is absolutely no evidence or even an allegation made that the Plaintiffs induced a minor to have sex – an accusation that Lutwin herself did not make even in her original false defamatory statements.  Again, Lutwin simply makes this new factual assertion in her motion to dismiss to further smear the Plaintiffs.  It bears repeating that such assertions that Plaintiff induced a minor to have sex, were not even made by Lutwin in her original defamation.  Defendants are piling on now, in a motion to dismiss, and further smearing the Plaintiffs. The Defendants' outrageous and gratuitous inclusion of more incendiary and inaccurate facts outside of the Complaint, suggesting that the Plaintiffs induced minors to have sex, is outrageous, especially in the context of a motion to dismiss, where counsel to

---

[7] N.Y. Penal law §235.22 provides, in relevant part, that the "by means of such communication [disseminating indecent material to minors], he importunes, invites or induces a minor to engage in sexual intercourse, oral sexual conduct or anal sexual conduct, or sexual contact with him, or to engage in a sexual performance, obscene sexual performance, or sexual conduct for his benefit."

Defendants know that such facts have no place, since these are facts beyond those alleged in the Complaint. This improper tactic should not be rewarded by the Court.

In addition, the Lutwin Defendants' contention (only stated in their statement of facts, not in the argument section of the brief) that Defendant Lutwin's statements are "mandated reports" protected under New York Social Services Law, is utterly baseless, particularly at the motion to dismiss stage. See Def Br. at 4-5.  That statute only provides a qualified privilege to statutorily defined reports and communications *that are made to designated child protective authorities as clearly defined in the statute*.  *See e.g.*, *Vaz v. Sipsas*, 1 A.D.3d 503, 504 (2d Dep't 2003) (holding that an individual who submits a report as defined under Social Services Law Section 413 is "protected by a qualified privilege"); NY Social Services Law § 413 (a).  To come within the ambit of the statute, an individual must submit a report to *the designated office for local child protective service*.  *See* New York Social Services Law § 415.  The statute does *not* protect defamatory communications that, as here, are repeated to multiple private individuals who are not associated with any designated local child protective service office, and the Lutwin Defendants do not cite one case to support their bizarre argument that the statute applies to these facts.

This action does not involve any report made to a local child protective service.  As spelled out in Plaintiffs' Complaint, Plaintiffs assert defamation against Defendant Lutwin for emails and oral statements made to multiple third parties, including statements made to people who were not even associated with Defendant Mid-Atlantic.  See Complaint at ¶ 40-41; 67-70.  Those statements are the basis for Plaintiffs' defamation claims, and clearly are not subject to any protection under New York Social Services Law.  In any event, even if Defendants' statements could be subject to New York Social Services Law, as stated above, the qualified privilege defense is a fact-intensive issue not conducive to a motion to dismiss.  *See Recant v. New York Presbyterian Hosp.*, 2009 WL 3490940, at *4 (N.Y. Sup. Ct. Oct. 15, 2009) (denying motion to dismiss because a claim of qualified privilege under New York Social Services Law is an "affirmative defense, to be raised in defendant's answer, and then in a summary judgment motion").  Read as a whole, the Complaint's detailed allegations clearly state a plausible claim for purposes of a 12(b)(6) motion. *See e.g.*, *NYC Medical Practice, P.C. v. Shokrian*,

2019 WL 1298450 at *2 (E.D.N.Y. Mar. 21, 2019) (holding that under "the liberal pleading standard of Rule 12(b)(6)" "plaintiff is not required to provide the court with 'detailed factual allegations' and only needs to state a claim that is "plausible on its face" to defeat a motion to dismiss). For this reason alone – that the Lutwin Defendants have asserted purported facts that contradict the allegations of the Complaint (matters that are fact-intensive and will turn on credibility issues), the Lutwin Defendants' motion should be denied.[8]

## CONCLUSION

For the reasons set forth herein, Plaintiffs respectfully request that the Lutwin Defendants' motion to dismiss be denied in its entirety.

Dated: New York, New York
April 19, 2021

**CATAFAGO FINI LLP**

By: /s/ Tom M. Fini, Esq.
Tom M. Fini, Esq.
Adam Sherman, Esq.
The Empire State Building
350 Fifth Avenue, Suite 7710
New York, NY 10118
(212) 239-9669
tom@catafagofini.com
*Attorneys for Plaintiffs*

---

[8] The Lutwin Defendants' argument for dismissal of Plaintiffs' tortious interference with prospective business relations claim is that it is duplicative of Plaintiffs' defamation claim. Def. Br. at 13-15. The latest and prevailing view in the Southern District is that if there no separate conduct other than the Defendants' defamation, then the tortious interference claim is duplicative of the defamation claim. The Plaintiffs do allege conduct that is separate from the Defendants' defamation, namely, that the Early Defendants withdrew their approval of Plaintiffs' camp. See Complaint at ¶ 167. This is fully set forth in the brief in opposition to the Early Defendants' motion. In light of this, the Plaintiffs concede that, as the Complaint is currently pleaded, the Lutwin Defendants were not the entities that withdrew the approval of Plaintiffs' camp. However, the Defendants reserve the right to learn in discovery whether the Lutwin Defendants encouraged the Early Defendants to withdraw their approval of Plaintiffs' camp. Indeed, the Complaint alleges that the Lutwin Defendants told Mid-Atlantic that Plaintiff Hodges should not be around children. See Exhibit B to the Complaint.