UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMIE HODGES AND ON THE MOVE LTD,

                          Plaintiffs,

             – against –

JAMES EARLY, IRISH DANCING TEACHERS
ASSOCIATION OF NORTH AMERICA-MID-
ATLANTIC REGION, INC., MOLLY KATHLEEN
LUTWIN, FRANCIS ACADEMY OF IRISH DANCE,
and KEITH L. LABIS,

                         Defendants.

20 Civ. 9878 (ALC)

---

**REPLY MEMORANDUM OF LAW OF IN FURTHER SUPPORT OF DEFENDANTS
JAMES EARLY'S, IRISH DANCING TEACHERS ASSOCIATION OF NORTH
AMERICA MID-ATLANTIC REGION, INC.'S, AND
KEITH L. LABIS'S MOTION TO DISMISS**

YANKWITT LLP
140 Grand Street, Suite 705
White Plains, New York 10601
Tel.:  (914) 686-1500
Fax:  (914) 801-5930
*Counsel for Defendants James Early, Irish
Dancing Teachers Association of North America
Mid-Atlantic Region, Inc., and Keith L. Labis*

**TABLE OF CONTENTS**

I.     Dismissal Is Not Premature ........................................................................ 1

II.    The Allegedly Defamatory Statements Are Privileged from Suit .................................. 2

   A.  Excessive Publication ................................................................... 2

   B.  Malice ......................................................................................... 7

III.   Plaintiffs' "Defamation by Implication" Claim Against Labis Should Be Dismissed ....... 8

IV.    Plaintiffs' Tortious Interference Claim Should Be Dismissed ........................................... 9

   CONCLUSION ................................................................................... 10

# TABLE OF AUTHORITIES

Cases                                                                                      Page(s)

*Anas v. Brown*,
   702 N.Y.S.2d 732 (App. Div. 4th Dep't 2000) ........................................................... 5

*Berger v. Temple Beth-El of Great Neck*,
   839 N.Y.S.2d 504 (App. Div. 2d Dep't 2007)............................................................ 5

*Biro v. Conde Nast*,
   807 F.3d 541 (2d Cir. 2015) .................................................................................. 7, 9

*Boehner v. Heise*,
   734 F. Supp. 2d 389 (S.D.N.Y. 2010) ..................................................................... 4

*Dickins v. Int'l Bhd. of Teamsters*,
   171 F.2d 21 (D.C. Cir. 1948)................................................................................... 4

*Fuji Photo Film U.S.A., Inc. v. McNulty*,
   669 F. Supp. 2d 405 (S.D.N.Y. 2009) ..................................................................... 4

*Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*,
   248 F. Supp. 3d 487 (S.D.N.Y. 2017) ..................................................................... 9

*Harte-Hanks Comm. v. Connaughton*,
   491 U.S. 657 (1989) ............................................................................................... 7

*Hengjun Chao v. Mount Sinai Hosp*
   476 F. App'x 892 (2d Cir. 2012) ........................................................................ 1, 8

*Melious v. Besignano*,
   37 Misc. 3d 1203(A), 964 N.Y.S.2d 60 (Sup. Ct. 2012) ........................................... 5

*Slue v. New York Univ. Med. Ctr.*,
   409 F. Supp. 2d 366 (S.D.N.Y. 2006) ..................................................................... 7

*Stukuls v. State*,
   397 N.Y.S.2d 740 (Ct. App. 1977)................................................................... 3, 4, 5

*Thorsen v. Sons of Norway*,
   996 F. Supp. 2d 143 (E.D.N.Y. 2014) ..................................................................... 3

*Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*,
   2014 WL 463616 (S.D.N.Y. Feb. 4, 2014) .............................................................. 1

*Tracy v. Newsday,*
    5 N.Y.2d 134 (1959)............................................................................................................. 9


Other Authorities

Restatement (Second) of Torts § 604................................................................... 3, 4, 5, 6

Defendants James Early, Irish Dancing Teachers Association of North America Mid-Atlantic Region, Inc. ("Mid-Atlantic Teachers"), and Keith L. Labis, Esq. (collectively "Defendants") respectfully submit this reply memorandum of law in further support of Defendants' motion to dismiss the complaint (the "Complaint") of Plaintiffs Jamie Hodges and On The Move Ltd. ("Plaintiffs"). For the reasons set forth in Defendants' moving brief and below, even accepting Plaintiffs' allegations as true, they are insufficient and their claims should be dismissed.

