USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#: _____
DATE FILED: __3/31/22__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
JAMIE HODGES and ON THE MOVE LTD.,    :
                                                       **Plaintiffs,**    :
                                                                    :
          **-against-**    :
                                                                    :
MOLLY KATHLEEN LUTWIN ET AL.,    :
                                                **Defendants.**   :
-------------------------------------------------------------- x

                                                                              20-cv-9878(ALC)

                                                                       **OPINION AND ORDER**

**ANDREW L. CARTER, JR., District Judge:**

       Plaintiffs Jamie Hodges and On The Move Ltd. bring this action against James Early, Irish Dancing Teachers Association of North America Mid-Atlantic Region, Inc. ("Mid-Atlantic Teachers"), Keith L. Labis, Esq. ("Mid-Atlantic Defendants"), Molly Kathleen Lutwin, and the Francis Academy of Irish Dance ("Lutwin Defendants"). Plaintiffs assert claims for defamation, defamation per se, and tortious interference with prospective business relations. Defendants move to dismiss Plaintiffs' complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons set forth below, Defendants' motions to dismiss are GRANTED.

## BACKGROUND

       When determining whether to dismiss a case, the court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011). Furthermore, "[a] complaint is deemed to include any written instrument attached to it as an exhibit." *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) (citations omitted); Fed. R. Civ. P. 10(c). The following facts, alleged in the Complaint and its attached exhibits, ECF Nos. 1–3, are thus assumed to be true for the purposes of this motion.

1

Plaintiff Hodges is a citizen of the United Kingdom who teaches Irish Dance and On the Move is his Irish Dance company, which is domiciled in the United Kingdom. Compl. ¶ 21. In November 2019, Plaintiff contacted Early, Regional Director of Mid-Atlantic Teachers, regarding the dance camp Hodges planned to run in the Mid-Atlantic Region. *Id*. ¶ 31. Mid-Atlantic Teachers is a regional chapter of the Irish Dance Teachers Association of North America, "the official body that offers Irish Dance instructors in the United States certification to teach Irish Dance." *Id*. ¶ 15. On November 18, 2019, Early granted Hodges permission to run his camp. *Id*. ¶ 33.

On November 24, 2019, Lutwin, a member of Mid-Atlantic Teachers and an Irish Dance teacher, emailed a written complaint to the Board of Mid-Atlantic Teachers. *Id*. ¶¶ 40–41. The complaint relayed an incident in which On the Move sent an obscene video to minor students of Lutwin via Instagram. *Id*. ¶ 41. In relevant part, the complaint stated:

> There are two u14 girls in my school, Francis Academy of Irish Dance, who share and run an Instagram account for Irish Dancing. The girls were contacted by On the Move to promote their workshop and program by posting a video and pictures to the girls shared account. The girls agreed to upload the promotional video.
>
> On the Move then sent them a video that was extremely inappropriate and disturbing. The video is of a visibly naked woman running towards a camera and jumping on it. The camera than reveals a cartoon or CGI baby within the private parts of the . . . woman. It is shocking and difficult to describe.
>
> The girls did not know what to do. They responded to On the Move that the video was inappropriate.
>
> On the Move then apologized and told the girls that the account got hacked. The user then deleted the video off the message and then deleted the apology/"we've been hacked" message. My students saved the video before it was erased but the apology was not.
>
> . . .
>
> Accident or purposeful, these are grown adults working with young people, and mistakes like this cannot happen. This video was highly tasteless and sexual. As a mom, teacher, and female I would feel uncomfortable to have the members of On the Move to be associated with young teens and dancers.

2

> I am very concerned as I have seen On the Move advertised on the MAR social media pages and I know that they will be at the upcoming Oireachtas. I don't know what can be done, but I don't believe that these young men should be around our dancers.
>
> I would like to lodge a formal complaint to CLRG against Jamie and Mitchell Hodges and On the Move. . . .

*Id.* ¶ 41.

The Complaint also attached screenshots of the Instagram conversation at issue; as Lutwin writes, neither the video nor the apology appear in the conversation. *Id*. Ex C, ECF No. 3-3.

The Complaint alleges that the weekend following Lutwin's complaint, Lutwin spoke with three individuals at an Irish Dance event about the incident, telling them that Plaintiff Hodges "sent sexual videos to two under 14 year old girls in my dance school." *Id*. ¶¶ 67–70. These three individuals reside in the United Kingdom; one runs an Irish Dance school, one is an Irish Dance performer, and one sells Irish Dance merchandise. *Id*.

On January 3, 2020, an Irish media outlet reached out to Hodges about the incident. *Id*. ¶¶ 75–78.