## I.   Dismissal Is Not Premature

Plaintiffs argue that dismissal would be premature.  (Pl. Br., at 1, 3, 15-16.)[1]  Plaintiffs repeatedly assert that the issues on this motion are "fact-intensive," and cite cases in which courts have denied motions to dismiss based on assertions of qualified privilege.  (Pl. Br. at 16.)  Plaintiffs make no attempt to address let alone distinguish the numerous cases in which courts have found that dismissal was appropriate under circumstances substantially similar to this case.  (*Compare* Def. Br. at 9-10 (collecting cases such as *Tongring v. Bronx Cmty. Coll. of City Univ. of New York Sys.*, No. 12 CIV. 6854 (ALC), 2014 WL 463616, at *6-7 (S.D.N.Y. Feb. 4, 2014)) *with* Pl. Br. at 16 n.4).

To the contrary, dismissal of Plaintiffs' legally insufficient claims is proper on this motion. As set forth in Defendants' moving brief, courts routinely dismiss defamation claims based on application of the common interest privilege and reject attempts by plaintiffs to circumvent that privilege with implausible allegations of malice.  (Def. Br. at 9-10.); *see e.g., Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 894–95 (2d Cir. 2012) (summary order) (upholding

---

[1]   Defendants' moving brief is referred to herein as "Def. Br." and Plaintiffs' opposition brief is referred to herein as "Pl. Br."  All capitalized terms used but not defined herein shall have the meanings ascribed to them in Defendants' moving brief.

dismissal of defamation claim based on the common interest privilege and rejecting the plaintiffs' claims of malice as implausible). Applying those holdings here, the Court should dismiss all claims against Defendants.

## II.     The Allegedly Defamatory Statements Are Privileged from Suit

In their moving brief, Defendants set forth that the allegedly defamatory statements, which were made by and to members of Mid-Atlantic Teachers, are protected by the common interest privilege and the privilege for statements made pursuant to a moral and social duty.  (Def. Br. at 15-17.)

In response, Plaintiffs do not dispute that the allegedly defamatory statements were made pursuant to a moral and social duty, and between people who shared a common interest.  (*Compare* Def. Br. at 15-17, *with* Pl. Br. at 17-20.)   Indeed, Plaintiffs fail to address the privilege for statements made pursuant to a moral and social duty at all, and nowhere do they assert that the members of Mid-Atlantic Teachers lacked a common interest in Lutwin's correspondence.  (Pl. Br. at 18.)

Rather, Plaintiffs argue that the statements are excepted from these qualified privileges because they were "excessively published" and/or made with malice.  (Pl. Br. at 17-21.)   As Defendants demonstrated in their moving brief, however, Plaintiffs fall far short of making out these exceptions.

### A.     Excessive Publication

The exception for "excessive publication" does not apply because the allegedly defamatory statements were only made to members of Mid-Atlantic Teachers, who are within the common interest privilege and privilege for statements made pursuant to a duty.  (*See* Compl. ¶ 84.)

Plaintiffs do not cite a single case in which a court applied the excessive publication exception to statements made between members of an organization, or by those with a moral and social duty to make the communication.[2]  (Pl. Br., at 17-20.)  Plaintiffs also make no attempt to argue that their allegations fit within the actual exception as articulated in the Restatement of Torts. (*Compare* Def. Br., at 13-14, *with* Pl. Br., at 17-20); *see* Restatement (Second) of Torts § 604; *see also Stukuls v. State*, 397 N.Y.S.2d 740, 746 (Ct. App. 1977) (citing Restatement).  And Plaintiffs ignore the cases cited by Defendants in which courts have expressly rejected application of the exception when the recipients of the allegedly defamatory statements all shared a common interest. (Def. Br., at 14-15 (collecting cases)).

Instead, Plaintiffs attempt to fit their case within an idiosyncratic, idiomatic exception of their own making.  Under their version of "excessive publication," a statement made among members of an organization with a common interest may lose its privilege if the organization is purportedly an "umbrella association," and/or if the members are "outside of the [organization]'s leadership," and/or if there are hundreds of such members.  (Pl. Br., at 18-19.)  Plaintiffs base their argument primarily on *Stukuls*, and attempt to argue upon a made-up analogy that granting the motion to dismiss would make bad policy.  (Pl. Br. at 17-20.)