On January 26, 2020, the Mid-Atlantic Teachers held a meeting for its members, Irish Dance teachers who teach in the Mid-Atlantic region. During that meeting, Early read Lutwin's complaint. *Id.* ¶¶ 83, 84, 88, 91. Afterwards, a member asked whether Lutwin's complaint was reported to law enforcement. *Id.* Ex. I, ECF No. 3-7. Labis, a lawyer for Mid-Atlantic Teachers, responded that the complaint was reported to the authorities. *Id.* ¶ 97. On January 27, 2020, Early informed Plaintiffs that the approval of their Irish Dance camp was rescinded. *Id.* ¶¶ 107–08.

Plaintiffs deny sending the video and allege that Lutwin's complaint was fabricated. *Id.* ¶¶ 43, 50. The Complaint alleges that Early and Labis knew the complaint was fabricated. *Id*. ¶ 102. Additionally, Plaintiffs assert that at the time of Mid-Atlantic Teachers meeting, the Mid-Atlantic

Defendants knew that the local authorities and the global Irish Dancing governing commission had both concluded their respective investigations with no findings of wrongdoing. *Id*. ¶¶ 79–82, 102.[1]

It also alleges that Early, Labis, and Lutwin acted with malice and sought to "destroy the Plaintiffs' reputations." *E.g.*, *id*. ¶¶ 50, 103. As motivation for the defamation, Plaintiffs allege that Lutwin and Early were competitors of Plaintiffs. Specifically, the Complaint states that Lutwin received referral fees for sending her students to a summer camp that competes with the summer camp Plaintiffs intended to run. *Id.* ¶¶ 37, 38, 51. The Complaint alleges that Early had a conflict of interest because he both owned an Irish Dance school and was charged with approving the Irish Dance programs as head of Mid-Atlantic Teachers, and he served as an Irish Dance judge at a summer camp that would compete with Plaintiffs' summer camp. *Id*. ¶¶ 27–28.

## PROCEDURAL HISTORY

Plaintiffs initiated this action on November 23, 2020. ECF No. 1. On March 8 and March 18, 2021, Defendants filed their motions to dismiss. ECF Nos. 30 and 32. On April 19, 2021, Plaintiffs filed their opposition papers. ECF No. 37–40. On April 26, 2021, Defendants filed their reply memoranda in support of their motions to dismiss. ECF Nos. 46–47.

## LEGAL STANDARD

On a Rule 12(b)(6) motion, the court must "assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. New York Thruway Auth*., 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Allegations that are "no more than conclusions[ ] are not entitled to the assumption of truth," and " 'naked assertion[s]' devoid of 'further factual enhancement' " or "the defendant-

---

[1] The Complaint attaches as an exhibit the correspondence from the governing commission explaining that it was restricted in its investigation because Plaintiffs were not members of the commission and encouraging Lutwin to pursue the matter with local law enforcement. Compl. Ex. J, ECF No. 3-8.

4

unlawfully-harmed-me accusation[s]" are not sufficient to show that a plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 678–79 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 555, 555, 557 (2007)). Nor must a court accept as true "legal conclusions" or "a legal conclusion couched as a factual allegation." *Id*. "We include in this analysis not only the assertions made within the four corners of the complaint itself, but also those contained in documents attached to the pleadings or in documents incorporated by reference." *Gregory v. Daly*, 243 F.3d 687, 691 (2d Cir. 2001) (citing *Austin v. Ford Models, Inc*., 149 F.3d 148, 152 (2d Cir. 1998).

## DISCUSSION

### I. Defamation

#### A. Qualified Privilege

Defendants argue that the Complaint fails to state a defamation claim because the allegedly defamatory statements are subject to the common interest privilege. The Court agrees.

To establish a claim for defamation under New York law, a plaintiff is required to demonstrate "a false statement, published without privilege or authorization to a third party, constituting fault . . . and it must either cause special harm or constitute defamation per se." *Peters v. Baldwin Union Free Sch. Dist*., 320 F.3d 164, 169–70 (2d Cir. 2003) (internal quotations and citations omitted). New York law grants a qualified "common interest" privilege to "defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff v. N.Y. Life Ins. Co*., 240 F.3d 138, 146 (2d Cir. 2001). Furthermore, a statement is considered privileged "when it is fairly made by a person in the discharge of some public or private duty, legal or moral." *Chandok v. Klessing*, 632 F.3d 803, 814 (2d Cir. 2011). "The rationale for applying the privilege in these circumstances is that so long as the privilege is not abused, the flow of information between persons sharing a common interest should not be impeded." *Liberman v. Gelstein*, 605 N.E.2d 344, 349 (N.Y. 1992).