Plaintiffs are wrong.  <u>First</u>, the common interest privilege is not so constrained, and the excessive publication exception not so expansive, as Plaintiffs would have them.  The common interest privilege applies to communications among members, not just leadership, *see, e.g.*, *Thorsen v. Sons of Norway*, 996 F. Supp. 2d 143, 173-74 (E.D.N.Y. 2014) ("Such common interest

---

[2]     In response to Defendants' point that "excessive publication" has only been addressed by appellate courts in dicta and by lower courts in rejecting its application (Def. Br., at 13-15 & n.1, 20-21), Plaintiffs conclusorily assert that Defendants' argument is "frivolous."  (Pl. Br., at 17.) Plaintiffs provide no support for this baseless aspersion.

privilege regularly is found where the speaker and the listeners were generally members of a group or organization—which undoubtedly suggested a robust common interest existed." (internal quotation marks and citations omitted)); it applies to communications between hundreds and even thousands of people, *see, e.g.*, *Fuji Photo Film U.S.A., Inc. v. McNulty*, 669 F. Supp. 2d 405, 415-16 (S.D.N.Y. 2009) (finding the common interest privilege applicable to a memorandum sent to all employees of a large company); and it applies to numerous types of organizations, *see, e.g.*, *Boehner v. Heise*, 734 F. Supp. 2d 389, 400 (S.D.N.Y. 2010) (common interest privilege applies to trade organization and Senator who "shared a common interest . . . in the welfare of the Wisconsin ginseng industry and the citizen consumers of Wisconsin.").

The excessive publication exception, on the other hand, is targeted at more narrow circumstances, in which a statement is at once published to privilege and non-privileged people. As set forth in the Restatement (cited in *Stukuls*): "One who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged, abuses the privilege . . . ." Restatement (Second) of Torts § 604 (1977). That scenario simply does not apply here.[3]

Second, Plaintiffs' reliance on *Stukuls* for their erroneous view of excessive publication is misplaced. In *Stukuls*, "excessive publication" was taken up in dicta as a potential obstacle the plaintiff might face on remand. *Id.* The Court noted that the privilege for communications made

---

[3]    The absurdity of Plaintiffs' position is made plain by the following illustrations in the Restatement: "[T]he publication in a fraternal magazine of disciplinary action taken against a member for cause is not an abuse of a privilege because the magazine may be seen by persons who are not members of the order." *Id.* This illustration is drawn from *Dickins v. Int'l Bhd. of Teamsters*, 171 F.2d 21, 23 (D.C. Cir. 1948), in which the court rejected a claim of excessive publication concerning statements published in the official magazine of the Teamsters' union, which was sent to more than 400,000 teamsters and about 1,200 others. *Id.*

to others with a common interest and duty "will still be subject to defeasance by excessive publication (Restatement, Torts 2d § 604), or by the publication of defamatory matter solely for an improper purpose . . . , including its publication solely from spite or ill will." *Id.* at 281.  The Court noted that the plaintiff may be able to show malice, but did not further take up excessive publication or suggest that the plaintiff had sufficiently alleged facts in support of excessive publication. *Id.* at 281-82.  The Court did not describe excessive publication as fact intensive, did not state that it applies to communications among those with a common interest, and did not rule in any way on the matter.

Courts routinely reject arguments of excessive publication in reliance on when the communications are not made to members outside the organization.  *See, e.g.*, *Anas v. Brown*, 702 N.Y.S.2d 732, 734–35 (App. Div. 4ᵗʰ Dep't 2000) ("The contention of plaintiffs that publication of the memorandum to FSS members constituted excessive publication lacks merit because the recipients all shared a common interest with defendants."); *Berger v. Temple Beth-El of Great Neck*, 839 N.Y.S.2d 504, 504–05 (App. Div. 2d Dep't 2007) ("[Plaintiff] failed to raise an issue of fact as to whether the challenged statements were excessively published, as the recipients all shared a common interest." (citing *Stukuls*)); *Melious v. Besignano*, 37 Misc. 3d 1203(A), 964 N.Y.S.2d 60 (Sup. Ct. 2012), aff'd, 4 N.Y.S.3d 228 (2015) ("In addition, there is no evidence before this Court sufficient to raise a triable issue as to whether the alleged defamatory statements were excessively published, inasmuch as the recipients each shared an uncontroverted common interest in the allegations of teacher misconduct, which were made by and to persons legally and morally bound to prevent it." (citing *Stukuls*)).[4]