The Lutwin Defendants have successfully asserted a qualified privilege. When Lutwin transmitted her complaint to board members of Mid-Atlantic Teachers, she was acting pursuant to the common interest qualified privilege. Here, the relevant interest suffices as one "of a moral or social character." *Qureshi v. St. Barnabas Hosp. Ctr.*, 430 F. Supp 2d 279, 290–91 (S.D.N.Y. 2006). As a member of Mid-Atlantic Teachers, she shared an interest with Mid-Atlantic Teachers in protecting the minors taught by the members of Mid-Atlantic Teachers from inappropriate conduct on the part of adult teachers to whom those minors would be exposed. This interest accords with the common interest privilege. As the New York Court of Appeals has articulated: "The [common interest qualified privilege] grew out of the desirability in the public interest of encouraging a full and fair statement by persons having a legal or moral duty to communicate their knowledge and information about a person in whom they have an interest to another who also has an interest in such person." *Shapiro v. Health Ins. Plan of Greater New York*, 163 N.E.2d 333, 336 (N.Y. 1959). Here, Lutwin was acting out of such a moral duty.

Lutwin's conversations with the three individuals at the Irish Dancing event are also shielded by the common interest privilege. The shared interest need not be identical; the three individuals only need to have a "corresponding" interest. *Chandok*, 632 F.3d at 815; *see also Yong Ki Hong v. KBS Am., Inc.*, 951 F. Supp. 2d 402, 437 (E.D.N.Y. 2013) ("The qualified privilege requires that the communicants share a *common, mutual,* or *corresponding* interest, not an *identical* interest. That is to say, they must both have some vested interest in the subject matter of the communications, but their respective interests need not be aligned."). Though not residents of the region in which Plaintiffs would run their camp for children, these three individuals catered to Irish dancers, including minors, in the location where Plaintiffs resided. Thus, the common interest privilege also applies to Lutwin's communications at the dance event.

Similar to the Lutwin Defendants, the Mid-Atlantic Defendants are shielded by the common interest privilege. The members of Mid-Atlantic Teachers shared the same important interest with Early and Labis as Lutwin shared with the board of Mid-Atlantic Teachers: protecting the minor students in their region from inappropriate adult behavior by Irish Dance teachers to whom the children would be exposed.

### B. Defeating Common Interest Privilege

To overcome the qualified privilege at the motion to dismiss stage, a plaintiff must plausibly allege that the defendant acted with actual malice, "knowledge of the statement's falsity or reckless disregard as to whether it was false," or common-law malice, "spite or ill will." *Chandok*, 632 F.3d at 815 (internal quotation marks and citations omitted).[2] With respect to the requisite showing of malice, "[m]ere conclusory allegations, or charges based upon surmise, conjecture, and suspicion are insufficient to defeat the claim of qualified privilege." *Thai v. Cayre Grp., Ltd.*, 726 F. Supp. 2d 323, 335–36 (S.D.N.Y. 2010) (internal quotation marks and citations omitted). For actual malice, Plaintiffs must demonstrate that Defendants' statements were made "with a high degree of awareness of their probable falsity." *Hengjun Chao v. Mount Sinai Hosp.*, 476 F. App'x 892, 895 (2d Cir. 2012) (internal quotation marks and citations omitted). "When actual malice in making a defamatory statement is at issue, the critical question is the state of mind of those responsible for the publication." *Palin v. New York Times Co.*, 940 F.3d 804, 810 (2d Cir. 2019). For common law malice, "common-law malice will defeat such a [qualified] privilege only

---

[2] The Court rejects Plaintiffs' argument that common interest privilege cannot be determined at the motion to dismiss stage. *See Hillel v. Obvio Health USA, Inc.*, No. 20-CV-4647 (LAP), 2021 WL 229967, at *10 (S.D.N.Y. Jan. 21, 2021) (holding that given the recent "line of cases from New York courts that recognizes that a plaintiff must establish, as an element of her claim, that the allegedly defamatory statement is not privileged . . . .the Court finds that considering Plaintiff's ability (or lack thereof) to overcome the privilege is proper on a motion to dismiss"), *aff'd in part, vacated in part, remanded sub nom. Hillel v. IQVIA, Inc.*, No. 21-666-CV, 2022 WL 905852 (2d Cir. Mar. 29, 2022).

if it was the one and only cause for the publication." *Chandok*, 632 F.3d at 815 (internal quotation marks and citations omitted).

Additionally, a communication subject to a qualified privilege may be defeated by an allegation of excessive publication, that "it was made to persons with an insufficient interest in it for it to warrant protection." *Konikoff v. Prudential Ins. Co. of Am.*, 234 F.3d 92, 98 (2d Cir. 2000).