---

[4]  Insofar as Plaintiffs attempt to rely on facts outside their Complaint, by asserting that Mid-Atlantic Teachers is an "umbrella association" and that its members are independent, the Court should reject that effort as improper and irrelevant.  Even if the Court were to consider these

<u>Third</u>, Plaintiffs misguidedly fall back on flawed public policy arguments. The New York Court of Appeals made a plain and sensible policy choice in upholding the common interest privilege, in order that "the flow of information between persons sharing a common interest should not be impeded." *Liberman*, 80 N.Y.2d at 437.  It has never upheld Plaintiffs' purported broad excessive publication exception and the Restatement makes plain that exception is limited to circumstances not present here.  In addition to being established law, this is sensible.  An organization of teachers that receives a formal complaint from a member regarding the sending of obscenity to her minor students is permitted to share that complaint with its members, without being impeded (or deterred) by the portent of a bogus defamation action.  Indeed, to deter that communication among a teacher organization's members would make bad policy; New York has never made such a choice.

Ultimately, what appears to be driving Plaintiffs' position, is their preference that Defendants had selected a subset of members with whom to share Lutwin's formal complaint, such as its leadership.  (Pl. Br. at 2 ("The Complaint details that the Early Defendants excessively published their defamatory statements by announcing them in a meeting that was open to hundreds of participants, including numerous different dance organizations far beyond the leadership of Mid-Atlantic."). This preference simply does not sustain a defamation claim.  A publication is not excessive because the publisher could have chosen a smaller audience, and a defamation plaintiff does not overcome the common interest privilege by alleging that defendants could have been more discrete in communicating within their membership.  The purpose of the common interest

---

allegations, they do not change the analysis, because Plaintiffs still cannot overcome the fact that the members of Mid-Atlantic Teachers all shared a common interest in Lutwin's correspondence. (*See* Def. Br. at 16.)

privilege – protecting the free flow of information in an organization among members with a common interest – is served here only by the proper dismissal of this action.

### B.  Malice

Plaintiffs next argue that their defamation claim should not be dismissed because Defendants acted with malice.  As with their argument for excessive publication, Plaintiffs ignore the actual law and allegations in this case.

Regarding common law malice, *i.e.* spite or ill will, "common-law malice will defeat . . . a privilege only if it was the one and only cause for the publication."  *Chandok*, 632 F.3d at 815 (internal quotation marks and citations omitted).  Regarding actual malice, i.e. publication with knowledge or reckless disregard of a statement's falsity, *Chandok*, 632 F.3d at 815, Plaintiffs must plausibly allege "'that the defendant in fact entertained serious doubts as to the truth of the publication,'" and speculating about defendant's motives is legally insufficient.  *Slue v. New York Univ. Med. Ctr.*, 409 F. Supp. 2d 366-68 (S.D.N.Y. 2006) (quoting *Harte-Hanks Comm. v. Connaughton*, 491 U.S. 657, 687 (1989)); *see, e.g.*, *Biro v. Conde Nast*, 807 F.3d 541, 546-47 (2d Cir. 2015) (affirming 12(b)(6) dismissal of defamation claim against defendants, including those who republished the statements, because allegations of malice were conclusory and did not make out a plausible claim of "the speaker's subjective doubts about the truth of the publication").