### 1. Common Law Malice

Plaintiffs do not explicitly discuss common law malice in their opposition papers. However, their claims regarding Defendants' alleged competition-based motives seem to attempt to argue that common law malice is present and that Defendants acted solely out of spite. First, the allegations that Defendants sought to sully Plaintiffs' status is based "upon surmise, conjecture, and suspicion," which "are insufficient to defeat the claim of qualified privilege." *Thai*, 726 F. Supp. 2d at 330. Second, even assuming that Defendants made the statements to ruin Plaintiffs' reputation, the facts alleged in the Complaint would still not establish common law malice as the Complaint fails to show that Defendants' statements were entirely motived by malice. Rather, the Complaint demonstrates that Defendants also acted out of at least some interest to protect the children in their care. Thus, Plaintiffs fail to satisfy the high bar of demonstrating that malice was "the one and only cause for the publication."

### 2. Actual Malice

Plaintiffs allege that Lutwin fabricated the complaint and that the Mid-Atlantic Defendants knew Lutwin's complaint was fabricated. In support of this claim, Plaintiffs present little to no support, offering a speculative interpretation of the Instagram conversation and Lutwin's email. Additionally, Plaintiffs allege that the Mid-Atlantic Defendants knew that the investigations had been closed at the time they made their statements. Again, these allegations that Defendants acted

maliciously are based "upon surmise, conjecture, and suspicion," which "are insufficient to defeat the claim of qualified privilege." *Thai*, 726 F. Supp. 2d at 330. In actuality, Lutwin's complaint is fairly detailed and specific. The Complaint also does not adequately allege recklessness—it provides no reasons why Lutwin would be "be[] highly aware that [the statement] was probably false." *Chandok*, 632 F.3d at 815. The fact that Lutwin took additional steps, such as reporting the incident to law enforcement, supports the conclusion that she believed the alleged conduct actually occurred.

With respect to the Mid-Atlantic Defendants, Plaintiffs seem to argue that they acted with high awareness that the statement was likely false because they knew that the global governing commission and law enforcement had closed their investigations. This assumes that the closing of those investigations led the Mid-Atlantic Defendants to believe Lutwin's complaint was false. However, the commission's letter regarding the closing does not indicate that it was closed due to misgivings about the veracity of the complaint, and Lutwin's complaint does not allege that Plaintiffs' conduct was criminal, and thus, the closing of the criminal matter does not shed light on the accuracy of the complaint.

Therefore, Plaintiffs have failed to allege actual malice.

**3. Excessive Publication**

The Restatement of Torts explains that the excessive publication exception applies to "[o]ne who, upon an occasion giving rise to a conditional privilege for the publication of defamatory matter to a particular person or persons, knowingly publishes the matter to a person to whom its publication is not otherwise privileged." Restatement (Second) of Torts § 604 (1977). Thus, excessive publication is targeted at communications with individuals who do not share the common interest. *See Berger v. Temple Beth-El of Great Neck*, 839 N.Y.S.2d 504, 505 (N.Y. App.

9

Div. 2007) (holding that "plaintiff failed to raise an issue of fact as to whether the challenged statements were excessively published, as the recipients all shared a common interest"). Here, the only such communication is Lutwin's alleged communication with the Irish media. However, Plaintiffs offer no support for their conclusory allegation that Lutwin was the anonymous source who communicated with the media. *See* Compl. ¶¶ 75–76. Such a threadbare allegation does not satisfy the plausibility pleading standard established in *Twombly* and *Iqbal*.

Therefore, the excessive publication argument fails and Plaintiffs fail to defeat Defendants' qualified privilege. Accordingly, the defamation claims are dismissed.

## II. Tortious Interference with Prospective Business Relations

To successfully plead a claim for tortious interference with a prospective business relationship, a Plaintiff must allege the following: (1) a business relationship with a third party; (2) the defendant's knowledge of that relationship and the intentional interference with it; (3) that the defendant acted solely out of malice, or used dishonest, unfair, or improper means; and (4) that the defendant's interference caused injury to the relationship. *RSM Production Corp. v. Fridman*, 643 F.Supp.2d 382, 405 (S.D.N.Y. 2009) (citing *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006)). "As a general rule, in order to satisfy the third element of tortious interference with business relations, the defendant's conduct must amount to a crime or an independent tort. Conduct that is not criminal or tortious will generally be lawful and thus insufficiently culpable to create liability for interference with prospective contracts . . . ." *Glob. Packaging Servs., LLC v. Glob. Printing & Packaging*, 248 F. Supp. 3d 487, 494–95 (S.D.N.Y. 2017) (internal quotation marks and citations omitted).

Plaintiffs argue that this claim is not duplicative of their defamation claims because they allege conduct—the withdrawal of approval for Plaintiffs' camp—that is separate from the

defamation claim. Yet, this claim fails under the third prong because withdrawing approval for a camp is neither a crime nor an independent tort. Therefore, this claim is dismissed.

## CONCLUSION

For the foregoing reasons, Defendants' motions are granted and this case is dismissed. The Clerk of Court is respectfully directed to terminate the motions at ECF Nos. 30 and 32 and close this case.

**SO ORDERED.**

**Dated: March 31, 2022**
      **New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**