Here, Plaintiffs assert that they meet these standards upon logic, because they allege that Defendants knew investigations by Coiste Faire and criminal authorities were closed:  "The only logical reason that the Early Defendants never permitted the Plaintiffs to understand the accusations or provide their side of the story was because the Defendants were plainly motivated to completely destroy the reputations of the Plaintiffs, despite their knowing that the accusations

had not been substantiated, and that an investigation by authorities had concluded that the Plaintiffs engaged in no wrongdoing." (Pl. Br. at 21-22.)[5]

This is simply wrong. Attached to Plaintiffs' Complaint are Lutwin's formal complaint and a letter from Coiste Faire to Lutwin. (Compl. Exs. B, J.) As set forth in Defendants' moving brief, those documents make plain that there is an extant and logical explanation for Defendants' allegedly reading the formal complaint at the Mid-Atlantic Teachers' meeting. The Coiste Faire investigation was limited because Plaintiffs were not members of the organization, (Compl., Ex. J), and the Lutwin complaint described troubling conduct irrespective whether it was criminal. (Compl. Ex. B.) Neither of these alleged investigations were conducted by Defendants and neither supports the logical inference that Defendants could only have acted with malice. Thus, Plaintiffs' own pleading shows they do not plausibly allege that the only reason for publication was malice. *See Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (upholding rejection of illogical and implausible claims of malice).

### III.   Plaintiffs' "Defamation by Implication" Claim Against Labis Should Be Dismissed

Plaintiffs argue that their defamation claim against Labis survives dismissal, notwithstanding that they do not allege Labis said anything false, on a theory of "defamation by implication." (Pl. Br. at 22-23.) Plaintiffs assert that "[t]he Complaint alleges that Labis' affirmative statements and intentional omissions falsely conveyed, as purported fact, that Mr. Hodges was, as of January 26, 2020, actively being investigated by state and federal law

---

[5] Plaintiffs also point to their allegation that Defendant Early allegedly was a "grade examiner" for another entity that allegedly competed with Plaintiffs. (Pl. Br. at 15.) This allegation has no bearing on actual malice, and for the reasons stated herein and in Defendants' moving brief (Def. Br. at 16) regarding the myriad undisputed other reasons for Early to share the formal complaint with members, does not plausibly permit the inference that Early's only reason for reading the letter was malice.

enforcement authorities." (*Id.* at 23.)   As set forth in Defendants' moving brief, however, defamation by implication is a narrow doctrine and to claim it a plaintiff "'may not enlarge upon the meaning of words so as to convey a meaning that is not expressed' . . . . [T]he Court will look to whether such omission would materially change the alleged implication or render untrue what is otherwise unchallenged." *Biro*, 883 F. Supp. 2d at 466 (quoting *Tracy v. Newsday*, 5 N.Y.2d 134 (1959)).   Here, Plaintiffs' Complaint and its attachments show that Labis did not falsely convey anything regarding what happened in the criminal investigation or whether it was active or not.   Rather, as counsel to Mid-Atlantic Teachers, he allegedly responded to a question from a member about whether the matter had been reported and described that it had been reported and to whom.   To uphold Plaintiffs' complaint against Labis would require improperly attributing a meaning to Labis's words that was not expressed.   Moreover, the alleged omission that the criminal investigation was closed would not materially change the meaning of what Labis allegedly said. The defamation claim against Labis must therefore be dismissed.

## IV.     Plaintiffs' Tortious Interference Claim Should Be Dismissed

Plaintiffs do not dispute that, to the extent their tortious interference with prospective relations claim is duplicative of their defamation claim, it does not survive. (Pl. Br. at 23.)  Instead, Plaintiffs assert that it  is not entirely duplicative, because in one allegation they claim that Defendants withdrew approval of Plaintiffs' camp.  (Pl. Br., at 23 (citing Compl. ¶ 167).)  This alleged conduct is insufficient, however, to make out the third element of a tortious interference claim, because withdrawing approval for a camp is not a crime or independent tort.  *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494-95 (S.D.N.Y. 2017) ("As a general rule, in order to satisfy the third element of tortious interference with business relations, the defendant's conduct must amount to a crime or an independent tort.  Conduct that is

not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts. . . .").  Accordingly, this claim should be dismissed.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' moving brief, Defendants respectfully request the Court dismiss the Complaint against the Defendants in its entirety with prejudice.

Dated: White Plains, New York
           April 26, 2021

YANKWITT LLP

By: _____
       Russell M. Yankwitt
       Benjamin Allee
       140 Grand Street, Suite 705
       White Plains, New York 10601
       Tel.:  (914) 686-1500
       Fax:  (914) 801-5930
       *Counsel for Defendants James Early, Irish Dancing Teachers Association of North America Mid-Atlantic Region, and Keith L. Labis*